DURIE TANGRI LLP
DARALYN J. DURIE (SBN 169825)
ddurie@durietangri.com
MARK A. LEMLEY (SBN 155830)
mlemley@durietangri.com
JOSEPH C. GRATZ (SBN 240676)
jgratz@durietangri.com
ALLYSON R. BENNETT (SBN 302090)
abennett@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:    415-362-6666
Facsimile:    415-236-6300

Attorneys for Defendant
AMAZON.COM, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| WILLIAMS-SONOMA, INC., | Case No. 3:18-cv-07548-EDL |
|---|---|
| Plaintiff, | **DEFENDANT AMAZON.COM, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF** |
| v. | |
| AMAZON.COM, INC., | Date:    March 26, 2019 |
| Defendant. | Time:    9:00 a.m. |
| | Ctrm:    E |
| | Judge:  Honorable Elizabeth D. Laporte |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 26, 2019 at 9:00 a.m. in Courtroom E on the 15th floor of the above court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Amazon.com, Inc. ("Amazon"), by and through its attorneys of record, will and hereby does, move the Court pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff Williams-Sonoma Inc.'s complaint for failure to state a claim upon which relief can be granted.

Amazon respectfully requests that the Court dismiss Claims 2, 3 and 6 in their entirety, and dismiss Claims 4, 5 and 7 to the extent they relate to the Williams-Sonoma mark.  In the alternative, Amazon asks that the Court dismiss Williams-Sonoma's claims of willfulness with respect to the use of the Williams-Sonoma mark.

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................................2

III.  ARGUMENT .........................................................................................................................5

    A.  Williams-Sonoma's Trademark Infringement, Unfair Competition and Dilution Claims Relating to Amazon's Listing of Genuine Williams-Sonoma Products Should Be Dismissed Under the First Sale Doctrine ...........................................6

        1.  Amazon and Third-Party Sellers May Legally Resell Williams-Sonoma Products Under Williams-Sonoma's Trademark .......................................6

        2.  Williams-Sonoma Has Not Plausibly Alleged an Exception to the First Sale Doctrine............................................................................................9

            a.  Williams-Sonoma Has Not Adequately Pled the "Quality Exception"................................................................................9

            b.  Williams-Sonoma Has Not Plausibly Pled that Amazon's Advertising Suggests It Is an Authorized Retailer...................12

        3.  Williams-Sonoma Cannot Evade the First Sale Rule by Alleging that Amazon Provides a "Service" or a "Shop"..........................................14

    B.  As a Matter of Law, Amazon Cannot Be Liable for Trademark Infringement, Dilution or Unfair Competition for Accurately Labeling the Products on Its Website .....................................................................................................................15

    C.  Williams-Sonoma's Dilution Claims Fail Because Williams-Sonoma Has Not Alleged that Amazon Is Using the Williams-Sonoma Mark To Identify Amazon's Own Goods or Services ...............................................................................................18

    D.  Williams-Sonoma Has Not Sufficiently Alleged that Amazon's Use of the Williams-Sonoma Mark in Connection with the Sale of Genuine Williams-Sonoma Products Was "Willful" ....................................................................................19

IV.  CONCLUSION....................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adolph Coors Co. v. A. Genderson & Sons, Inc.*,
    486 F. Supp. 131 (D. Colo. 1980) ............................................................................... 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 5, 10, 12, 20

*Bell Atlantic Co. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................... 5, 10, 12, 20

*Blockbuster Videos, Inc. v. City of Tempe*,
    141 F.3d 1295 (9th Cir. 1998) ............................................................................... 6, 19

*Brain Pharma, LLC v. Scalini*,
    858 F. Supp. 2d 1349 (S.D. Fla. 2012) ............................................................... 10, 11

*Champion Spark Plug Co. v. Sanders*,
    331 U.S. 125 (1947) ..................................................................................................... 7

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) ...................................................................................... 7

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ....................................................................................................... 9

*Esnesco Corp. v. Price/Costco Inc.*,
    146 F.3d 1083 (9th Cir. 1998) ........................................................................ 9, 10, 11

*Hart v. Amazon.com, Inc.*,
    191 F. Supp. 3d 809 (N.D. Ill. 2016) ......................................................................... 6

*Intel Corp. v. Terabyte Int'l, Inc.*,
    6 F.3d 614 (9th Cir. 1993) .......................................................................................... 8

*Lindy Pen Co. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993) ................................................................................. 19

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
    507 F.3d 252 (4th Cir. 2007) .............................................................................. 15, 18

*Multi Time Machine, Inc. v. Amazon.com*,
    804 F.3d 930 (9th Cir. 2015) ........................................................................... 2, 5, 16

*NEC Electronics v. CAL Circuit Abco*,
    810 F.2d 1506 (9th Cir. 1987) .................................................................................... 7

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) ...................................................................................16, 17

*Nieves v. JPMorgan Bank, N.A.*,
    No. C 11-05260 WHA, 2012 WL 1980551 (N.D. Cal. June 1, 2012)....................................21

*Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*,
    No. C 96-2703 TEH, 1997 WL 811770 (N.D. Cal. Dec. 18, 1997) ....................................17

*Pinterest, Inc. v. Pintrips, Inc.*,
    140 F. Supp. 3d 997 (N.D. Cal. 2015) .................................................................................7

*Playboy Enterprises v. Welles*,
    279 F.3d 796 (9th Cir. 2002) ...........................................................................................18, 19

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
    354 F.3d 1020 (9th Cir. 2004) ..............................................................................................16

*Pogrebnoy v. Russian Newspaper Distribution, Inc.*,
    289 F. Supp. 3d 1061 (C.D. Cal. 2017) ...............................................................................19

*Quill Corp. v. NADA Scientific Ltd.*,
    No. 97 C 7461, 1998 WL 295502 (N.D. Ill. May 21, 1998) ................................................6

*Razor USA LLC v. Vizio, Inc.*,
    No. CV1401586SJOJCGX, 2015 WL 12656941 (C.D. Cal. Oct. 19, 2015)........................19

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*,
    53 F.3d 1073 (9th Cir. 1995) .......................................................................................*passim*

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
    845 F.3d 1246 (9th Cir. 2017) ...............................................................................................7

*Stevo Design, Inc. v. SBR Mktg. Ltd.*,
    919 F. Supp. 2d 1112 (D. Nev. 2013).................................................................................5, 14

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
    875 F.3d 426 (9th Cir. 2017) .................................................................................................21

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010)........................................................................................12, 13, 17

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
    610 F.3d 1171 (9th Cir. 2010) ...............................................................................................17

*Vapor Spot, LLC v. Breathe Vape Spot, Inc.*,
    No. CV 15-02110 MMM (EX), 2015 WL 12839123 (C.D. Cal. Sept. 15, 2015) .................20

*Vivo Per Lei, Inc. v. Bruchim*,
    No. CV 11-5169-GW, 2012 WL 13008731 (C.D. Cal. Apr. 2, 2012)................................6, 13, 14, 15

iii

*Warner-Lambert Co. v. Northside Dev. Corp.*,
    86 F.3d 3 (2d Cir. 1996) ................................................................................................... 9

*Word to Info, Inc. v. Google Inc.*,
    140 F. Supp. 3d 986 (N.D. Cal. 2015) ......................................................................... 19, 21

**Statutes**

15 U.S.C. § 1117(c) ........................................................................................................... 21

15 U.S.C. § 1125(c) ..................................................................................................... 18, 21

17 U.S.C. § 2320(f)(1) ......................................................................................................... 3

Cal. Bus. & Prof. Code § 17200 ......................................................................................... 7

**Rules**

Fed. R. Civ. P 11(b) ........................................................................................................... 12

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 1

**Other Authorities**

Barton Beebe, *The Continuing Debacle of U.S. Antidilution Law: Evidence From the First
    Year of Trademark Dilution Revision Act Case Law*,
    24 Santa Clara Comp. & High Tech. L.J. 449 (2008) ...................................................... 18

*McCarthy on Trademarks & Unfair Competition* (5th ed.) ............................................. 6, 19

Restatement (Third) Unfair Competition § 24 cmt. b (1995). ........................................... 16

## I. INTRODUCTION

A reader of Williams-Sonoma's Complaint could be forgiven for thinking that it alleged something shocking and troubling: that Amazon was selling counterfeit Williams-Sonoma goods. After all, the Complaint uses the term "counterfeit," "counterfeiting" or "counterfeit mark" thirteen times.

Nothing could be further from the truth. A careful reading of the Complaint reveals not a single allegation that Amazon or any of the third parties who sell products via the Amazon website have used the Williams-Sonoma mark in connection with any counterfeit product. Instead, Williams-Sonoma alleges that Amazon has violated the law by ***accurately*** identifying ***legitimate Williams-Sonoma products*** as exactly what they are: products made and sold by Williams-Sonoma in the first instance. Whatever else that is, it's not counterfeiting.[1]

Why would Williams-Sonoma repeatedly misuse the term "counterfeit" in its Complaint? The answer is simple: Williams-Sonoma wants to draw attention away from what it actually alleges. The law is clear that Williams-Sonoma can't get what it really wants in this suit: the power to prevent other people from reselling its products.

Two legal doctrines stand in Williams-Sonoma's way. First, buyers of branded products can lawfully resell them. The "first sale" doctrine means that a trademark owner's control over a particular copy of a product ends when that product enters the stream of commerce. Under that doctrine, someone who resells a branded product, or advertises the availability of that product, can use the original producer's trademark to accurately identify the product it is selling. Notably, that is true even if the product itself is used or refurbished, as long as it is not materially changed and as long as it is not misrepresented as being something different than it is. There is no allegation that either happened here.[2] Indeed, had Amazon hidden the fact that the goods being sold were Williams-Sonoma products, Williams-Sonoma doubtless would have complained about ***not*** being identified as the source of its goods,

---

[1]  Williams-Sonoma also makes a separate allegation that Amazon sells chairs that look too similar to chairs Williams-Sonoma sells or that have names that are too similar to chairs Williams-Sonoma sells. Those separate allegations are not the subject of this motion.

[2]  The closest Williams-Sonoma comes to a claim that the products third parties are selling on Amazon's website are "materially altered" is an allegation that someone ordered a "Williams-Sonoma Glass Hot Chocolate Pot" and it arrived broken. *See* Compl. Ex. D.  A broken container is not the sort of "material alteration" that makes a branded product no longer a branded product.  If the used Toyota I sold you is damaged *en route* to you, it doesn't magically stop becoming a Toyota.

a practice sometimes called "reverse passing off."

Second, the Ninth Circuit held as a matter of law in *Multi Time Machine, Inc. v. Amazon.com* that a defendant is not liable for using the plaintiff's mark in an Internet search result when people look for the plaintiff's products as long as the defendant accurately labels the source of the goods it actually sells. 804 F.3d 930 (9th Cir. 2015) (hereinafter, "*MTM*").  The images in Williams-Sonoma's Complaint show that Amazon accurately labeled the products as (1) originating from Williams-Sonoma, (2) sold by an identified third party, and (3) delivered by Amazon.  Compl. ¶ 26 (identifying the "Williams-Sonoma Classic Striped Dishcloths" as "by Williams-Sonoma," "Sold by My Cup of Tea, LLC," and "Fulfilled by Amazon").[3]

Notably, *MTM* held that Amazon was not infringing MTM's trademark rights as a matter of law even though there were no MTM watches available on Amazon's website at all.  As long as it accurately labeled the products that were sold, Amazon was free to offer competing watches to people who searched for MTM watches.  This case is much simpler:  Amazon **does** list Williams-Sonoma products on its site, and it has accurately labeled them as such.  That is not illegal.

Williams-Sonoma would like to be the only website that sells genuine Williams-Sonoma products.  But the law doesn't give it that power.  Calling the accurate labeling of genuine Williams-Sonoma goods "counterfeiting" doesn't change that fundamental legal principle.  Accordingly, Claims 2, 3, and 6 of the Complaint should be dismissed in their entirety, and Claims 4, 5 and 7 should be dismissed to the extent they are based on the use of the Williams-Sonoma mark.

In the alternative, and at a minimum, because the first sale doctrine and *MTM* give Amazon a reasonable basis to conclude that it does not infringe the Williams-Sonoma trademark, the Court should dismiss Williams-Sonoma's claims of willfulness based on the use of the Williams-Sonoma trademark.

## II.    FACTUAL BACKGROUND

Amazon offers one of the premier online marketplaces in the world.  Amazon and third-party sellers offer a wide variety of products via Amazon's website, including products originally sold by Williams-Sonoma.  Williams-Sonoma alleges that the appearance of the Williams-Sonoma mark on

---

[3]   Williams-Sonoma has drawn a red line through the phrase "Sold by My Cup of Tea, LLC" in its altered version of the website image, but that term is still visible in the Complaint.

Amazon's website and in Amazon's advertising infringes and dilutes Williams-Sonoma's trademark, and constitutes unfair competition. *See* Compl. ¶¶ 1-2, 10.[4]

Throughout its Complaint, Williams-Sonoma uses the word "counterfeit" to describe Amazon's actions. Counterfeiting is typically alleged where a company has applied another company's mark to products that are made by the counterfeiter, not the trademark owner, and passed those goods off as if they were made by the trademark owner. *See, e.g.*, 17 U.S.C. 2320(f)(1) (defining a counterfeit mark as a "spurious mark"); Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, H12078 (daily ed. Oct. 10, 1984) (counterfeit mark is one that is "not genuine or authentic"); 4 McCarthy on Trademarks and Unfair Competition § 25:10 (5th ed.) ("Often, counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise."). That is not what Williams-Sonoma alleges.

Rather, Williams-Sonoma defines "Counterfeit Mark" as a "mark identical to WSI's WILLIAMS-SONOMA Mark" that Amazon has allegedly been using "to advertise, promote and offer competing retail services." Compl. ¶ 24. It then lists various ways that the "Counterfeit Mark" appears on Amazon's website or in its advertisements, including:

- At the top of product pages that disclose that the product at issue is sold by an identified third-party seller and "fulfilled by Amazon," Amazon states that the Williams-Sonoma product that the consumer is looking for is "by Williams-Sonoma," *id.* ¶ 26;

- Amazon includes the phrases "Shop Williams-Sonoma" and "Best Selling Products from Williams-Sonoma" on a page that consumers see after clicking on the "by Williams-Sonoma" hyperlink from the above product page, *id.* ¶ 27;

- Amazon emails customers about particular Williams-Sonoma products available on its website, *id.* ¶ 30; and

- A search for "Williams-Sonoma" using Google's search engine returns as a result the below paid advertisement for "Williams & Sonoma at Amazon," *id.* ¶ 32:

---

[4] For the purposes of this motion only, Amazon accepts well-pleaded allegations in Williams-Sonoma's Complaint as true.

Williams-Sonoma also alleges that the appearance of the so-called "Counterfeit Mark" on Amazon.com and in Amazon's advertising confuses consumers into believing that Williams-Sonoma (as opposed to the identified third-party seller or Amazon itself) is the one selling the Williams-Sonoma goods on Amazon. *See, e.g.*, *id.* ¶ 26 ("Specifically, Defendant displays the Counterfeit Mark on its website in a confusing manner that is likely to lead, and has led, consumers to believe that Defendant's platform is authorized by or is otherwise affiliated with, associated with, or approved by WSI."); *id.* ¶ 27 (appearance of the Williams-Sonoma mark on Amazon "falsely impl[ies] that WSI is the one offering its products for sale on the Amazon website"); *id.* ¶ 29 (alleging that Amazon uses the Williams-Sonoma Mark "by purchasing keyword advertising that Amazon users to serve misleading advertisements suggesting that Amazon is an authorized WILLIAMS-SONOMA retailer").

But Williams-Sonoma never advances the main claim that one would expect to find in a case about counterfeiting: that any of the goods listed for sale on Amazon's website under the Williams-Sonoma trademark are anything other than genuine Williams-Sonoma goods. To the contrary, in the rare instance that Williams-Sonoma alleges anything at all about the origins of the goods on Amazon's website, it admits that they are genuine Williams-Sonoma products. *See id.* ¶ 31 (referring to the Williams-Sonoma peppermint bark sold via Amazon's website and advertised by Amazon as the "same" product sold by Williams Sonoma). Accordingly, all Williams-Sonoma has alleged is that Amazon and third parties sell genuine Williams-Sonoma products via Amazon's website, and accurately advertise those genuine products as being sold by Williams-Sonoma in the first instance.

## III.    ARGUMENT

To survive a motion to dismiss, Williams-Sonoma must allege sufficient facts to "state a claim to relief that is plausible on its face."  *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007).  In evaluating whether Williams-Sonoma has stated a plausible claim to relief, the Court must accept Williams-Sonoma's well-pleaded factual allegations as true, but it need not credit legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Nor will "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . suffice." *Id.*

Williams-Sonoma's claims fail that standard for several reasons.  First, Williams-Sonoma's trademark infringement, trademark dilution, and unfair competition claims should be dismissed under the first sale doctrine because Williams-Sonoma has alleged only that Amazon (or the third parties who sell products via Amazon's website) has used the Williams-Sonoma mark in connection with genuine Williams-Sonoma products.  Those claims fail under the first sale doctrine as a matter of law.  *See Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d 1112, 1122 (D. Nev. 2013) (dismissing trademark claims under the first sale doctrine).

Second, Williams-Sonoma's trademark infringement, trademark dilution, and unfair competition claims should be dismissed because the Ninth Circuit has held as a matter of law that accurately identifying products sold via Amazon's website does not confuse consumers, and therefore is not trademark infringement.  *See MTM*, 804 F.3d 930.

Third, Williams-Sonoma's trademark dilution claims should be dismissed for the additional reason that Williams-Sonoma has not alleged that Amazon is using the Williams-Sonoma mark to brand its own, different goods, as required under the federal dilution statute, rather than to describe Williams-Sonoma's goods.

Fourth, in the alternative, even if Williams-Sonoma's trademark and unfair competition claims survive a motion to dismiss, this Court should dismiss the allegations that Amazon's use of the Williams-Sonoma mark was willful because Williams-Sonoma has not plausibly alleged that Amazon lacked a reasonable belief that its use of the Williams-Sonoma mark was lawful given those legal doctrines.  *See Blockbuster Videos, Inc. v. City of Tempe*, 141 F.3d 1295, 1300 (9th Cir. 1998).

**A.  Williams-Sonoma's Trademark Infringement, Unfair Competition and Dilution Claims Relating to Amazon's Listing of Genuine Williams-Sonoma Products Should Be Dismissed Under the First Sale Doctrine**

Retailers like Williams-Sonoma often wish to stop others from reselling their products.  But trademark law has never given them that power.  Rather, courts have repeatedly held under the first sale doctrine that "[r]esale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition."  *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995); *see also Quill Corp. v. NADA Scientific Ltd.*, No. 97 C 7461, 1998 WL 295502, at *2-4 (N.D. Ill. May 21, 1998) (citing *Sebastian* and dismissing trademark dilution claims under the first sale doctrine).

Williams-Sonoma is but the latest retailer to sue Amazon attempting to get around this rule.  *See, e.g.*, *Vivo Per Lei, Inc. v. Bruchim*, No. CV 11-5169-GW (JCGX), 2012 WL 13008731 (C.D. Cal. Apr. 2, 2012), *adopted as final* by No. CV 11-5169-GW (JCGX), Dkt. 75 (dismissing manufacturer's claims against Amazon under the first sale doctrine); *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 819–20 (N.D. Ill. 2016) (dismissing author's claims against Amazon under the first sale doctrine).  Williams-Sonoma seeks to avoid that precedent by labeling the use of the Williams-Sonoma mark in connection with the resale of Williams-Sonoma products as "counterfeiting."  *See, e.g.*, Compl. ¶ 24.

Calling Amazon's actions counterfeiting, however, does not make it so.  Counterfeiting has a particular meaning in trademark law:  It is "the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark."  4 *McCarthy on Trademarks & Unfair Competition* § 25:10 (5th ed.).  That is not what Williams-Sonoma alleges.  Labels aside, Williams-Sonoma has plausibly alleged only that Amazon and third-party sellers are reselling and advertising accurately labeled Williams-Sonoma products.  Those claims should be dismissed under the first sale doctrine.

**1.  Amazon and Third-Party Sellers May Legally Resell Williams-Sonoma Products Under Williams-Sonoma's Trademark**

Williams-Sonoma's trademark and unfair competition claims related to the display and sale of goods under the Williams-Sonoma mark should be dismissed under the first sale doctrine.  "Trademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is

without the mark owner's consent." *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987).[5]  That rule—known as the first sale doctrine—means that "a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act." *Sebastian,* 53 F.3d at 1076.  Resellers can even sell refurbished goods without running afoul of a trademark owner's rights, so long as the refurbished goods are accurately labeled.  *See, e.g.*, *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947) (dealer of reconditioned spark plugs did not have to remove the Champion mark, so long as it accurately identified the spark plugs as used or reconditioned).  Notably, the first sale doctrine bars the trademark owner's claims ***even if*** "consumers erroneously believe the reseller is affiliated with or authorized by the producer." *Sebastian*, 53 F.3d at 1076; *see also NEC Electronics*, 810 F.2d at 1508 (applying the first sale doctrine even though some of the resellers' customers "mistakenly thought their chips were protected by [the original manufacturer's] servicing and warranties").

This well-known bar on using trademark law to stop the resale of accurately labeled, genuine goods is why Williams-Sonoma is so eager to cast Amazon's actions as "counterfeiting."  But the resale of goods under the original seller's trademark is trademark infringement only when the product has been modified in such a way that "it would be a misnomer to call the article by its original name." *Champion Spark Plug*, 331 U.S. at 129.  The Ninth Circuit has held, for example, that a reseller was liable for trademark infringement when it re-labeled slower Intel processor chips as faster chips and sold them under the Intel mark.  *See Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614 (9th Cir. 1993).  In that case, the court held that "[i]n essence, the modified math coprocessors were counterfeit copies of the faster and more expensive models" because the slower chips were significantly lower in quality than the faster ones.  *Id.* at 619-20.  Williams-Sonoma has not alleged any similar alteration here.  *See* Section III.A.2.a, *infra*.  To the contrary, there is no dispute that the goods in question are genuine Williams-Sonoma

---

[5] Because "the test is [] identical" for unfair competition claims as for trademark infringement claims, Amazon analyzes them together.  *See Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249 (9th Cir. 2017).  Similarly, Williams-Sonoma's state law claims and the federal claims are analyzed under the same standard, and will be discussed together.  *See, e.g.*, *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."); *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1031 (N.D. Cal. 2015) ("While Pinterest has brought dilution claims under both federal and California state law, the analysis under each is the same.").

products.  Nor has Williams-Sonoma alleged what the Ninth Circuit has referred to as "classic counterfeiting"—when a defendant applies a trademark to goods that did not originate with the trademark owner (i.e., selling "*non-Intel* math co-processors which had been labeled as Intel co-processors").  *See id.*

What Williams-Sonoma *has* alleged is the resale of genuine Williams-Sonoma goods under the Williams-Sonoma trademark, and the truthful advertising of the same.  Williams-Sonoma alleges, for example, that "[a]t the top of product pages for purported Williams-Sonoma products for sale on the <amazon.com> platform and 'Fulfilled by Amazon,' the phrase 'by Williams-Sonoma' appears."  Compl. ¶ 26.  Williams-Sonoma uses the word "purported" to create the impression that the products listed on Amazon's website are not Williams-Sonoma products.  But the Complaint does not include *any* allegation—either in that paragraph or any other paragraph—that any Williams-Sonoma product sold by Amazon was not originally sold by Williams-Sonoma.

To the contrary, as noted above, parts of Williams-Sonoma's Complaint acknowledge that the products sold via Amazon's website are the same as those sold by Williams-Sonoma.  Specifically, Williams-Sonoma alleges that the Williams-Sonoma Peppermint Bark advertised by Amazon and listed on Amazon's website is more expensive than the "price at which WSI sells *the same product* on its own authorized e-commerce site."  Compl. ¶ 31 (emphasis added); *see also id.* ¶ 33 (alleging consumer complaints that prices on Amazon's website were higher than those charged "*for the same products* on WSI's authorized e-commerce sites") (emphasis added).

Williams-Sonoma's repeated use of the word "counterfeit" aside, those allegations fit squarely within the first sale doctrine.  Indeed, if Amazon had *not* accurately labeled the Williams-Sonoma products available through its website as being "by Williams-Sonoma," it might be accused of "misrepresent[ing] someone else's goods or services as his own" or "reverse passing off."  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003).  Williams-Sonoma would likely still be suing Amazon, albeit under a different theory.  Because Williams-Sonoma's claims related to the display of Williams-Sonoma products on Amazon.com are barred by the first sale doctrine, they should be dismissed.  To conclude otherwise would make it impossible for any retailer to resell genuine trademarked goods.

1

2

      2.      **Williams-Sonoma Has Not Plausibly Alleged an Exception to the First Sale Doctrine**

3

      Williams-Sonoma understands that its claims run smack into the first sale doctrine.  It therefore

4

peppers its Complaint with rote allegations aimed at satisfying various "exceptions" to the rule.  In

5

particular, Williams-Sonoma nods to (1) the "quality control" exception, *see Esnesco Corp. v.*

6

*Price/Costco Inc.*, 146 F.3d 1083, 1087 (9th Cir. 1998); and (2) the exception for false representations

7

that the reseller is an authorized dealer, *Sebastian*, 53 F.3d at 1076.  Neither exception applies.

8

      a.      **Williams-Sonoma Has Not Adequately Pled the "Quality Exception"**

9

      Williams-Sonoma alleges that "the services Amazon offers under the Counterfeit Mark to

10

consumers . . . appear to be deficient in quality and damaging to the Williams-Sonoma brand."  Compl.

11

¶ 33.  To be sure, courts have recognized that the first sale doctrine does not apply when the resold goods

12

do not meet the quality control standards of the original seller.  *See, e.g.*, *Enesco Corp.*, 146 F.3d at 1087

13

(citing *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996), and explaining that the

14

quality control exception was "largely developed by the Second Circuit").  As the Second Circuit has

15

explained, however, the first sale doctrine still applies unless: "(i) [the plaintiff] has established

16

legitimate, substantial, and nonpretextual quality control procedures, (ii) [the plaintiff] abides by these

17

procedures, and (iii) the non-conforming sales will diminish the value of the mark."  *Warner-Lambert*

18

*Co.*, 86 F.3d at 6; *see also* 4 McCarthy on Trademarks & Unfair Competition § 25:42 (5th Ed.) ("The

19

trademark owner cannot hold a defendant to a higher level of quality control than the trademark owner

20

itself observes.").  The Ninth Circuit has held that Williams-Sonoma must also allege "some defect (or

21

potential defect) in ***the product itself*** that the customer would not be readily able to detect."  *Enesco*, 146

22

F.3d at 1087 (quoting *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 591 (5th Cir.

23

1993)) (emphasis in original).

24

      Williams-Sonoma's allegations fall short.

25

      Williams-Sonoma lists the legal elements of the quality control exception.  It pleads that (1) it

26

"devotes an enormous amount of resources to product development and quality control," Compl. ¶ 21;

27

and (2) the products sold through Amazon's website "are not subject to WSI's quality control measures,"

28

*id.* ¶ 3.  But *Twombly* and *Iqbal* forbid Williams-Sonoma from merely reciting the elements of its claims.

*Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the

elements of a cause of action will not do.").  Williams-Sonoma must allege facts that make the claims

plausible on their face.  *Twombly*, 550 U.S. at 570.  Williams-Sonoma does not allege ***any*** facts in its

Complaint about its quality control standards, let alone facts that it make it plausible that Amazon

violates them.  Williams-Sonoma never alleges what its quality control standards are; it never alleges

what steps Williams-Sonoma takes to implement those standards; and it never alleges what actions

Amazon takes that violate those standards.

Williams-Sonoma has also not alleged any potential defect "***in the product itself*** that the

customer would not be readily able to detect."  *Enesco*, 146 F.3d at 1087 (emphasis in original).

Williams-Sonoma baldly asserts that products sold via Amazon's website are of lower quality than those

sold by Williams-Sonoma directly.  *See, e.g.*, Compl. ¶ 34 ("The services Amazon offers under the

Counterfeit Mark to consumers also appear deficient in quality and damaging to the Williams-Sonoma

brand.").  But most of its complaints aren't about the ***quality*** of the product at all.  Williams-Sonoma

alleges, for example, that certain products are more expensive when purchased through Amazon's

website than from Williams-Sonoma directly.  *See* Compl. Ex. D (consumer complaint that hand soap

was more expensive than the customer thought it should be).  But Williams-Sonoma cannot use

trademark law to set a ceiling on the price of its products.  *See, e.g., Brain Pharma, LLC v. Scalini*, 858

F. Supp. 2d 1349 (S.D. Fla. 2012) (holding that reselling the mark owner's products for 50 percent below

their retail price did not overcome the first sale doctrine, and dismissing the suit for failure to state a

claim). Williams-Sonoma also alleges discrepancies between the way some products are listed on

Amazon's website and the products themselves.  *See id.* (Consumer complaints that dish soap was

advertised at twenty ounces but was really sixteen, and that soap bottles were sent without pumps that

were pictured in the Amazon listing).  Inaccurate advertising is also not a defect in the product itself.[6]

Williams-Sonoma has only two allegations that even arguably relate to product quality: (1) a

consumer complaint that a glass of hot chocolate arrived broken; and (2) a consumer complaint that a

---

[6]   Nor does Williams-Sonoma even allege that those listings were written by Amazon.  And Williams-Sonoma nowhere alleges any theory of secondary liability for alleged misconduct by the actual resellers of genuine Williams-Sonoma products.

1   wash cloth was smaller than one the customer had previously purchased directly from Williams-Sonoma.

2   *Id.*  With respect to the second allegation, that a customer had previously purchased a larger washcloth

3   from Williams-Sonoma does not make the new washcloth purchased through Amazon—also not alleged

4   to be anything other than a genuine Williams-Sonoma product—"defective."  Even if it did, the defect

5   would be "readily apparent" to the consumer.  *Enesco*, 146 F.3d at 1087.

6          Williams-Sonoma's allegation with respect to the broken glass fares no better.  The Ninth Circuit

7   held in *Enesco* that breakage does not fall under the quality exception to the first sale doctrine when the

8   reseller has accurately disclosed its role.  In *Enesco*, the plaintiff made ceramic figurines, which the

9   defendant re-packaged and re-sold.  The plaintiff argued that the quality control exception to the first sale

10  doctrine applied, even if the reseller disclosed its repackaging.  Specifically, the plaintiff claimed that it

11  could not control the quality of the figurines because the defendant's "inadequately protective

12  repackaging exposes figures to breakage or chipping that may go undetected by the consumer, especially

13  since the potential customers are not able to handle and examine the figures in the store."  *Enesco*, 146

14  F.3d at 1087.  The Court, however, held that the plaintiff's "contention seeks to push the quality control

15  exception beyond its reasonable limit" because "[i]f the public were adequately informed that [the

16  defendant] repackaged the figures and the figures were subsequently chipped, the public would not likely

17  be confused as to the cause of the chipping."  *Id.*  Here, Plaintiff itself alleges that the Amazon website

18  states that the products are "Fulfilled by Amazon."  Compl. ¶ 33; *see also id.* ¶ 26.  As in *Enesco*,

19  Amazon's disclosure that ***it*** is fulfilling orders and a ***third party*** is selling the item, and not Williams-

20  Sonoma, means as a matter of law that customers would not be confused as to the source of the damage.

21         Unable to plead any actual conduct that would fall outside of the first sale doctrine, Williams-

22  Sonoma resorts to an allegation that "[p]ursuant to Rule 11(b), WSI further alleges that discovery is

23  likely to show sales of a wide variety of WILLIAMS-SONOMA branded products using misleading

24  designations, including perishables that cannot be delivered in a safe fashion, through the 'by Williams-

25  Sonoma' site 'Fulfilled by Amazon.'"  Compl. ¶ 33.  Williams-Sonoma's attempt to make this case look

26  more like cases covered by the quality exception fails.  *Cf. Adolph Coors Co. v. A. Genderson & Sons,*

27  *Inc.*, 486 F. Supp. 131 (D. Colo. 1980) (defendant infringed the plaintiff's trademark by selling

28  improperly refrigerated beer).

First, it is unclear what that allegation means.  Williams-Sonoma has not alleged the type of perishables at issue, why they cannot be delivered safely, or why the fact that "perishables that cannot be delivered in a safe fashion" might appear on Amazon's website constitutes a "misleading designation[]." It has pointed to no facts, no examples, and no reason to believe Amazon, a famously customer-focused company and the owner of a major grocery chain, is incapable of delivering perishable goods to consumers.

Second, Williams-Sonoma is again doing exactly what *Twombly* and *Iqbal* forbid: making conclusory statements with the hopes of proceeding to discovery anyway.  Indeed, by alleging that "*discovery is likely to show* a wide variety of WILLIAMS-SONOMA branded products using misleading designations," Williams-Sonoma all but admits that it lacks a good faith basis to allege that Amazon's website ***actually*** features products with such misleading designations.  Williams-Sonoma cannot evade its obligation to plead "factual content that allows the court to draw the reasonable inference" that Amazon is liable by pleading instead what it hopes to learn through discovery.  *Iqbal*, 556 U.S. at 678.

Accordingly, Williams-Sonoma has not adequately alleged that the quality exception to the first sale doctrines applies.

**b.   Williams-Sonoma Has Not Plausibly Pled that Amazon's Advertising Suggests It Is an Authorized Retailer**

Nor has Williams-Sonoma adequately alleged that Amazon has held itself out as a Williams-Sonoma authorized retailer.  Under the first sale doctrine, Amazon may lawfully advertise that genuine Williams-Sonoma products are available through its website—including using Williams-Sonoma's mark on its website and in advertising.  *See, e.g.*, *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010) ("While a trademark conveys an exclusive right to the use of a mark in commerce in the area reserved, that right generally does not prevent one who trades a branded product from accurately describing it by its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product."); *Vivo Per Lei, Inc.*, 2012 WL 13008731, at *3 ("A retailer can use a brand name on Web site ads selling that branded product without a license from the trademark owner.") (quoting 4 McCarthy on Trademarks & Unfair Competition § 25:41).  To fall outside of the first sale doctrine, Amazon's advertisements must be "likely to cause the public to believe the reseller was part of

the producer's authorized sales force or one of its franchisees." *Sebastian*, 53 F.3d at 1076.

Williams-Sonoma has not plausibly alleged any facts suggesting that Amazon's advertising is likely to cause the public to believe that the reseller was part of Williams-Sonoma's authorized sales force. Williams-Sonoma alleges that Amazon purchases keywords similar to the Williams-Sonoma mark in connection with advertisements in search engine results and gives an example of one of those advertisements. Compl. ¶ 32. Williams-Sonoma also alleges that Amazon sent a marketing email advertising "Williams-Sonoma Peppermint Bark 1 Pound Tin and more items for you." *Id.* ¶ 30. Nothing in either advertisement suggests that Amazon is an official retailer of Williams-Sonoma products. Both advertisements simply state the truth: that Williams-Sonoma products are available through Amazon's website. Courts have found that similar advertisements are not trademark infringement as a matter of law.

In *Tiffany*, for example, the Court cited first-sale-rule cases in holding that eBay's advertising of Tiffany products on its website did not violate the Lanham Act as a matter of law. *Tiffany*, 600 F.3d at 103. One of those advertisements read: "Tiffany on eBay. Find tiffany items at low prices. With over 5 million items for sale every day, you'll find all kinds of unique [unreadable] Marketplace. www.ebay.com." *Id.* at 101. This advertisement is identical in all material respects to the "Williams-Sonoma Peppermint Bark 1 Pound Tin and more items for you" marketing email that Williams Sonoma complains about. Notably, eBay was not liable in that case even though its site contained a number of truly counterfeit Tiffany products. Amazon's case is much stronger, since there is no allegation that any true counterfeit Williams-Sonoma products are advertised or sold on Amazon.

The court's opinion in *Vivo Per Lei* is even more on point. There, as here, the plaintiff sued Amazon for trademark infringement, alleging that Amazon engaged in "extensive advertising campaigns, including prolific bidding on Vivo's Marks as keyword triggers for paid advertisements and using the Marks as the title and/or within the text of paid advertisements." *Vivo Per Lei*, 2012 WL 1300731, at *1-2. Amazon moved to dismiss the plaintiff's claims under the first sale doctrine, and the court agreed. The court reasoned that "extensive, successful or prolific advertising does not, in and of itself, fit within the exception to the 'first sale' doctrine for use of the trademark in question 'in a manner likely to cause the public to believe the reseller was part of the producer's authorized sales force or one of its

1  franchisees.'" *Id.* at *4 (quoting *Sebastian*, 53 F.3d at 1076).  To hold otherwise would "effectively

2  neuter[] the 'first sale' doctrine, especially in the Internet age." *Id.*  Nothing distinguishes this case from

3  *Vivo Per Lei.*

4            **3.      Williams-Sonoma Cannot Evade the First Sale Rule by Alleging that Amazon
                       Provides a "Service" or a "Shop"**
5

6            Williams-Sonoma may also argue that the first sale doctrine does not apply to its allegations that

7  Amazon infringes its service mark or its mark in Williams-Sonoma stores rather than its mark with

8  respect to particular products.  See, e.g., Compl. ¶¶ 19, 88.  Williams-Sonoma cannot so easily evade the

9  first sale doctrine.

10           The first sale doctrine applies equally to service marks as to marks with respect to branded

11 products "at least where the service can be sold and resold without change to its 'nature, quality, and

12 genuineness.'"  *Stevo Design*, 919 F. Supp. 2d at 1122.  In any event, the only "service" at issue here is

13 Amazon's and third-parties' resale of Williams-Sonoma's branded products.

14           Williams-Sonoma cannot evade the first sale rule by simply asserting that "Amazon has set up an

15 unauthorized WILLIAMS-SONOMA branded store on its website."  Compl. ¶ 3.  The evidence in the

16 complaint supposedly supporting this contention actually shows that  (1) after searching for a Williams-

17 Sonoma product on Amazon's website, the user views a webpage headlined "Amazon.com" with the

18 familiar Amazon banner, stating—correctly—that the product the consumer searched for on Amazon is

19 "by Williams-Sonoma," sold by an identified third party, and "fulfilled by Amazon"; (2) when the

20 customer clicks on "by Williams-Sonoma," he or she is taken to another webpage displaying a list of

21 Williams-Sonoma products actually available through Amazon's website; and (3) that second webpage

22 contains the phrase "Shop Williams-Sonoma."  *Id.* ¶¶ 26-27.

23           Williams-Sonoma alleges that this second web page's use of the phrase "Shop Williams-Sonoma"

24 "falsely indicat[es] that consumers are browsing a shop offered by, authorized by, or affiliated with WSI."  *Id.*

25 ¶ 27.  But "a retailer can use a brand name on Web site ads selling that branded product without a license

26 from the trademark owner."  *Vivo Per Lei, Inc.*, 2012 WL 13008731, at *3 (quotation marks omitted); *see*

27 *also* 4 McCarthy on Trademarks and Unfair Competition § 25:43 (5th ed.) ("The right to resell a genuine

28 branded item in an unchanged state should also carry with it the right to advertise to others that the dealer is

selling those branded products, so long as such advertising does not mislead customers into mistakenly

believing that the dealer is an agent or an "authorized distributor" of the manufacturer.").  That is all that

Williams-Sonoma has alleged here.

Williams-Sonoma makes no allegation that Amazon has used the term "Williams-Sonoma"

except in connection with the sale of legitimate Williams-Sonoma products.  Calling that lawful conduct

"counterfeiting" does not change that.  *Cf. Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507

F.3d 252 (4th Cir. 2007) ("In selling 'Chewy Vuiton' dog toys, Haute Diggity Dog is not selling knock-

off LOUIS VUITTON handbags with a counterfeit LV mark, and no reasonable trier of fact could so

conclude.").  To conclude that the act of lawfully reselling genuine goods infringes the mark owner's

rights for the service of selling those goods would make a mockery of the first sale doctrine.  *Sebastian*,

53 F.3d at 1076 (the first sale doctrine is not "rendered inapplicable merely because consumers

erroneously believe the reseller is affiliated with or authorized by the producer.").

### B. As a Matter of Law, Amazon Cannot Be Liable for Trademark Infringement, Dilution or Unfair Competition for Accurately Labeling the Products on Its Website

Williams-Sonoma's allegations regarding the display of the Williams-Sonoma trademark on

Amazon's website fail for a second, independent reason: accurately informing consumers that genuine

Williams-Sonoma products are available through Amazon's website is not trademark infringement under

binding Ninth Circuit authority.

Williams-Sonoma alleges that Amazon infringes its trademark when it uses phrases like "shop

Williams-Sonoma" or "by Williams-Sonoma" on web pages featuring Williams-Sonoma goods for sale.

*See, e.g.*, Compl. ¶¶ 26-27.  Those allegations fail to state a claim under the Ninth Circuit's holding in

*MTM*.  In that case, the Ninth Circuit held as a matter of law that, where Amazon's search results page

clearly labeled the name and manufacturer of each product offered for sale, "no reasonably prudent

consumer accustomed to shopping online would likely be confused as to the source of the products."

*MTM*, 804 F.3d at 933.  MTM, a watch manufacturer, had sued Amazon for trademark infringement

"because when a customer searches for MTM Special Ops watches on Amazon.com, the search results

page displays the search term used—here, 'mtm special ops'—followed by a display of numerous

watches manufactured by MTM's competitors and offered for sale by Amazon, without explicitly

informing the customer that Amazon does not carry MTM watches." *Id.* at 936.  The Ninth Circuit,

however, concluded as a matter of law that Amazon had not infringed MTM's trademark because of the

"clear labeling Amazon uses on its search results page." *Id.* at 938; Restatement (Third) of Unfair

Competition § 24 cmt. B (1995).  ("[N]o infringement occurs when the use of a mark properly identifies

the source, sponsorship, or certification of the goods or services, even if the owner of the mark objects to

the use.").

Here, Williams-Sonoma's own allegations establish that Amazon clearly labels its website.

Williams-Sonoma's Complaint includes a screen shot of the page that customers see when they look for

Williams-Sonoma goods using Amazon's website.  *See* Compl. ¶ 26.  The web page says that the product

is sold by "My Cup Of Tea, LLC," not Williams-Sonoma.  *Id.*  It also says that the order is "Fulfilled by

Amazon," not Williams-Sonoma.  *Id.*  Saying that the product itself is "by Williams-Sonoma" is not

misleading—it's true.

Nor does Amazon's alleged purchase of words similar to the Williams-Sonoma mark as keywords

for advertisements in search results change the result.  The Ninth Circuit has recognized that the purchase

of another's mark as a keyword is not, in and of itself, trademark infringement.  *See, e.g.*, *Network

Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1154 (9th Cir. 2011) (alleged

infringer's use of a competitor's trademark as a search engine keyword that triggered the display of the

alleged infringer's own advertisements was not likely to cause confusion); *Playboy Enters., Inc. v.

Netscape Commc'ns Corp.*, 354 F.3d 1020, 1036 (9th Cir. 2004) (Berzon, J., concurring) (purchase of

trademark as keyword was not trademark infringement where the banner advertisements returned in

search results were clearly labeled) (cited with approval in *MTM*).  Rather, "[i]n the keyword advertising

context the likelihood of confusion will ultimately turn on what the consumer saw on the screen and

reasonably believed, given the context."  *Network Automation Inc.*, 638 F.3d at 1153.  Here, the very

advertisements that Williams-Sonoma points to in its Complaint clearly inform the user that it is an

advertisement for Williams-Sonoma products sold via Amazon.com.  In other words, the advertisements

are clearly labeled and accurate.  The Ninth Circuit has said that is not trademark infringement as a

matter of law.

Indeed, Amazon's position in this case is significantly stronger than in *MTM*.  Here, the products

available via Amazon's website are actual Williams-Sonoma goods, rather than goods from Williams-Sonoma's competitors.  Courts have consistently recognized that resellers like Amazon or the third parties selling Williams-Sonoma goods via Amazon's online marketplace can use another company's mark to describe that company's products.  Accurately doing so is lawful, even in the face of claims that that accurate labeling creates a risk that consumers will think the companies are affiliated.  *See, e.g.*, *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) (Lexus broker could lawfully use Lexus mark in its domain name without having to expressly disavow association with the trademark holder); *Tiffany*, 600 F.3d at 102–03 (eBay could lawfully use Tiffany's mark on its website and in sponsored links because "eBay used the mark to describe accurately the genuine Tiffany goods offered for sale on its website"); *Patmont Motor Werks, Inc. v. Gateway Marine, Inc*., No. C 96-2703 TEH, 1997 WL 811770, at *4 (N.D. Cal. Dec. 18, 1997) (defendant that sold Go-Ped scooters could use the word "Go-Ped" on his website because "Go-Peds simply are not identifiable without using the word 'Go-Ped'").

 At the very least, Williams-Sonoma must allege something ***other than accurate labeling of Williams-Sonoma products*** in order to state a claim that consumers might be confused into thinking there was an affiliation or sponsorship relationship between the companies.  The mere use of a mark to accurately describe the plaintiff's goods doesn't do so.  "Outside the special case of trademark.com, or domains that actively claim affiliation with the trademark holder, consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page, if then.  This is sensible agnosticism, not consumer confusion."  *Tabari*, 610 F.3d at 1179.  Were it otherwise, both the first sale doctrine and the right of third parties to service trademarked products would be undermined by the sort of casual, unsupported assertion of confusion alleged here.[7]

---

[7] While *MTM* directly addressed only a claim for trademark infringement, its rationale extends to Williams-Sonoma's dilution claims as well.  Williams-Sonoma has not alleged any facts to support its dilution claim beyond those it pleads in support of trademark infringement.  In that circumstance, this Court should follow previous courts in finding that the claims stand or fall together.  *See* Barton Beebe, *The Continuing Debacle of U.S. Antidilution Law: Evidence From the First Year of Trademark Dilution Revision Act Case Law*, 24 Santa Clara Comp. & High Tech. L.J. 449, 459-60 (2008) (finding in an empirical analysis that "of . . . opinions that analyzed both an infringement and a dilution cause of action, none found dilution without also finding infringement.").

1

### C.  Williams-Sonoma's Dilution Claims Fail Because Williams-Sonoma Has Not Alleged that Amazon Is Using the Williams-Sonoma Mark To Identify Amazon's Own Goods or Services

2

3        Williams-Sonoma's dilution claims fail for the additional reason that Williams-Sonoma has not

4  alleged that Amazon is using the Williams-Sonoma mark in order to identify Amazon's *own* goods and

5  services.  Under the Trademark Dilution Revision Act of 2006 ("TDRA"), there are two types of

6  actionable trademark dilution: dilution by "blurring" and dilution by "tarnishment."  15 U.S.C. §§

7  1125(c)(2)(B)-(C).  Williams-Sonoma alleges both.  *See* Compl. ¶ 94 (alleging that Amazon "is making

8  use in commerce of a mark that dilutes . . . WSI's WILLIAMS-SONOMA Mark by *eroding* the public's

9  exclusive identification of this famous mark with WSI, [and] *tarnishing and degrading* the positive

10 associations and prestigious connotations of the WILLIAMS-SONOMA Mark") (emphasis added).

11        Both dilution by blurring and dilution by tarnishment, however, require that Amazon use the

12 Williams-Sonoma mark to brand its own goods, not simply to refer to Williams-Sonoma's goods.  That

13 makes sense.  Using "Williams-Sonoma" to refer to Williams-Sonoma's own products can't blur the

14 relationship between the mark and the goods.  Indeed, it reinforces it.

15        In *Playboy Enterprises v. Welles*, 279 F.3d 796 (9th Cir. 2002), the Ninth Circuit made it clear

16 that dilution simply does not apply to the use of a mark to identify the mark owner:  "Uses that do not

17 create an improper association between a mark and a new product but merely identify the trademark

18 holder's products should be excepted from the reach of the anti-dilution statute.  Such uses cause no

19 harm. . . . A nominative use, by definition, refers to the trademark holder's product.  It does not create an

20 improper association in consumers' minds between a new product and the trademark holder's mark."  *Id.*

21 at 806. Similarly, courts considering parodies have repeatedly held that a parody does not blur, but rather

22 reinforces, the connection between the mark and the mark owner, and so does not dilute. *Louis Vuitton*,

23 507 F.3d at 267) ("[B]y making the famous mark an object of the parody, a successful parody might

24 actually enhance the famous mark's distinctiveness by making it an icon. The brunt of the joke becomes

25 yet more famous.").

26        Here, Williams-Sonoma has alleged only that Amazon and third-party sellers using Amazon's

27 website used Williams-Sonoma's *own* mark to identify Williams-Sonoma's *own* products.  *See* Section

28 III.A, *supra*.  It has not alleged that Amazon used the Williams-Sonoma mark in order to identify

1   Amazon's *different* products or services, as required to make out a claim under the TDRA.  Williams-

2   Sonoma's own legitimate products cannot impair the distinctiveness of their own mark.  *Playboy*, 279

3   F.3d at 805 ("We hold that nominative uses, by definition, do not dilute the trademarks.").  Williams-

4   Sonoma's trademark dilution claims should therefore be dismissed.

5         **D.**      **Williams-Sonoma Has Not Sufficiently Alleged that Amazon's Use of the Williams-**

6                        **Sonoma Mark in Connection with the Sale of Genuine Williams-Sonoma Products**
                     **Was "Willful"**

7         Even if the Court declines to dismiss Williams-Sonoma's claims in their entirety, it should

8   dismiss Williams-Sonoma's claims that any unlawful use of the Williams-Sonoma mark by Amazon was

9   willful.  *See, e.g.*, *Word to Info, Inc. v. Google Inc.*, 140 F. Supp. 3d 986, 989 (N.D. Cal. 2015) (noting

10   that courts will dismiss insufficiently pled claims for willful patent infringement).

11         To plead willfulness, Williams-Sonoma must allege that Amazon had a "deliberate intent to

12   deceive."  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406-07 (9th Cir. 1993), *abrogated on other*

13   *grounds by SunEarth, Inc. v. Sun Earth Power Co., Ltd.*, 938 F.3d 1179 (9th Cir. 2016); *see also*

14   *Pogrebnoy v. Russian Newspaper Distribution, Inc.*, 289 F. Supp. 3d 1061, 1072 (C.D. Cal. 2017)

15   (same).  That means it must allege that Amazon did not reasonably believe that its use of the Williams-

16   Sonoma trademark was lawful.  *See Blockbuster*, 141 F.3d at 1300 ("Infringement is not willful if the

17   defendant might have reasonably thought that its proposed usage was not barred by the [Lanham Act].")

18   (quotation marks omitted); *Razor USA LLC v. Vizio, Inc.*, No. CV1401586SJOJCGX, 2015 WL

19   12656941, at *6–7 (C.D. Cal. Oct. 19, 2015) ("Ninth Circuit law clearly holds that knowing use of a

20   mark in the valid belief that there is no consumer confusion is not bad faith or willful."); *see also* 5

21   *McCarthy on Trademarks & Unfair Competition* § 30:62 (5th ed.) ("It has been held that a plaintiff is not

22   entitled to a monetary award when the defendant acted in a good faith belief in its right to use the

23   mark.").

24         While Williams-Sonoma repeatedly uses the word "willful" in its Complaint, it does not come

25   close to meeting this standard.  Williams-Sonoma alleges that:

26         •   "Amazon's acts are willful, with the deliberate intent to trade on the goodwill of the

27             WILLIAMS-SONOMA Mark, cause confusion and deception in the marketplace, and

28             customers of WSI's services to Amazon," Compl. ¶ 37;

- "Amazon has committed the foregoing acts of infringement and counterfeiting with full knowledge of WSI's prior rights in the WILLIAMS-SONOMA Mark and with the intent to cause confusion and trade on WSI's goodwill," *id.* ¶ 89;

- "Amazon's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's WILLIAMS-SONOMA Mark and to cause dilution of that mark," ¶ 95;

- "Defendant has engaged in a pattern of willful and intentional acts designed to appropriate WSI's prestige and goodwill," *id.* ¶ 106;

- "Defendant's conduct is unlawful, unfair and deceptive in violation of California law, and is deliberate, willful and intended to confuse," *id.* ¶ 108; and

- "Defendant has engaged in a pattern of willful and intentional acts designed to appropriate WSI's prestige and goodwill, including without limitation, by copying WSI's products, trademarks, and registered service marks," *id.* ¶ 117.

What it does **not** do is allege any facts to support these legal conclusions.

Such conclusory allegations are insufficient to state a claim for willful infringement.  *See Vapor Spot, LLC v. Breathe Vape Spot, Inc.*, No. CV 15-02110 MMM (EX), 2015 WL 12839123, at *15 (C.D. Cal. Sept. 15, 2015) ("The 'factual' allegation that Breathe Vape's actions were 'willful and deliberate' is too conclusory to be credited."); *see also Iqbal*, 662 at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555).

Williams-Sonoma has not even attempted to allege that Amazon did not reasonably believe that its actions were lawful.  Nor could it in light of the Ninth Circuit's first sale cases and that court's ruling in *MTM*.  Even if the Court denies Amazon's motion to dismiss based on the first sale doctrine, Williams-Sonoma's allegations demonstrate that it was at least reasonable for Amazon to believe that selling genuine Williams-Sonoma products under the Williams-Sonoma trademark was not trademark infringement.  Nor would it be unreasonable for Amazon to believe, in light of *MTM*, that accurately labeling Williams-Sonoma products as "by Williams-Sonoma" on its website was lawful.  Accordingly, even if the Court declines to dismiss Williams-Sonoma's remaining allegations with respect to the

Williams-Sonoma mark, it should dismiss any claims that Amazon's alleged infringement was willful.

While willfulness is not a separately pled cause of action, it is the sole allegation that supports Williams-Sonoma's claims to certain kinds of damages, including disgorgement of profits, enhanced statutory damages, and damages for dilution.  *See* 15 U.S.C. §§ 1117(c), 1125(c)(5); *Stone Creek, Inc. v. Omnia Italian Design, Inc*., 875 F.3d 426, 441 (9th Cir. 2017) ("[W]illfulness remains a prerequisite for awarding a defendant's profits.").  Courts properly dismiss allegations of willfulness in those circumstances.  *See, e.g.*, *Word to Info, Inc.*, 140 F. Supp. 3d at 990 (noting that "courts dismiss willfulness claims in original pleadings" in patent cases where claims are insufficient, and citing cases); *Nieves v. JPMorgan Bank, N.A*., No. C 11-05260 WHA, 2012 WL 1980551, at *1 (N.D. Cal. June 1, 2012) (granting motion to dismiss prayer for punitive damages).

## IV.    CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court dismiss Claims 2, 3 and 6 in their entirety, and dismiss Claims 4, 5 and 7 to the extent they relate to the Williams-Sonoma mark.


Dated:  February 5, 2019                    DURIE TANGRI LLP


                                     By: _____ */s/ Mark A. Lemley*_____
                                              MARK A. LEMLEY


                                        Attorney for Defendant
                                        Amazon.com, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2019 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

Dated:  February 5, 2019

_____
*/s/ Mark A. Lemley*
MARK A. LEMLEY

AMAZON.COM, INC.'S MOTION TO DISMISS / CASE NO. 3:18-CV-07548-EDL