ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
DANIEL D. JUSTICE (SBN 291907)
djustice@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

MARGARET WHEELER-FROTHINGHAM (*Pro Hac Vice*)
mwheeler-frothingham@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
Telephone:  +1 212 506 5000
Facsimile:   +1 212 506 5151

Attorneys for Plaintiff Williams-Sonoma, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAMS-SONOMA, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC., <br><br> Defendant. | Case No.: 18-cv-07548-EDL <br><br> **PLAINTIFF WILLIAMS-SONOMA, INC'S OPPOSITION TO DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS** <br><br> Date:   April 2, 2019 <br> Time:  9:00 a.m. <br> Ctrm:  E <br> Judge:  Honorable Elizabeth D. Laporte |

# <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

ALLEGATIONS OF THE COMPLAINT ................................................................................. 3

ARGUMENT ............................................................................................................................. 6

I.      WSI'S SERVICE MARK REGISTRATION ENTITLES IT TO THE EXCLUSIVE
RIGHT TO OPERATE WEBSITES OFFERING ITS SERVICES. ................................ 7

      A.    WSI's Service Mark Registration For Online Services Protects It From Fake
Williams-Sonoma Websites. ................................................................................. 7

      B.    The Complaint Alleges Facts Sufficient To Conclude That Amazon Is
Counterfeiting And Otherwise Violating WSI's Service Mark ............................. 9

II.     EXHAUSTION IS A LIMITED PRINCIPLE THAT AFFORDS NO
PROTECTION TO THE CONFUSING CONDUCT ALLEGED HERE ...................... 11

      A.    Amazon's Conduct Far Exceeds The Scope Of Exhaustion Subjecting
It To Liability For Both Infringement And Dilution. ........................................... 13

      B.    Amazon's Search Engine Advertising Is Confusing. ........................................... 16

      C.    The Law Requires Accurate Descriptions And Clear Disclaimers. ...................... 17

III.   THE COMPLAINT ALSO ALLEGES FACTS DISQUALIFYING AMAZON
FROM THE PROTECTION OF THE LIMITED EXHAUSTION LICENSE. ............... 19

IV.   WSI'S WILFULNESS ALLEGATION IS SUFFICIENT. ............................................. 22

      A.    Amazon's Improper Request To Strike Allegations Should Be Denied. ................ 22

      B.    WSI Has Sufficiently Pled That Amazon Acted Willfully ..................................... 23

CONCLUSION ........................................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*24/7 Customer, Inc. v. 24-7 Intouch,*
   No. 5:14-CV-02561-EJD, 2015 WL 1522236 (N.D. Cal. Mar. 31, 2015) ...............................6

*Abdul-Jabbar v. Gen. Motors Corp.,*
   85 F.3d 407 (9th Cir. 1996) ...................................................................................................6

*adidas-Am., Inc. v. Payless Shoesource, Inc.,*
   546 F. Supp. 2d 1029 (D. Or. 2008) ..............................................................................24, 25

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,*
   457 F.3d 1062 (9th Cir. 2006) ..............................................................................................19

*Australian Gold, Inc. v. Hatfield,*
   436 F.3d 1228 (10th Cir. 2006) ................................................................................12, 16, 17

*Bandag, Inc. v. Al Bolser's Tire Stores,*
   750 F.2d 903 (Fed.Cir.1984) .....................................................................10, 12, 13, 15

*Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC,*
   562 F.3d 1067 (10th Cir. 2009) .....................................................................................20, 21

*Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.,*
   No. 01 C 585, 2001 WL 128164 (N.D. Ill. Feb. 9, 2001) ....................................................12

*Blockbuster Videos, Inc. v. City of Tempe,*
   141 F.3d 1295 (9th Cir. 1998) ..............................................................................................24

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,*
   174 F.3d 1036 (9th Cir. 1999) .........................................................................................6, 17

*Church & Dwight Co., Inc. v. Mayer Lab., Inc.,*
   No. C–10–4429 EMC, 2011 WL 1225912 (N.D. Cal. Apr. 1, 2011) ...........................6, 13, 19

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
   251 F.3d 1252 (9th Cir. 2001) ................................................................................................6

*Coast Law Grp. v. Panagiotou,*
   No. 12CV1446, 2013 WL 12114633 (S.D. Cal. Mar. 28, 2013) ...........................................11

*D 56, Inc. v. Berry's, Inc.,*
   955 F. Supp. 908 (N.D. Ill. 1997) ...................................................................................12, 15

*Dan-Foam A/S v. Brand Named Beds, LLC,*
   500 F. Supp. 2d 296 (S.D.N.Y. 2007) ..................................................................................15

*Davidoff & CIE, S.A. v. PLD Int'l Corp.*,
　263 F.3d 1297 (11th Cir. 2001) ........................................................................11, 20

*Downing v. Abercrombie & Fitch*,
　265 F.3d 994 (9th Cir. 2001) ..........................................................................6

*Enesco Corp., v. Price/Costco Inc.*,
　146 F.3d 1083 (9th Cir. 1998) ........................................................................21

*Entrepreneur Media, Inc. v. Smith*,
　279 F.3d 1135 (9th Cir. 2002) ........................................................................6

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
　778 F.3d 1059 (9th Cir. 2015) ........................................................................25

*Food Scis. Corp. v. Nagler*,
　No. CIV. 09-1798 JBS KMW, 2010 WL 4226531 (D.N.J. Oct. 20, 2010) ...........................18

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
　618 F.3d 1025 (9th Cir. 2010) ........................................................................6

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
　772 F.2d 505 (9th Cir. 1985), *cert. denied* 494 U.S. 1017 (1990) ...........................24

*Gamut Trading Co. v. U.S. Int'l Trade Comm'n*,
　200 F.3d 775 (Fed. Cir. 1999) ........................................................................20, 21

*Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*,
　897 F.2d 508 (Fed. Cir. 1990) ........................................................................24

*Hart v. Amazon.com, Inc.*,
　191 F. Supp. 3d 809 (N.D. Ill. 2016) ...............................................................15

*Hernandez v. City of San Jose*,
　897 F.3d 1125 (9th Cir. 2018) ........................................................................6

*Hidalgo Corp. v. J. Kugel Designs, Inc.*,
　509 F. Supp. 2d 1247 (S.D. Fla. 2007) .............................................................12, 15

*Holmes v. Elec. Document Processing, Inc.*,
　966 F. Supp. 2d 925 (N.D. Cal. 2013) ..............................................................23

*Intel Corp. v. Terabyte Int'l, Inc.*,
　6 F.3d 614 (9th Cir. 1993) ...........................................................................20

*Jada Toys, Inc. v. Mattel, Inc.*,
　518 F.3d 628 (9th Cir. 2008) .........................................................................6, 11

*Khoja v. Orexigen Therapeutics, Inc.*,
　899 F.3d 988 (9th Cir. 2018) .........................................................................6

*Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*,
   944 F.Supp.2d 775 (N.D. Cal. 2013) ...................................................................24

*Laukus v. Rio Brands, Inc.*,
   391 F. App'x 416 (6th Cir. 2010) ..........................................................................8

*Mary Kay, Inc. v. Weber*,
   601 F. Supp. 2d 839 (N.D. Tex. 2009).............................................................18, 19

*Mastro's Restaurants LLC v. Dominick Grp., LLC*,
   No. CV 11–1996–PHX–PGR, 2012 WL 2091535 (D. Ariz. June 11, 2012) .....................6, 11

*Microsoft Corp. v. E & M Internet Bookstore, Inc.*,
   No. C 06-06707 WHA, 2008 WL 191346 (N.D. Cal. Jan. 22, 2008).......................................23

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
   804 F.3d 930 (9th Cir. 2015)................................................................14, 15, 25

*N. Face Apparel Corp. v. Dahan*,
   No. 13-04821 MMM, 2014 WL 12558010.......................................................................24

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ..........................................................................17

*Nissan Motor Co. v. Nissan Computer Corp.*,
   378 F.3d 1002 (9th Cir. 2004), cert. denied, 544 U.S. 974 (2005) ...........................10

*Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*,
   809 F.2d 601 (9th Cir. 1987)...........................................................................8

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) .........................................................................11

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
   469 U.S. 189, 105 S. Ct. 658 (1985) ..................................................................7

*Petrie v. Elec. Game Card, Inc.*,
   761 F.3d 959 (9th Cir. 2014)..........................................................................23

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
   352 F. Supp. 2d 1048 (N.D. Cal. 2004) ...............................................................23

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   No. C 09-05235 JW, 2010 WL 11484559 (N.D. Cal. Mar. 4, 2010)................................22, 23

*Prestonettes v. Coty*,
   264 U.S. 359 (1924) ...............................................................................2, 12

*Prompt Elec. Supply Co. v. Allen-Bradley Co.*,
   492 F. Supp. 344 (E.D.N.Y. 1980) ....................................................................18

*Razor USA LLC v. Vizio, Inc.*,
   No. CV1401586SJOJCGX, 2015 WL 12656941 (C.D. Cal. Oct. 19, 2015) ..................24, 25

*Rearden LLC v. Rearden Commerce, Inc.*,
   683 F.3d 1190 (9th Cir. 2012) .................................................................................8

*Rexel, Inc. v. Rexel Int'l Trading Corp.*,
   540 F. Supp. 2d 1154 (C.D. Cal. 2008) ...................................................................7

*Rubber Specialty, Inc. v. Sneaker Circus, Inc.*,
   No. CIV. A. 77-1606-Civ-SMA, 1977 WL 22727 (S.D. Fla. Aug. 23, 1977) ............8

*Schlegel v. Wells Fargo Bank, NA*,
   720 F.3d 1204 (9th Cir. 2013) .................................................................................6

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*,
   53 F.3d 1073 (9th Cir. 1995) .................................................................................12

*Sega Enters. Ltd. v. MAPHIA*,
   948 F. Supp. 923 (N.D. Cal. 1996) ..........................................................................9

*Shell Trademark Mgmt. BV v. Canadian Am. Oil Co.*,
   No. 02-01365 EDL, 2002 WL 32104586 (N.D. Cal. May 21, 2002) ......................18

*SKF USA Inc. v. Int'l Trade Comm'n*,
   423 F.3d 1307 (Fed. Cir. 2005) .............................................................................20

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*,
   982 F.2d 633 (1st Cir. 1992) ................................................................20, 21, 25

*Soltex Polymer Corp. v. Fortex Indus., Inc.*,
   832 F.2d 1325 (2d Cir. 1987) ...............................................................................17

*Stanislaus Custodial Deputy Sheriffs' Ass'n v. Deputy Sheriff's Ass'n of Stanislaus Cty.*,
   No. CV F 09-1988 LJO SMS, 2010 WL 2218813 (E.D. Cal. June 1, 2010) .............7

*State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*,
   425 F.3d 708 (9th Cir. 2005) .................................................................................9

*Stevo Design, Inc. v. SBR Mktg. Ltd.*,
   919 F. Supp. 2d 1112 (D. Nev. 2013) ...................................................................16

*Stormor, a Div. of Fugua Indus., Inc. v. Johnson*,
   587 F. Supp. 275 (W.D. Mich. 1984) ...............................................10, 12, 15, 17

*Storus Corp. v. Aroa Mktg., Inc.*,
   No. C-06-2454 MMC, 2008 WL 449835 (N.D. Cal. Feb. 15, 2008) .............16, 17, 19

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
   305 F.3d 894 (9th Cir. 2002) .................................................................................6

*Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc.*,
   87 F.3d 654 (4th Cir. 1996).................................................................................11

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010).........................................................13, 16, 17, 18

*Trader Joe's Co. v. Hallat*,
   835 F.3d 960 (9th Cir. 2016)..........................................................9, 14, 20, 22

*Trail Chevrolet, Inc. v. Gen. Motors Corp.*,
   381 F.2d 353 (5th Cir. 1967).............................................................................13

*Transamerica Corp. v. Moniker Online Servs.*,
   LLC, No. 09-60973-CIV, 2010 WL 1416979 (S.D. Fla. Apr. 7, 2010) ................................8, 9

*Tumblebus Inc. v. Cranmer*,
   399 F.3d 754 (6th Cir. 2005)........................................................................14, 21

*Vapor Spot, LLC v. Breathe Vape Spot, Inc.*,
   No. CV 15-02110 MMM (EX), 2015 WL 12839123 (C.D. Cal. Sept. 15, 2015) ...............8, 25

*Visa Int'l Serv. Ass'n v. JSL Corp.*,
   610 F.3d 1088 (9th Cir. 2010)..............................................................................6

*Visual Changes Skin Care Int'l, Inc. v. Neways, Inc.*,
   No. CV F 08–0959 LJO DLB, 2008 WL 4723603 (E.D. Cal. Oct. 24, 2008)...........................6

*Vivo Per Lei, Inc. v. Bruchim*,
   No. CV 11-5169-GW(JCGX), 2012 WL 13008731 (C.D. Cal. Apr. 2, 2012) .......................15

*Volkswagenwerk Aktiengesellschaft v. Brewer*,
   No. 70-659 PHX. WPC, 1971 WL 16799 (D. Ariz. Apr. 29, 1971).......................................13

*Volkswagenwerk Aktiengesellschaft v. Karadizian*,
   No. 70-2244 JWC, 1971 WL 16800 (C.D. Cal. Apr. 23, 1971) ...............................................18

*Volkswagenwerk Aktiengesellschaft v. Rickard*,
   492 F.2d 474 (5th Cir. 1974)...............................................................................13

*Volkswagenwerk Aktiengesellschaft v. Volks City, Inc.*,
   348 F.2d 659 (3d Cir. 1965)............................................................................13, 17

*Volkswagenwerk Aktiengesellschaft v. Wheeler*,
   814 F.2d 812 (1st Cir. 1987)..................................................................................13

*Volkswagenwerk, G.m.b.H. v. Frank*,
   198 F. Supp. 916 (D. Colo. 1961)........................................................................13

*Warner-Lambert Co. v. Northside Dev. Corp.*,
  86 F.3d 3 (2d Cir. 1996)............................................................................................21

*Word to Info, Inc. v. Google Inc.*,
  140 F. Supp. 3d 986 (N.D. Cal. 2015) .....................................................................24

*Yelp Inc. v. Catron*,
  70 F. Supp. 3d 1082 (N.D. Cal. 2014) .....................................................................23

**Rules and Statutes**

Fed. R. Civ. P.
  Rule 11(b) ....................................................................................................................5
  Rule 12(b)(6) ........................................................................................................1, 23
  Rule 12(f) ....................................................................................................2, 3, 5, 23

15 U.S.C.
  § 1114(a)-(b) ...............................................................................................................7
  § 1115(b) .....................................................................................................................7
  § 1116(d)(1) ................................................................................................................8
  § 1127..........................................................................................................................9

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Williams-Sonoma, Inc. ("WSI") filed its Complaint (Dkt. 1) ("Cplt.") alleging that Defendant Amazon.com, Inc. ("Amazon") engaged in a widespread campaign of unlawful copying, from knocking off WSI's products and product marks to simulating a WILLIAMS-SONOMA website on its e-commerce platform.  Amazon seeks to carve out a portion of the alleged infringement for purposes of its Motion to Dismiss (Dkt. 23) ("Motion"), asking this Court to find as fact on a Rule 12(b)(6) motion that Amazon's conduct was not confusing because it was just reselling goods.  What Amazon has failed to appreciate is that WSI owns a service mark registration affording *it*, not Amazon, the exclusive right to exploit the WILLIAMS-SONOMA mark in offering *online retail services*.  It is WSI, not Amazon, who has the exclusive right to develop an online platform for delivery of retail services under its house mark.  By creating, advertising, and profiting from such a site without authorization and without making clear to consumers that there is no affiliation with WSI, Amazon has plainly violated WSI's rights.  Consumers are actually confused.  Indeed, by applying spurious copies of the WILLIAMS-SONOMA word mark to a website on its platform, by applying the mark to the search engine advertising for such website, and by using the mark in the subject line of targeted promotional emails for such website, Amazon has in fact engaged in prototypical counterfeiting.  Part I, *infra*.

The "first sale" or "exhaustion" doctrine provides no safe harbor for Amazon's misleading conduct.  Even assuming the products offered on Amazon's unauthorized WILLIAMS-SONOMA website are genuine (despite Amazon's recent 10-K filing acknowledging it may not be able to prevent "unlawful, counterfeit, pirated or stolen goods"),[1] the limited redistribution license afforded by the exhaustion doctrine protects only the narrow behavior of stocking, displaying and reselling unaltered products.  Exhaustion does not protect Amazon when it advertises products offered "by Williams Sonoma" or "from Williams Sonoma" or "Best Selling Products from

---

[1] Amazon Form 10-K dated February 1, 2019, *available at* https://ir.aboutamazon.com/sec-filings/sec-filings/10-k/001018724-19-000004 (last accessed February 26, 2019).

Williams-Sonoma,"[2] misleading customers into believing they are dealing with WSI or an authorized WSI dealer.  Exhaustion does not protect Amazon when it calls its "Williams & Sonoma" website an "Official Site" in advertising, and diverts customers to its WILLIAMS-SONOMA platform instead of the real one.  Exhaustion does not protect Amazon when it sends out emails that falsely advertise WILLIAMS-SONOMA peppermint bark as having low prices when in fact the price is twice what consumers would pay at the true website.  Since the Supreme Court's decision in *Prestonettes v. Coty*, 264 U.S. 359 (1924), courts have consistently required measures such as full descriptions and obvious disclaimers to avoid customer confusion in this situation.  Amazon employs no such methods, and exhaustion is therefore of no help to it.  Part II, *infra*.

Indeed, even were exhaustion pertinent here, the well-recognized exception for altered goods lacking quality control applies.  The goods being sold on Amazon's "Shop Williams Sonoma" website and "fulfilled by Amazon" are overpriced, misdescribed, and damaged.  Perishables are displayed with no sell-by date information.  Customer complaints run rampant on Amazon's "Shop Williams Sonoma" website, plainly damaging WSI's goodwill as customers confuse these goods and services for the real ones.  By depriving WSI of the opportunity to control the quality of its goods offered online, Amazon has disqualified itself from claiming the benefit of any exhaustion defense.  Part III, *infra*.

Finally, Amazon asks the Court to get rid of the allegations of willful infringement.  Although denominated as a Motion to Dismiss, this is in fact an improper motion to strike under Rule 12(f).  The allegations of willful misconduct are not only pertinent (and therefore cannot be stricken), but they are also well supported.  There was no mystery about the law.  Amazon, one of the world's largest technology companies, simply chose to configure its platform and online advertising to ignore it.  Part IV, *infra*.  The Motion should be denied in its entirety.

///

///

---

[2] The correct form of the registered mark is WILLIAMS-SONOMA.  It is misused throughout Amazon's website and advertising.

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS, CASE NO. 18-CV-07548-EDL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ALLEGATIONS OF THE COMPLAINT**

WSI owns multiple incontestable trademark and service mark registrations for the word mark WILLIAMS-SONOMA.  Cplt. ¶ 19.  One of these registrations covers the exclusive right to use the WILLIAMS-SONOMA word mark in connection with "on-line retail services featuring culinary equipment, housewares, kitchenware and cookware."  *Id.* ¶ 19 & Ex. A.  Founded in 1956, WSI set the standard for customer service and became well known for its high-quality products and customer-first approach, which it has maintained in the operation of its online stores since 1999.  *Id.* ¶ 13.  The WILLIAMS-SONOMA brand is associated with a high level of customer service.  *Id.* ¶ 33.  The exemplary service WSI provides at retail and through e-commerce is maintained and complemented by its own network of customer care centers, manufacturing and distribution facilities, and other service hubs.  *Id.*  To further protect the integrity of its brand, WSI does not license the WILLIAMS-SONOMA mark in connection with online retail services.  *Id.* ¶ 22.

Amazon has created a "Shop Williams-Sonoma" website in which it aggregates numerous product listings and prominently displays "Shop Williams-Sonoma" in bright yellow at the top of the page.  *Id.* ¶ 27.  The website also labels the product listings as "Best Selling Products from Williams-Sonoma."  *Id.*  Amazon uses WSI's own copyrighted photos and product imagery on the "Shop Williams-Sonoma" page, reinforcing the connection.  *Id.* ¶ 28.



PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS, CASE NO. 18-CV-07548-EDL

1   At the top of each of the product pages for the purported WILLIAMS-SONOMA branded

2   products sold in the "Shop Williams-Sonoma" Amazon store, the phrase "by Williams-Sonoma"

3   appears in blue font with a hyperlink immediately below the product description and above the

4   product image and price. *Id.* ¶ 26.  The hyperlink leads back to the "Shop Williams-Sonoma"

5   landing page. *Id.* ¶ 27.  Many of these products are listed as "by Williams-Sonoma" and

6   "Fulfilled by Amazon," creating the impression that Amazon is an authorized WSI platform.



19   *Id.* ¶ 26.

20   Amazon promotes its WILLIAMS-SONOMA online store in search engine advertising

21   and unsolicited marketing emails.  The sponsored search engine ads describe the Amazon

22   WILLIAMS-SONOMA presence as an "Official Site." *Id.* ¶ 32.  Consumers confused by these

1  ads into believing that Amazon is an authorized WILLIAMS-SONOMA retail outlet are diverted

2  to Amazon rather than the authorized WSI website.  *Id.*  Such diversion may harm WSI in

3  multiple ways, including depriving WSI of the opportunity to sell goods to such consumers.  *Id.*

4       Amazon's targeted emails using the WILLIAMS-SONOMA mark to draw traffic to its

5  WILLIAMS-SONOMA website also contain misleading statements.  *Id.* ¶ 29.  One such was a

6  prospecting email with the subject line: "Janet: Williams-Sonoma Peppermint Bark 1 Pound Tin

7  and more items for you."  *Id.* ¶ 30 & Ex. B.  The email misleadingly referred to this as one of

8  "millions of our items from our vast selection at great prices."  *Id.*  Instead, the specific WSI

9  product featured in the email is advertised for a price of $47.35 for a 1-pound tin—nearly double

10 the $28.95 price at which WSI sells the same product on its own authorized e-commerce site.  *Id.*

11 Unsurprisingly, then, a confused customer complained to WSI that WSI was selling its products

12 on Amazon for double the price offered in WSI stores.  *Id.* ¶ 36.

13      Amazon's unlicensed retail services do not maintain WSI's standards.  Several product

14 reviews feature complaints about high prices, products that do not match the displayed

15 specifications (such as 16 oz. bottles of dish soap advertised as 20 oz. bottles and small wash

16 cloths advertised as full size dish towels), products sent without necessary parts (such as hand

17 soap dispensers missing pumps), and products that were delivered damaged (such as a broken hot

18 chocolate maker).  *Id.* ¶ 33 & Ex. D.

19      Amazon is selling WILLIAMS-SONOMA perishable food items such as peppermint bark,

20 but the listings contain no expiration date or other indication that Amazon is policing the safety

21 and quality of food items.  *Id.* Ex. B.  WSI also alleges, pursuant to Rule 11(b), that discovery is

22 likely to show sales of a wide variety of other WILLIAMS-SONOMA products using misleading

23 designations through the "by Williams-Sonoma" site "Fulfilled by Amazon."  *Id.* ¶ 33.  As a

24 result, consumers may come to associate WSI's WILLIAMS-SONOMA mark with overpriced,

25 low-quality or potentially unsafe goods or services.  *Id.* ¶ 35.

26 ///

27 ///

28 ///

1

## ARGUMENT

2          On a motion to dismiss, a district court must accept all well-pled allegations of the

3    complaint as true and drawn all references in the non-moving party's favor.  *Hernandez v. City of*

4    *San Jose*, 897 F.3d 1125, 1132 (9th Cir. 2018*); Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204,

5    1207 (9th Cir. 2013).  Dismissal "is appropriate only where the complaint lacks a cognizable legal

6    theory or sufficient facts to support a cognizable legal theory."  *Khoja v. Orexigen Therapeutics,*

7    *Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521

8    F.3d 1097, 1104 (9th Cir. 2008)).

9          The *sine qua non* of a Plaintiff's trademark infringement claim is likelihood of confusion.

10   *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999).

11   Likelihood of confusion is a question of fact.  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135,

12   1140 (9th Cir. 2002); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir. 2001);

13   *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th

14   Cir. 2010).  Likelihood of dilution, the touchstone of WSI's dilution claims, is likewise a question

15   of fact.  *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1090 (9th Cir. 2010); *see also Jada*

16   *Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008).

17         These questions are uniquely ill-suited to resolution on a motion to dismiss.  *See, e.g.,*

18   *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1264–65 (9th Cir. 2001) ("the question

19   of likelihood of confusion is routinely submitted for jury determination as a question of fact.")

20   (citations omitted); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901–02 (9th Cir. 2002)

21   (likelihood of confusion usually requires a full record); *Abdul-Jabbar v. Gen. Motors Corp.*, 85

22   F.3d 407, 413 (9th Cir. 1996) (implied sponsorship or endorsement is a question of fact); *24/7*

23   *Customer, Inc. v. 24-7 Intouch*, No. 5:14-CV-02561-EJD, 2015 WL 1522236, at *5 (N.D. Cal.

24   Mar. 31, 2015) ("the likelihood of confusion inquiry 'is a factual determination . . . that courts

25   routinely treat ... as [an issue] of fact' best left for the determination by a jury.") (citations

26   omitted); *Church & Dwight Co., Inc. v. Mayer Lab., Inc.*, No. C–10–4429 EMC, 2011 WL

27   1225912, at *20 (N.D. Cal. Apr. 1, 2011) ("Consumer confusion is generally a factual

28   determination . . . that cannot be made at this stage."); *Mastro's Restaurants LLC v. Dominick*

1  *Grp., LLC*, No. CV 11–1996–PHX–PGR, 2012 WL 2091535, at *5 (D. Ariz. June 11, 2012)

2  ("[T]he likelihood of confusion is a fact-specific inquiry best left for decision after discovery.");

3  *Visual Changes Skin Care Int'l, Inc. v. Neways, Inc.*, No. CV F 08–0959 LJO DLB, 2008 WL

4  4723603, at *4 (E.D. Cal. Oct. 24, 2008) ("a plaintiff is not required to prove the likelihood of

5  confusion at the pleading stage."); *Stanislaus Custodial Deputy Sheriffs' Ass'n v. Deputy Sheriff's*

6  *Ass'n of Stanislaus Cty.*, No. CV F 09-1988 LJO SMS, 2010 WL 2218813, at *10 n. 3 (E.D. Cal.

7  June 1, 2010) (court "cannot make the factual conclusion at [the motion to dismiss] stage of the

8  proceedings that there was not a likelihood of confusion.").

9        Recognizing the enormity of its uphill battle to dismiss WSI's well-pled trademark claims

10  at the pleading stage, Amazon employs two well-worn techniques to obfuscate the question at

11  hand.  First, it ignores or mischaracterizes the governing legal standards.  Second, it ignores the

12  specific factual allegations of WSI's Complaint that would obviate even its misguided legal

13  analysis.  When WSI's factual allegations are evaluated under the correct legal standards, it is

14  apparent that the Motion should be denied in its entirety.

15  **I.**     **WSI'S SERVICE MARK REGISTRATION ENTITLES IT TO THE EXCLUSIVE**
   **RIGHT TO OPERATE WEBSITES OFFERING ITS SERVICES.**

16

17       **A.**     **WSI's Service Mark Registration For Online Retail Services Protects It From**
   **Fake Williams-Sonoma Websites.**

18        WSI owns a famous and incontestable service mark registration for the word mark

19  WILLIAMS-SONOMA in connection with "[r]etail store services, mail order catalog services,

20  and on-line retail store services featuring culinary equipment, housewares, kitchenware and

21  cookware." Cplt. ¶ 19 & Ex. A.  This registration affords WSI the exclusive right to use the mark

22  in connection with online retail services.  *See* 15 U.S.C. § 1115(b) (incontestable federal

23  registration of a mark is "conclusive evidence of the … registrant's exclusive right to use the

24  registered mark in commerce" for the services covered by the registration).  The registration

25  entitles WSI to exclude uses by others of the WILLIAMS-SONOMA online retail service mark

26  where such uses are likely to cause confusion, mistake or to deceive. 15 U.S.C. § 1114(a)-(b).

27       There is no distinction in this regard between a service mark and a trademark.  *See Park*

28  *'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 192 n. 1 (1985); *see also Rexel, Inc. v.*

1   *Rexel Int'l Trading Corp.*, 540 F. Supp. 2d 1154, 1162–63 (C.D. Cal. 2008) ("To the extent that

2   Defendant suggests that Plaintiffs have 'lesser' rights in their marks due to their categorization as

3   'service' marks, it is entirely incorrect."). The same breadth of legal protection applies to both

4   trademarks and service marks in analyzing likelihood of confusion, dilution, and counterfeiting.

5   *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 604 (9th Cir. 1987); *see also Rearden LLC*

6   *v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203 n. 4 (9th Cir. 2012); *Laukus v. Rio Brands, Inc.*,

7   391 F. App'x 416, 425 (6th Cir. 2010).

8          Therefore, service mark registrations for retail or online retail services entitle their owners

9   to exclude others from engaging in activities that would mislead the ordinary consuming public as

10   to the source, sponsorship or approval of those services. *See Vapor Spot, LLC v. Breathe Vape*

11   *Spot, Inc.*, No. CV 15-02110 MMM (EX), 2015 WL 12839123, at *4 (C.D. Cal. Sept. 15, 2015);

12   *Rubber Specialty, Inc. v. Sneaker Circus, Inc.*, No. CIV. A. 77-1606-Civ-SMA, 1977 WL 22727,

13   at *2–3 (S.D. Fla. Aug. 23, 1977) ("There can be no question that the use of the identical mark,

14   'SNEAKER CIRCUS,' for the identical services, retail shoe store sales, in the same market will

15   cause confusion."). Further, unauthorized use of a mark identical to a registered service mark is

16   counterfeiting. *See* 15 U.S.C. § 1116(d)(1); *Laukus*, 391 F. App'x at 425 ("Because defendants

17   used Laukus's protected service mark—which mark he registered for 'retail store services in the

18   field of flag, flag poles, pennants, and streamers'—in connection with the sale of its flag products,

19   we conclude that Laukus has made a prima facie counterfeit trademark claim."); *Transamerica*

20   *Corp. v. Moniker Online Servs.*, LLC, No. 09-60973-CIV, 2010 WL 1416979, at *2 (S.D. Fla.

21   Apr. 7, 2010).

22          Amazon completely ignores the WSI service mark registration in its Motion by arguing

23   that it simply does not matter if the public is confused about which company is advertising,

24   offering to sell, selling and distributing the goods consumers are purchasing. Mot. at 7, 15.[3] The

25   legal rule Amazon seems to posit is that the service mark registration is meaningless so long as an

26   exhaustion principle might be invoked. *Id.* at 14–15. This is not the law.

27   ///

28

---

[3] All "Mot. _" references are to Defendant's Motion to Dismiss (Dkt. 23).

1    A simple thought experiment reveals the lack of merit in Amazon's position.  Imagine that

2   a company, let's call it Brick & Mortar Distributors, Inc. ("BMD") buys hundreds of APPLE-

3   branded iPhones, Macbooks and other APPLE-branded products.  BMD sets up a retail outlet

4   with a large APPLE logo on the signage.  BMD places advertisements that consumers can

5   purchase iPhones and Macbooks at the "Official BMD Apple Store!"  Customers walk into the

6   store believing that BMD is an authorized Apple dealer and that Apple will stand behind its

7   distributor.  BMD then marks up prices, sells products without original packaging and with parts

8   missing, and sometimes counterfeits sneak in.  Customers purchase unlicensed accessories at the

9   "Official BMD Apple Store" instead of authorized products at the Apple store (Apple loses

10   revenue as a result).   Customers seek service from Apple and complain to Apple when the

11   products are priced too high, are missing parts, or are downright fake.

12    It turns out this is not just a thought experiment.  Something very similar happened to

13   Trader Joe's, when Pirate Joe's bought up a large quantity of TJ's products and opened a store

14   just the other side of the Canadian border.  The Ninth Circuit then made clear in *Trader Joe's Co.*

15   *v. Hallat*, 835 F.3d 960, 970–71 (9th Cir. 2016), that the limited license to resell goods permitted

16   by exhaustion does not extend to setting up unauthorized retail outlets.  As set out below, the

17   outcome is no different if one replaces fake brick and mortar retailers with fake websites.

18   **B.    The Complaint Alleges Facts Sufficient To Conclude That Amazon Is**
         **Counterfeiting And Otherwise Violating WSI's Service Mark.**
19

20    An unauthorized WILLIAMS-SONOMA website is a counterfeit use of WSI's service

21   mark whether big company Amazon publishes it or some fly-by-night operation does.  Use of a

22   spurious mark identical to a registered one is counterfeiting, period.  It does not matter that the

23   goods *might* be in some sense genuine; what matters is the loss of opportunity to control the

24   application of the mark.  15 U.S.C. § 1127; *State of Idaho Potato Comm'n v. G & T Terminal*

25   *Packaging, Inc.*, 425 F.3d 708, 721–22 (9th Cir. 2005) (unauthorized use of certification mark on

26   otherwise genuine Idaho potatoes was "counterfeit"); *Sega Enters. Ltd. v. MAPHIA*, 948 F. Supp.

27   923, 937 (N.D. Cal. 1996); *Transamerica*, 2010 WL 1416979 at *2.

28    WSI's Complaint not only describes but actually depicts the manner in which Amazon

creates websites within its own platform that appear to be WILLIAMS-SONOMA websites.

Cplt. ¶¶ 26-27.  Pages of WILLIAMS-SONOMA branded products are labelled with a bright

yellow or orange header that cries out "Shop Williams Sonoma."  *Id*. ¶ 27.  Amazon's false

implication that a consumer is purchasing from WSI is reinforced on the product pages where the

products are listed as being offered "by Williams-Sonoma" or "from Williams Sonoma."  *Id.* ¶¶

26-27.  It would be quite easy to use different verbiage that accurately describes the fact that these

are resale products.  But the confusion created by this series of false grammatical constructions is

nowhere dispelled.

The Complaint also describes how Amazon runs confusing search engine advertisements

to draw consumers to its unauthorized WILLIAMS-SONOMA online retail presence.  The ads

denominate Amazon an "Official Site" for WILLIAMS-SONOMA brand products.  *Id.* ¶ 32.  The

verbiage "Amazon Official Site" is completely unnecessary in an advertisement *that includes a*

*highly visible link containing the www.amazon.com domain name*.  The reason the "Official Site"

language is present is to confuse people into believing that Amazon is an authorized online retail

distribution site for WILLIAMS-SONOMA.  These ads also include the phrase "Williams &

Sonoma at Amazon®," further implying that customers are visiting an approved online retail

location.  *Id.*  When people click on these links they are not led to a page labelled "Shop

Williams-Sonoma" offering various products that can be "Fulfilled by Amazon."  *Id.* ¶¶ 26-27.

Amazon goes so far as to send targeted e-mails featuring these links.  *Id.* ¶¶ 29-30.  It is obvious

that the manner in which Amazon is labeling its website and its advertisements will lead an

appreciable number of ordinary purchasers to be confused into believing that Amazon is

authorized by WSI.  *See Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 913 (Fed. Cir.

1984); *Stormor, a Div. of Fugua Indus., Inc.  v. Johnson*, 587 F. Supp. 275, 279 (W.D. Mich.

1984).[4]

---

[4] These facts also sufficiently support WSI's allegation that Amazon's ads are likely to cause initial interest confusion by causing potential consumers searching for WSI's online store to be diverted instead to Amazon's infringing store under the belief that it is an authorized WSI store.  *See Nissan Motor Co. v. Nissan Computer Corp.,* 378 F.3d 1002, 1018 (9th Cir. 2004) (holding that initial interest confusion occurs when a defendant uses a plaintiff's trademark in a way calculated to capture a consumer's attention and divert the consumer to the defendant's own Web site), cert. denied, 544 U.S. 974 (2005).

It is no wonder a confused customer complained that WSI is "sell[ing] its products on Amazon for double the price." Cplt. ¶ 36.   Instances of actual confusion are "patently the best evidence of likelihood of confusion." *Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc*., 87 F.3d 654, 660 (4th Cir. 1996) (quoting *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc*., 878 F.2d 806, 813 (5th Cir. 1989)); *Mastro's Restaurants*, 2012 WL 2091535, at *6 ("At [the motion to dismiss] stage of the pleadings [plaintiff's] allegations of actual confusion are accepted and support a finding that the Complaint adequately alleges likelihood of confusion.").

Amazon mischaracterizes all of WSI's specific factual allegations by reducing them to a simplistic formulation: that the Complaint alleges no more than that Amazon sells WSI products on its website and accurately advertises those products.  Mot. at 4.  This is nonsense.  It is apparent that WSI has pled far more than that Amazon resells WILLIAMS-SONOMA branded products and advertises them.

The Complaint also sufficiently pleads facts to support WSI's claim that Amazon's online store dilutes WSI's mark.  To properly plead service mark dilution, a plaintiff need only allege that its mark is famous, that defendant used its marks commercially and commenced such use after the mark became famous, and that defendant's use of the mark is likely to dilute the mark's quality by diminishing the capacity of the mark to identify and distinguish the plaintiff's services by blurring or tarnishment.  *See Jada Toys,* 518 F.3d at 634. "To find dilution a court need not rely on the traditional definitions such as 'blurring' and 'tarnishment.'" *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1326 (9th Cir. 1998); *Coast Law Grp. v. Panagiotou*, No. 12CV1446, 2013 WL 12114633, at *3 (S.D. Cal. Mar. 28, 2013).  Dilution of a famous mark is found where "[defendant's] conduct diminish[es] the capacity of the marks to identify and distinguish plaintiff's goods and services on the Internet." *Panavision,* 141 F.3d at 1326.

## II.    EXHAUSTION IS A LIMITED PRINCIPLE THAT AFFORDS NO PROTECTION TO THE CONFUSING CONDUCT ALLEGED HERE.

Amazon argues its confusing conduct is excused by the "first sale doctrine," also known as the "exhaustion" doctrine.  Mot. at 6; *see Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001).  Exhaustion does nothing more than protect the redistribution of a

genuine, unaltered good.  It only protects a distributor who does *no more than* stock, display, and resell legitimate goods.  *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073, 1076 (9th Cir. 1995).  It provides a very limited license to do *only* that.  *Id.*  Indeed, the Supreme Court made clear long ago that the permitted reuse of a trademark is extremely limited, requiring 17 and 32-word descriptions set out in equal-sized-type of the same font and spelling out the exact nature of the resold goods.  *Prestonettes v. Coty,* 264 U.S. 359, 367 (1924).  Without such descriptions, "trademark infringement occurs when a defendant uses the plaintiff's trademark in a manner that suggests that the defendant is affiliated with the plaintiff's company even though the defendant deals in the goods of the trademark owner."  *Stormor,* 587 F. Supp. at 278; *Hidalgo Corp. v. J. Kugel Designs, Inc.*, 509 F. Supp. 2d 1247, 1260–61 (S.D. Fla. 2007) (same); *Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.*, No. 01 C 585, 2001 WL 128164, at \*2 (N.D. Ill. Feb. 9, 2001) (same); *D 56, Inc. v. Berry's, Inc.*, 955 F. Supp. 908, 919–20 (N.D. Ill. 1997) (same).

Conduct that goes beyond stocking, displaying and reselling genuine goods is not protected by the exhaustion doctrine.  Indeed, were it otherwise, then the exclusive service mark for the purveyor of such goods would mean nothing.  To return to our hypothetical, BMD would be perfectly justified in setting up its fake Apple store.  Pirate Joe's would have nothing to fear.  Despite Amazon's best efforts to ignore the pertinent cases, this is not the law.  The exhaustion doctrine "does not protect resellers who use other entities' trademarks to give the impression that they are favored or authorized dealers for a product when in fact they are not."  *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006); *Bandag,* 750 F.2d at 911.

Courts resolved this problem long ago by requiring accurate descriptions and disclaimers.  Long after *Coty*, the Ninth Circuit in *Volkswagenwerk Aktiengesellschaft v. Church* employed the same type of analysis in considering the competing interests of Volkswagen's right to the goodwill inherent in its marks on one hand, with a repair shop owner's need to identify that he specialized in the repair of Volkswagen cars on the other.  The court found that while the defendant may advertise to the public that he repairs appellant's cars, he "must not do so in a manner which is likely to suggest to his prospective customers that he is part of Volkswagen's organization of franchised dealers and repairmen."  411 F.2d 350, 352 (9th Cir.), *supplemented*,

413 F.2d 1126 (9th Cir. 1969).  Only prominent use of a disclaimer that the shop was "Independent" was sufficient to avoid liability.  *Id.*; *see also Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) (prominent use of disclaimers of affiliation avoided liability).  Other defendants who failed to use such disclaimers found themselves enjoined. *Volkswagenwerk Aktiengesellschaft v. Rickard*, 492 F.2d 474, 478–79 (5th Cir. 1974) (distinguishing use of "Independent" in *Church*).

For decades, courts have consistently found trademark infringement when resellers advertised or otherwise used a manufacturer's marks in a manner likely to create the impression of affiliation.  *See, e.g., Volkswagenwerk Aktiengesellschaft v. Volks City, Inc.*, 348 F.2d 659, 660 (3d Cir. 1965) (finding defendant used "advertisements clearly intended to convey the impression of affiliation with the plaintiff" and sustaining the grant of a temporary injunction against defendant's use of manufacturer's registered trademark unless in conjunction with information that he was not an authorized dealer); *Trail Chevrolet, Inc. v. Gen. Motors Corp*., 381 F.2d 353, 354 (5th Cir. 1967) (per curiam) (upholding district court's finding that reseller's use of the registered trademark "Chevrolet" in its advertising was likely to cause the public to believe that they were dealing with a business that was sponsored, supervised, endorsed or otherwise connected with the plaintiff); *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 819 (1st Cir. 1987) (upholding summary judgment of likelihood of confusion as to affiliation); *Volkswagenwerk Aktiengesellschaft v. Brewer*, No. 70-659 PHX. WPC., 1971 WL 16799, at *6 (D. Ariz. Apr. 29, 1971) ("Defendant's use of the word 'Volkswagen' on the front of his premises and on his repair order forms and business cards infringes plaintiff's trade name and registered trade and service marks"); *Volkswagenwerk, G.m.b.H. v. Frank*, 198 F. Supp. 916, 919 (D. Colo. 1961) ("There are many cases which . . . recognize that conduct such as that of defendant, including misleading advertising and statements, constitutes an invasion of this right to hold and enjoy good will.").

### A.   Amazon's Conduct Far Exceeds The Scope Of Exhaustion, Subjecting It To Liability For Both Infringement And Dilution.

Amazon's invocation of the exhaustion doctrine thus cannot avoid the gravamen of WSI's

Complaint of service mark infringement.  When it publishes and advertises the equivalent of a fake WILLIAMS-SONOMA website, Amazon violates WSI's service mark registration.  *See Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 766–67 (6th Cir. 2005) (First sale doctrine did not apply to the infringement of service mark, because "[u]nlike goods, which can be sold and resold without change to their nature, quality, and genuineness, services . . . inherently vary depending on who is providing such services.").  Amazon nowhere grapples with this issue in its Motion.

Even were Amazon offering legitimate WSI goods without any defects, it could not succeed on this Motion unless the Complaint disclosed *only* that it is stocking, displaying and reselling those goods in a manner not likely to cause confusion as to affiliation with WSI.  Plainly the Complaint reveals far more than that.  Amazon has configured its e-commerce site in a misleading manner to offer pages of products organized under the bright yellow banner "Shop Williams Sonoma," causing consumers to believe they are purchasing from an authorized dealer of WSI products (if not from WSI itself).  Product pages where products are prominently labeled as WILLIAMS-SONOMA brand products are *also* identified as being sold "by Williams Sonoma" or "from Williams Sonoma."  Search engine ads imply that there is an "official" WILLIAMS-SONOMA "site" at Amazon.  E-mails falsely offer products at "low" prices while providing links to WILLIAMS-SONOMA peppermint bark sold at twice the price.  The resulting confusion is heightened by the fact that product listings for WSI products sold on and fulfilled by Amazon often incorporate WSI's own copyrighted images and product imagery.  Cplt. ¶ 28.

Through misleading language on Amazon's own website and the use of keyword and email advertising promoting Williams-Sonoma (or "Williams & Sonoma") on what Amazon brands as an "Amazon Official Site," Amazon has gone far beyond stocking, displaying and reselling WILLIAMS-SONOMA products.  Amazon has used the WILLIAMS-SONOMA mark in a manner analogous to Pirate Joe's "alleged attempt to pass as an authorized Trader Joe's retailer."  *Trader Joe's*, 835 F.3d at 970–71.

Amazon makes much of *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 (9th Cir. 2015) ("*MTM*") in support of its arguments, but that comparative advertising case is wholly inapposite.  The facts there concerned the display of competing goods in response to a

1   search on the Amazon site for a particular manufacturer whose watches were not offered there at

2   all.  Amazon did not sell the plaintiff's products, so of course Amazon was not holding itself out

3   as an authorized dealer of those products.  Nor was Amazon alleged to have displayed text

4   offering consumers the opportunity to "Shop Multi Time Machine" or to have falsely advertised

5   "Best selling products from Multi Time Machine."  *MTM* has nothing to do with this case. [5]

6           In contrast, courts have consistently held conduct of the sort alleged here results in

7   trademark infringement.  For example, in *Hidalgo Corp. v. J. Kugel Designs, Inc.*, the court found

8   that the defendant jewelry store's deceptive advertising practices, including advertising using the

9   markholder's product brochure, a display sign announcing 30%–50% off the markholder's line,

10  and signs using the markholder's trademark on defendant's display case "places Defendants

11  outside the protections afforded by mere stock and resale."  509 F. Supp.2d at 1259; *see also, e.g.,*

12  *D 56*, 955 F.Supp. at 919–920 (use of plaintiff's trademark and promotional materials in

13  advertising and displays, distribution of plaintiff's trademarked pamphlets and posters as

14  promotional tools, and display of signs bearing plaintiff's trademark in defendants' store

15  precluded defendants' reliance on the exhaustion doctrine); *Bandag*, 750 F.2d at 916 (where seller

16  used producer's trademark in a telephone directory advertisement in a way to suggest reseller was

17  a franchisee of the producer, the exhaustion doctrine did not apply); *Stormor*, 587 F. Supp. at 280

18  (reseller that displayed plaintiff's trademark in reseller's booth at trade show and in

19  advertisement, and stamped reseller's name on producer's promotional literature and used it in

20  advertising lost protections of first-sale doctrine).

21          WSI's numerous, specific allegations of the ways in which Amazon's use of the

22  WILLIAMS-SONOMA mark is misleading also support WSI's well-pled allegations of dilution.

23  *See Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 319 (S.D.N.Y. 2007)

24  ("[W]here a defendant resells a trademarked product under the manufacturer's trademark and

---

[5] Amazon likewise relies upon two other cases in which it was sued concerning the resale of skincare products and an alleged counterfeit book.  *See* Mot. at 6.  Those cases are inapposite, *inter alia,* because plaintiffs failed to allege the sort of misleading actions present here; there were no facts showing confusion as to sponsorship or affiliation with the plaintiff in either case.  *See Vivo Per Lei, Inc. v. Bruchim*, No. CV 11-5169-GW(JCGX), 2012 WL 13008731 (C.D. Cal. Apr. 2, 2012); *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809 (N.D. Ill. 2016).

1 does *not* tell the whole truth so as . . . 'to cause dilution by blurring or dilution by tarnishment of

2 the famous mark,' defendant cannot hide behind the first sale doctrine.").

3       **B.      Amazon's Search Engine Advertising Is Confusing.**

4        Amazon's search engine advertising also illustrates how far its practices exceed merely

5 stocking, displaying, and reselling the products it offers.  Amazon misleadingly promotes its

6 WILLIAMS-SONOMA online store in search engine advertising by purchasing keywords that are

7 close but not identical to the WILLIAMS-SONOMA mark, such as "Williams & Sonoma."  Cplt.

8 ¶ 32.  Amazon's sponsored search engine ad even describes the Amazon "Williams & Sonoma"

9 presence as an "Official Site."  *Id.*  Consumers are likely to be confused by these ads into

10 believing that Amazon is an authorized WILLIAMS-SONOMA retail outlet and are diverted to

11 Amazon rather than the authorized WSI website.

12       This is paradigmatic initial interest confusion, which occurs "when a consumer seeks a

13 particular trademark holder's product and instead is lured to the product of a competitor by the

14 competitor's use of the same or a similar mark. . . .  Even though the consumer eventually may

15 realize that the product is not the one originally sought, he or she may stay with the competitor. . .

16 In that way, the competitor has captured the trademark holder's potential visitors or customers."

17 *Australian Gold*, 436 F.3d at 1238–39 (internal citations omitted); *Storus Corp. v. Aroa Mktg.,*

18 *Inc.*, No. C-06-2454 MMC, 2008 WL 449835, at *4 (N.D. Cal. Feb. 15, 2008).  When such use

19 creates initial interest confusion, it does not fall within the exhaustion doctrine.  *See Australian*

20 *Gold*, 436 F.3d at 1238–39; c*f Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d 1112, 1123

21 (D. Nev. 2013) (exhaustion applied only because plaintiff did *not* allege that defendants

22 purchased search engine keywords incorporating the plaintiff's marks).  When consumers in this

23 case arrive at the Amazon site, they are met by more confusing verbiage such as "Shop Williams

24 Sonoma," "by Williams Sonoma," and "from Williams Sonoma," which exacerbates the

25 confusion.

26       Amazon's reliance upon *Tabari* (Mot. at 17) is particularly unavailing here, because the

27 court in that case expressly distinguished the circumstances where a dealer was using the word

28 "official" despite being unauthorized.  610 F.3d at 1182.  That is exactly what Amazon is doing

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS, CASE NO. 18-CV-07548-EDL

1   with its search engine advertising.  And unlike in *Tabari*, where the dealer used prominent

2   disclaimers, when consumers are lured to Amazon's unauthorized WILLIAMS-SONOMA

3   website they do not find information making clear exactly who they are *not* dealing with.  *Id.* In

4   that case, unlike here, there was no issue about inferior quality.  *Id.* at 1175.  WSI's Complaint

5   outlines the premises for widespread initial interest confusion, and it describes consumer harm

6   that is resulting from that confusion.  This is plainly actionable.  *See Brookfield Commc'ns.*, 174

7   F.3d at 1057 ("A consumer who was originally looking for Brookfield's products or services may

8   be perfectly content with West Coast's database . . . but he reached West Coast's site because of

9   its use of Brookfield's mark as its second-level domain name, which is a misappropriation of

10  Brookfield's goodwill."); *Australian Gold,* 436 F.3d at 1239; *Storus*, 2008 WL 449835 at *4.

11              **C.      The Law Requires Accurate Descriptions And Clear Disclaimers.**

12              The exhaustion doctrine is no license to imply authorization where none is present.

13  Courts routinely require unauthorized distributors to issue disclaimers when using third party

14  marks in connection with the goods they sell.  S*ee*, *e.g*., *Volks City*, 348 F.2d at 660 (enjoining

15  defendant from using, among other designations such as "'Volkswagen Dealer' or 'Dealer in

16  Volkswagens', the trade names 'Volks City', 'Volkswagen City', 'Wagen City', 'Wagon City',

17  'Beetle City' or any other name commonly associated with Volkswagen products, 'Except in

18  conjunction with the legend 'Not a Franchised Volkswagen Dealer' in the same size lettering and

19  type face as any such name.'"); *Stormor,* 587 F. Supp. at 280 (enjoining defendants from using

20  plaintiff's trademarks in any display or advertising "unless accompanied by the following

21  statement in print of the same size and style as the text of the display or advertisement and located

22  immediately adjacent to the trademarks: 'The Seller is Not Affiliated With Stormor Division of

23  Fuqua Industries.'"); *see also Soltex Polymer Corp. v. Fortex Indus., Inc.*, 832 F.2d 1325, 1330

24  (2d Cir. 1987); *Better Bus. Bureau of Metro. Houston, Inc. v. Med, Directors.*, *Inc*., 681 F.2d 397,

25  405 (5th Cir. 1982) (requiring a disclaimer to obviate any confusion).

26              Thus, even if Amazon were *merely* stocking, displaying and reselling legitimate WSI

27  products, it would still need to make clear to the consuming public that it is not an authorized

28  distributor.  *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150

1   (9th Cir. 2011) (in the search engine keyword context, "if advertisements are clearly labeled . . .

2   rather than being misled, the consumer would merely be confronted with choices among similar

3   products."); *Tabari*, 610 F.3d at 1182 ("reasonable consumers would arrive at the Tabaris' site. . .

4   where they would immediately see the disclaimer and would promptly be disabused of any notion

5   that the Tabaris' website is sponsored by Toyota"); *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d

6   839, 858–59 (N.D. Tex. 2009); *Food Scis. Corp. v. Nagler*, No. CIV. 09-1798 JBS KMW, 2010

7   WL 4226531, at *5 (D.N.J. Oct. 20, 2010) (when a trademark holder allows sales of its goods

8   only through a network of qualified distributors, "an unauthorized distributor must take extra

9   caution in using the trademark in any way other than to label the product as required by law.").

10  Instead of clearly disclosing its role, Amazon is using the WILLIAMS-SONOMA brand for

11  website store labeling, search engine advertising, and targeted promotional emails.

12          Amazon argues that the presence of its own mark on its website dispels confusion.  Mot.

13  at 8.  This does not meet the standard outlined in the cases, and it is plainly not a proper argument

14  for a 12(b)(6) motion where the inferences must be drawn in WSI's favor.  The fact that Amazon

15  is identified as the party fulfilling an order does not explain whether it is affiliated with or

16  authorized by WSI.  Indeed, the presence of Amazon's mark arguably lends legitimacy to the

17  inference of sponsorship or endorsement.  As this Court has previously found, displaying the

18  marks adjacently can itself raise serious problems of exactly the type alleged here.  *See Shell*

19  *Trademark Mgmt. BV v. Canadian Am. Oil Co.*, No. 02-01365 EDL, 2002 WL 32104586, at *6

20  (N.D. Cal. May 21, 2002) ("Shell has raised a serious issue as to whether Defendant is in effect

21  improperly trading on Shell's goodwill through the use of Shell's prominently displayed sign and

22  trade dress in close proximity to Touchless gas, either by confusing consumers about whether

23  Touchless gas is affiliated with Shell, at least initially, or by diluting the distinctiveness of Shell's

24  mark.").[6]

25  _____

26  [6] *See also Volkswagenwerk Aktiengesellschaft v. Karadizian*, No. 70-2244 JWC, 1971 WL 16800,
    at *4 (C.D. Cal. Apr. 23, 1971) ("[I]nfringements and unfair competition are not vitiated by the
    use of the phrase 'Used cars only--Not a franchised Volkswagen dealer' with the trade name

27  'Volkswagen Village.'"); *Prompt Elec. Supply Co. v. Allen-Bradley Co.*, 492 F. Supp. 344, 349
    (E.D.N.Y. 1980) ("the Allen-Bradley sign stands together with the Prompt sign on Prompt's

28  facade; the products of no other electrical parts distributor are 'advertised' on the facade of
    Prompt's place of business even though the third sign mentioned above suggests that 'electrical

Amazon also argues that because the name of a seller can be found somewhere on the page, there can be no confusion. Mot. at 16. This argument is even more specious. The third-party sellers are nowhere identified as such. The names are hidden at the far right-hand side of each product listing page in tiny font, smaller even than the "fulfilled by Amazon" legend. In contrast, the phrase "by Williams-Sonoma" appears prominently at the center of each product listing, adjacent to the product title and image. *See* Cplt. ¶ 26. Nowhere does the page explain that there is no affiliation with WSI. Disclaimers of this nature are generally considered ineffective. *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1077 (9th Cir. 2006). Where, as here, the information that might inform consumers they are not transacting with a company authorized by or affiliated with the markholder is not prominently displayed, that information does not mitigate confusion or evidence an intent to avoid such confusion. *See Storus*, 2008 WL 449835, at *4; *Mary Kay*, 601 F. Supp. 2d at 858–59.

Only prominent, clear disclaimers work. *See, e.g.*, *Church*, 411 F.2d at 352. Amazon has none. For this reason, Amazon's reliance on *Tiffany v. eBay* is also unavailing, because eBay uses significant disclaimers. That decision explicitly noted that "[n]one of eBay's uses of the mark suggested that Tiffany affiliated itself with eBay or endorsed the sale of its products through eBay's website" and the Tiffany & Co. brand profile on eBay's website included the disclaimer that "'[m]ost of the purported 'TIFFANY & CO.' silver jewelry and packaging available on eBay is counterfeit.' . . The page further explained that Tiffany itself sells its products only through its own stores, catalogues, and website." 600 F.3d 93, 103 (2d Cir. 2010) (internal citations omitted).

## III. THE COMPLAINT ALSO ALLEGES FACTS DISQUALIFYING AMAZON FROM THE PROTECTION OF THE LIMITED EXHAUSTION LICENSE.

The foregoing demonstrates that the exhaustion doctrine simply does not apply here to serve as a defense to Amazon's infringement of WSI's service mark. Amazon has yet a further problem invoking exhaustion—it sells perishables and altered goods that do not qualify at all for protection under the limited redistribution license afforded by the first sale principle.

---

supplies' without description of their source of manufacture are available. The clear inference is that Prompt holds itself out as an authorized Allen-Bradley distributor and no mere seller through use of the Allen-Bradley sign on the facade of its place of business.").

The principle of exhaustion "does not hold true . . . when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner." *Davidoff*, 263 F.3d at 1302.  In such cases, the goods sold are no longer considered legitimate, and the sale may be infringing.  *See id*.  This, known as the quality control exception, is outside the scope of the exhaustion doctrine.  *See Trader Joe's*, 835 F.3d at 970–71; *see also Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 618 (9th Cir. 1993) ("One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark.").

A relevant difference in the goods "is one that consumers consider relevant to a decision about whether to purchase a product*." Davidoff,* 263 F.3d at 1302.  For the purpose of this analysis, "[b]ecause a myriad of considerations may influence consumer preferences, the threshold of materiality must be kept low to include even subtle differences between products." *Id*.  "[P]hysical material differences are not required to establish trademark infringement . . . trademarked goods originating from the trademark owner may have nonphysical characteristics associated with them, including services, such that similar goods lacking those associated characteristics may be believed by consumers to have originated from the trademark owner and, lacking such traits, may mislead the consumer and damage the owner's goodwill." *SKF USA Inc. v. Int'l Trade Comm'n*, 423 F.3d 1307, 1312 (Fed. Cir. 2005).

Relevant "material differences may include the warranties and services associated with" the resold goods. *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1073 (10th Cir. 2009).  Similarly, "[p]rice, without doubt, is also a variable with which purchasers are concerned." *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 644 (1st Cir. 1992).  Other examples found to be material in the exhaustion analysis include "[d]ifferences in labeling and other written materials." *Gamut Trading Co. v. U.S. Int'l Trade Comm'n*, 200 F.3d 775, 781 (Fed. Cir. 1999).

Amazon concedes that exhaustion does not apply when the goods resold are different from the original.  Mot. at 9.  Amazon dismisses this standard by arguing that WSI has not pled material differences in the goods.  Mot. at 10–11 (citing *Enesco Corp., v. Price/Costco Inc.*, 146

1    F.3d 1083, 1087 (9th Cir. 1998)).[7]  Apart from the fact that this is incorrect because sending the

2    wrong goods and missing pieces are physical defects, the court in *Enesco* noted that "[t]he critical

3    issue is whether the public is likely to be confused as a result of the lack of quality control."

4    *Enesco Corp.*, 146 F.3d at 1087.  The case nowhere held that such confusion could *only* be found

5    with physical defects.  The WILLIAMS-SONOMA products sold on Amazon are not subject to

6    WSI's quality controls, are sold for higher prices, do not match the specifications advertised, and

7    are sent without necessary parts.  Cplt. ¶ 33.  These problems reveal significant issues with both

8    the goods and the online retail *services*.  *See Tumblebus*, 399 F.3d at 766–67.  WSI's Complaint

9    also alleges that discovery is likely to uncover further such quality concerns, as those motivated

10   to leave bad reviews undoubtedly represent only a fraction of the problem.

11         Amazon next argues that these discrepancies constitute only "inaccurate advertising," and

12   do not represent a defect in the product itself.  Mot. at 10.[8]  This argument ignores the services at

13   issue, and misunderstands the relevant legal standard as to the goods as well.  "Differences in

14   labeling and other written materials have been deemed material."  *Gamut Trading*, 200 F.3d at

15   781.  The differences WSI complains of go far beyond "inaccurate advertising."  They illustrate

16   the central problem with Amazon's use of the WILLIAMS-SONOMA mark in connection with

17   its online retail services:  those services are fundamentally different from WSI's, because they are

18   not accompanied by the same quality control measures, warranties, or customer service WSI

19   offers its customers.  *See Beltronics*, 562 F.3d at 1073.  And higher prices are plainly material.

20   *See Societe Des Produits Nestle*, 982 F.2d at 644.

21   _____

22   [7] Amazon also argues that WSI "does not allege ***any*** facts in its Complaint about its quality
     control standards" (Mot. at 10). This ignores the clear pleading that "to protect the integrity of its
23   brand, WSI does not license the WILLIAMS-SONOMA Mark in connection with online retail
     services." Cplt. ¶ 22.  At the pleading stage, this is sufficient.  Amazon's argument that WSI
24   failed to specify its quality control procedures, citing *Warner-Lambert Co. v. Northside Dev.
     Corp.*, 86 F.3d 3, 6 (2d Cir. 1996), is unavailing. That case involved the sufficiency of evidence
25   on a motion for preliminary injunction.  *Id.*  In all events, WSI's allegations meet the
     requirements of that case.

26   [8] To the extent that Amazon also asserts WSI does not properly allege the product listings were
     written by Amazon (Mot. at 10, n. 6), WSI cannot know the intricacies of how Amazon develops
27   its content and the algorithms Amazon uses for search engine advertising and sending targeted
     emails without discovery.  If Amazon wishes to defend on the ground that it is not responsible for
28   the WILLIAMS-SONOMA mark appearing on its website, it is welcome to do so.  That is well
     beyond the pleadings.

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS, CASE NO. 18-CV-07548-EDL

1    Amazon's attempt to discredit "the quality control exception" as "largely developed by

2  the Second Circuit" (Mot. at 9), falls entirely flat.  The Second and Ninth Circuits are well

3  recognized as leading circuits in trademark matters.  And clearly the Ninth Circuit views it as

4  sufficient to plead a Lanham Act claim.  *See Trader Joe's*, 835 F.3d at 970–71:

> The quality control theory of infringement is cognizable under the
> Lanham Act notwithstanding the first sale doctrine: '[d]istribution of a
> product that does not meet the trademark holder's quality control
> standards may result in the devaluation of the mark by tarnishing its
> image.' . . . According to Trader Joe's, Hallatt's poor quality control
> practices could impact American commerce if consumers who purchase
> Trader Joe's-brand products that have been transported to Canada
> become ill, and news of such illness travels across the border. Trader
> Joe's alleges this may harm its reputation, reduce the value of its
> trademarks, and cause lost sales. Trader Joe's argues its risk of harm is
> particularly high because Pirate Joe's displays Trader Joe's trademarks,
> which leads consumers to believe that it is an authorized Trader Joe's
> retailer. There is nothing implausible about the concern that Trader
> Joe's will suffer a tarnished reputation and resultant monetary harm in
> the United States from contaminated goods . . . The complaint alleges
> that Hallatt sells Trader Joe's goods at inflated prices, so customers
> who shop at Pirate Joe's may come to mistakenly associate Trader Joe's
> with overpriced goods. Trader Joe's also alleges that Pirate Joe's has
> inferior customer service, something Trader Joe's believes reflects
> poorly on its brand.

16  The Complaint here alleges many of the *very same* wrongs alleged by Trader Joe's and accepted

17  as sufficient pleading by the Ninth Circuit.  *See* Cplt. ¶ 33.

18  **IV.    WSI'S WILFULNESS ALLEGATION IS SUFFICIENT.**

19    Amazon finally argues that even if the Court does not dismiss WSI's claims in their

20  entirety, it should dismiss WSI's allegation that Amazon's infringement was willful.  Mot. at 19–

21  21.  This is a procedurally improper request to strike, and WSI has pled facts sufficient to support

22  willful infringement.

23    **A.    Amazon's Improper Request To Strike Allegations Should Be Denied.**

24    Amazon asks the court to "dismiss" WSI's "claim" that it acted willfully.  Mot. at 19–21.

25  WSI, however, has not asserted a "claim" for willfulness, nor could it have as willfulness is not a

26  separately pled cause of action, as Amazon admits.  *See id*. at 21.  Amazon's request, properly

27  conceived, is a request to strike WSI's allegation of willfulness from the Complaint.  *See Power*

28  *Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,* No. C 09-05235 JW, 2010 WL

1   11484559, at *1 (N.D. Cal. Mar. 4, 2010) (construing defendants' request to dismiss willfulness

2   allegations pursuant to Rule 12(b)(6) as a motion to strike the allegations pursuant to Rule 12(f)).

3   Rule 12(f) limits the grounds on which a court may "strike from a pleading" to "redundant,

4   immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Petrie v. Elec. Game Card,*

5   *Inc.*, 761 F.3d 959, 966–67 (9th Cir. 2014).  Even in those contexts, motions to strike are

6   generally disfavored.  *Id.* at 965; *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d

7   925, 930 (N.D. Cal. 2013).  And "[i]f there is any doubt whether the portion to be stricken might

8   bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v.*

9   *IHI, Inc.*, 352 F. Supp. 2d 1048, 1059 (N.D. Cal. 2004).  Willful infringement is relevant and

10  material.  It is not impertinent or scandalous matter.  Striking WSI's allegation of willfulness is

11  improper.  *See id.*; *Power Integrations, Inc.*, 2010 WL 11484559, at *6 (denying motion to strike

12  willfulness allegation at pleading stage).

13          **B.      WSI Has Sufficiently Pled That Amazon Acted Willfully.**

14          "Willfulness can be established by evidence of knowing conduct or by evidence that the

15  defendant acted with an 'aura of indifference to plaintiff's rights.'" *Yelp Inc. v. Catron*, 70 F.

16  Supp. 3d 1082 (N.D. Cal. 2014) (quoting *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119,

17  1123 (C.D. Cal. 2007)); *Microsoft Corp. v. E & M Internet Bookstore, Inc.*, No. C 06-06707

18  WHA, 2008 WL 191346, at *3 (N.D. Cal. Jan. 22, 2008) ("A trademark infringement can be

19  deemed willful where the defendant acted with 'willful blindness.'").  Further, the standard for

20  proving willfulness is not the same as the pleading prerequisites.  *See Power Integrations, Inc*.,

21  2010 WL 11484559, at *6.  All that is required in a complaint is a good faith basis for alleging

22  willfulness.  *Id.*  WSI has pled facts sufficient to allege that Amazon acted with indifference to

23  WSI's rights, and therefore acted willfully.  Specifically, Amazon knew of WSI's online retail

24  services provided under its famous WILLIAMS-SONOMA mark (or at a minimum had

25  constructive knowledge of WSI's incontestable registration for such services), and yet (1) set up

26  an unauthorized WILLIAMS-SONOMA branded store on its website, falsely claiming that its

27  retail services are "by Williams-Sonoma," (2)  used WSI's own copyrighted photos and product

28  imagery on "Shop Williams-Sonoma" webpages, (3) promoted its infringing online retail services

1   using email advertising containing misleading statements, (4) and sponsored ads describing the

2   Amazon WILLIAMS-SONOMA presence as an "Official Site."  Cplt. ¶¶ 3, 24–32.  Amazon also

3   deliberately copied products and marks from WSI's other lines of business.  Cplt. ¶¶ 2, 4, 50–77.

4   These facts support a plausible inference that Amazon's infringement is willful.

5          Whether Amazon acted willfully is necessarily a fact-intensive inquiry requiring a

6   complete record, and so is not suitable for determination now.  *See, e.g., Frank Music Corp. v.*

7   *Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985) (willfulness is a factual

8   determination), *cert. denied* 494 U.S. 1017 (1990); *Gustafson, Inc. v. Intersystems Indus. Prod.,*

9   *Inc*., 897 F.2d 508, 510 (Fed. Cir. 1990) (whether infringement is willful is a question of fact and

10  is determined from the totality of the circumstances); *Language Line Servs., Inc. v. Language*

11  *Servs. Assocs., Inc*., 944 F. Supp. 2d 775, 784 (N.D. Cal. 2013) (willfulness is generally a

12  question of fact); *adidas-Am., Inc. v. Payless Shoesource, Inc*., 546 F. Supp. 2d 1029, 1046 (D.

13  Or. 2008) ("willful infringement is a question of fact that turns on the defendant's state of mind,

14  and is often accompanied by questions of intent, belief, and credibility."); *N. Face Apparel Corp.*

15  *v. Dahan*, No. 13-04821 MMM (MANX), 2014 WL 12558010, at *18 ("Generally, a

16  determination as to willfulness requires an assessment of a party's state of mind, a factual

17  issue.").

18         The cases Amazon cites are inapposite and distinguishable.  *Word to Info* stands for the

19  proposition that a claim for willful *patent* infringement should be dismissed if the complaint fails

20  to allege that defendant had pre-suit knowledge of the patents.  *Word to Info, Inc. v. Google Inc*.,

21  140 F. Supp. 3d 986, 989 (N.D. Cal. 2015).  In *Blockbuster*, trademark infringement was not at

22  issue, the record was fully developed, and the court declined to grant plaintiffs attorneys' fees

23  because the defendant could have reasonably thought that its actions did not violate the Lanham

24  Act when the case involved a question of first impression.  *Blockbuster Videos, Inc. v. City of*

25  *Tempe*, 141 F.3d 1295, 1300 (9th Cir. 1998).  In *Razor USA LLC*, the record was fully developed,

26  and based on the evidence in that record, the court found that there were undisputed facts

27  establishing that the defendant validly believed there was no likelihood of confusion because the

28  USPTO communicated to it that its marks did not conflict with any trademark registrations.

1   *Razor USA LLC v. Vizio, Inc*., No. CV1401586SJOJCGX, 2015 WL 12656941, at *6 (C.D. Cal.

2   Oct. 19, 2015).  In *Vapor Spot*, there was no claim of willful infringement, rather, the court

3   analyzed the plaintiff's assertion that the defendant willfully and deliberately adopted a similar

4   mark for the purpose of trading on its goodwill under the adoption of the mark prong of the

5   likelihood of confusion analysis and found that plaintiff did not provide *any* facts to support this

6   prong.  *Vapor Spot,* 2015 WL 12839123, at *14.  In *Lindy Pen Co.*, not only was the record fully

7   developed, but the district court proceeded with additional discovery and argument before

8   determining the infringement was not willful.  *Lindy Pen Co.,* 982 F.2d at 1405.

9           Finally, Amazon's argument that the first sale doctrine and *MTM* afford it a reasonable

10   belief that its use of the WILLIAMS-SONOMA mark was not infringing cannot be adjudicated in

11   this context.  Amazon seems to be trying to assert an advice of counsel defense in a Motion to

12   Dismiss that it has not even pled.  *Cf. Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d

13   1059, 1078 (9th Cir. 2015) (uncertainty in the law was but one aspect of willfulness inquiry;

14   evidence that defendants were aware their conduct conflicted with plaintiff's rights supported

15   finding of willfulness); *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1047

16   (D. Or. 2008) (before a court will consider the exculpatory value of an opinion of counsel of

17   noninfringement, the opinion must be found competent on the totality of the circumstances).

18                              **<u>CONCLUSION</u>**

19           For the foregoing reasons, the Motion should be denied in its entirety.

20

21   Dated:  February 26, 2019                 ORRICK, HERRINGTON & SUTCLIFFE LLP

22

                                              By:  _____*/s/ Annette L. Hurst*_____
23                                                      ANNETTE L. HURST

24                                            Attorney for Plaintiff Williams-Sonoma, Inc.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I, Annette L. Hurst, certify that on the 26th day of February 2019, I caused the foregoing document to be electronically transmitted to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants and attorneys of record in this case.

<i>/s/ Annette L. Hurst</i>
ANNETTE L. HURST
