DURIE TANGRI LLP
DARALYN J. DURIE (SBN 169825)
ddurie@durietangri.com
MARK A. LEMLEY (SBN 155830)
mlemley@durietangri.com
JOSEPH C. GRATZ (SBN 240676)
jgratz@durietangri.com
ALLYSON R. BENNETT (SBN 302090)
abennett@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:     415-362-6666
Facsimile:     415-236-6300

Attorneys for Defendant
AMAZON.COM, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAMS-SONOMA, INC.,<br><br>                          Plaintiff,<br><br>       v.<br><br>AMAZON.COM, INC.,<br><br>                          Defendant. | Case No. 3:18-cv-07548-EDL<br><br>**REPLY IN SUPPORT OF DEFENDANT AMAZON.COM, INC.'S MOTION TO DISMISS**<br><br>Date:     April 2, 2019<br>Time:     9:00 a.m.<br>Ctrm:     E<br>Judge:   Honorable Elizabeth D. Laporte |

1

**TABLE OF CONTENTS**

2   I.      INTRODUCTION ...............................................................................................................1

3   II.     ARGUMENT ....................................................................................................................2

4           A.      Williams-Sonoma Has not Plausibly Alleged that Amazon Set Up a Counterfeit
                    Williams-Sonoma Website ................................................................................3
5
6           B.      The First Sale Rule Protects Describing, as Well as Selling, Legitimate Goods.................5

7                   1.      Williams-Sonoma Cannot Evade the First Sale Rule Merely by Registering
                            for a Service Mark ..........................................................................5
8
9                   2.      The First Sale Rule Protects Amazon's Truthful Advertising ................................6

10                  3.      Williams-Sonoma Has not Plausibly Alleged that the Goods Purchased
                            Through Amazon Are Materially Altered.................................................7
11
            C.      Amazon's Truthful Advertising and Labeling of the Williams-Sonoma Goods That
12                  Can Be Purchased Through Its Website Is not Trademark Infringement .........................10

13          D.      Williams-Sonoma Does not Dispute That Trademark Dilution Requires That the
                    Disputed Mark Be Used To Identify Amazon's *Own* Goods or Services .........................14
14
            E.      Williams-Sonoma's Allegations of Willfulness Should Be Dismissed ............................14
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5 *Applied Underwriters, Inc. v. Lichtenegger*,
     913 F.3d 884 (9th Cir. 2019) ...........................................................................................2, 3

6 *Ashcroft v. Iqbal*,
7     556 U.S. 662 (2009)........................................................................................................2, 15

8 *Bell Atlantic Co. v. Twombly*,
     550 U.S. 544 (2007)..........................................................................................................2, 5

9 *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*,
10     562 F.2d 1067 (10th Cir. 2009) ............................................................................................8

11 *Boost Beauty, LLC v. Woo Signatures, LLC*,
     No. 2:18-cv-09260-CAS(Ex), 2019 WL 560277 (C.D. Cal. Feb. 11, 2019)........................7
12
*Brookfield Commc'ns, Inc. v. West Coast Entertainment Corp.*,
13     174 F.3d 1036 (9th Cir. 1999) .....................................................................................11, 12

14 *Brown v. Electronic Arts, Inc.*,
15     724 F.3d 1235 (9th Cir. 2013) ............................................................................................15

16 *CG Tech. Dev., LLC v. Big Fish Games, Inc.*,
     No. 2:16-cv-00857-RCJ-VCF, 2016 WL 4521682 (D. Nev. Aug. 29, 2016) ....................15
17
*Champion Spark Plug Co. v. Sanders*,
18     331 U.S. 125 (1947)..............................................................................................................7

19 *Cisco Systems, Inc. v. Tsai*,
     No. ED CV14-00791, 2015 WL 12732459 (C.D. Cal. Jan. 9, 2015) ...................................8
20
*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
21     547 F.3d 1095 (9th Cir. 2008) ..............................................................................................3

22 *Enesco Corp v. Price/Costco Inc.*,
23     146 F.3d 1083 (9th Cir. 1998) ..............................................................................................8

24 *Hart v. Amazon.com, Inc.*,
25     191 F. Supp. 3d 809 (N.D. Ill. 2016) ...................................................................................2

26 *Huf Worldwide, LLC v. Wal-Mart Stores, Inc.*,
     No. 16cv751-LAB (WVG), 2017 WL 766794 (S.D. Cal. Feb. 28, 2017)............................8
27
*Ileto v. Glock Inc.*,
28     349 F.3d 1191 (9th Cir. 2003) ............................................................................................15

*Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette*,
    988 F.2d 587 (5th Cir. 1993) ............................................................................................8

*Multi Time Machine, Inc. v. Amazon.com, Inc.*,
    804 F.3d 930 (9th Cir. 2015) .....................................................................................*passim*

*NEC Elec. v. CAL Circuit Abco*,
    810 F.2d 1506 (9th Cir. 1987) .........................................................................................8

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) .......................................................................................10

*Nitro Leisure Prods., LLC v. Acushnet Co.*,
    341 F.3d 1356 (Fed. Cir. 2003)........................................................................................7

*Novitaz, Inc. v. inMarket Media, LLC*,
    No. 16-CV-06795-EJD, 2017 WL 2311407 (N.D. Cal. May 26, 2017).............................14

*Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*,
    No. C 96-2703 TEH, 1997 WL 811770 (N.D. Cal. Dec. 18, 1997) ............................11, 12

*Playboy Enterprises, Inc. v. Netscape Communications Corp.*
    354 F.3d 1020 (9th Cir. 2004) .......................................................................................12

*Playboy Enterprises, Inc. v. Welles*,
    279 F.3d 796 (9th Cir. 2002) .........................................................................................14

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    No. C 09-05235 JW, 2010 WL 11484559 (N.D. Cal. Mar. 4, 2010) ...........................14, 15

*Razor USA LLC v. Vizio, Inc.*,
    No. CV 14-01586 SJO(JCGx) 2015 WL 12656941 (C.D. Cal. Oct. 19, 2015)..................15

*In re Seagate Technologies, LLC*,
    497 F.3d 1360 (Fed. Cir. 2007)......................................................................................15

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*,
    53 F.3d 1073 (9th Cir. 1995) ...........................................................................................7

*Shell Trademark Mgmt. BV v. Canadian Am. Oil Co., Inc.*
    EDL, 2002 WL 32104586 (N.D. Cal. May 21, 2002) ................................................12, 14

*State of Idaho Potato Comm'n v. G& T Terminal Packaging, Inc.*
    425 F.3d 708 (9th Cir. 2005) ...........................................................................................3

*Stevo Design, Inc. v. SBR Mktg. Ltd.*,
    919 F. Supp. 2d. 1112 (D. Nev. 2013)...............................................................................7

*SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*,
    846 F. Supp. 2d 1063 (N.D. Cal. 2012) .............................................................................6

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010) ..........................................................................................6, 11

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*
    610 F.3d 1171 (9th Cir. 2010) ...................................................................................*passim*

*Trader Joe's Co. v. Hallatt*,
    835 F.3d 960 (9th Cir. 2016) ..................................................................................2, 8, 9

*Tumblebus Inc v. Cranmer*,
    399 F.3d 754 (6th Cir. 2005) ..............................................................................................5

*Vivo Per Lei, Inc. v. Bruchim*,
    No. CV 11-5169-GW, 2012 WL 13008731 (C.D. Cal. Apr. 2, 2012)...........................2, 6, 7

*Vokswagenwerk Aktiengesellchaft v. Churtch*,
    411 F.2d 350 (9th Cir. 1969) ............................................................................................13

*Warner-Lambert Co. v. Northside Dev. Corp.*,
    86 F.3d 3 (2d Cir. 1996).....................................................................................................9

*Word to Info, Inc. v. Google Inc.*,
    140 F. Supp. 3d 986 (N.D. Cal. 2015) .............................................................................15

**Other Authorities**

    4 McCarthy on Trademarks & Unfair Competition § 25:41........................................................7

REPLY IN SUPPORT OF MOTION TO DISMISS / CASE NO. 3:18-CV-07548-EDL

## I.    INTRODUCTION

If there were any doubt, Williams-Sonoma's opposition makes clear what this case really is—and is not—about.  It's *not* about counterfeiting; it *is* about Williams-Sonoma's desire to be the only one who can sell its products online.  Williams-Sonoma argues that its ownership of a service mark means that it has "the exclusive right to exploit the WILLIAMS-SONOMA mark in offering online retail services," even when those online retail services are nothing more than selling genuine Williams-Sonoma products on the Internet. Opp'n at 1 (emphasis omitted).  But that's simply not the law.

Williams-Sonoma masks its true intentions by claiming that Amazon has set up a fake Williams-Sonoma website.  But it is not plausible that consumers are likely to be confused into believing that a page that says Amazon.com (and uses Amazon, not Williams-Sonoma, branding) at the top is really a Williams-Sonoma website simply because it truthfully says that customers can "Shop Williams-Sonoma" there; that an advertisement for an "*Amazon* Official Site" is really an advertisement for a "*Williams-Sonoma* Official Site"; or that an advertisement for Williams-Sonoma Peppermint Bark was sent by Williams-Sonoma when that advertisement is sent from an Amazon.com email address, thanks the consumer for "shopping on Amazon," shows the consumer the peppermint bark because it is an item in her *Amazon.com* "browsing history," also advertises four other products not from Williams-Sonoma, and prominently displays Amazon's logo not once, but twice.

Recognizing the weakness in its position, Williams-Sonoma tries to change the facts pled in its own Complaint.  It repeatedly drops the word "Amazon" from "Amazon Official Site" in its brief.  It draws a red line through the portion of Amazon's website telling the customer that the product is "sold by" an identified third-party seller.  It cuts off the Amazon.com logo on the top of the product page.  And it claims that Amazon does not follow Williams-Sonoma's quality controls because Amazon does not include a "sell-by date" on its website, when *Williams-Sonoma's own site* also has no sell-by date.

Williams-Sonoma also tries to change the law.  To name just a few examples, Williams-Sonoma cites *Toyota Motor Sales, U.S.A., Inc. v. Tabari* in arguing that Amazon is required to include a disclaimer on its website, when *Tabari* stated explicitly that "[s]peakers are under *no obligation* to provide a disclaimer" when truthfully using a trademark owner's mark to refer to the trademark owner. 610 F.3d 1171, 1177 (9th Cir. 2010) (emphasis added).  It dismisses *Multi Time Machine, Inc. v.*

1  *Amazon.com, Inc.,* 804 F.3d 930 (9th Cir. 2015) (hereinafter, "*MTM*"), as a "comparative advertising"

2  case, when that case, like this one, was about whether Amazon's search results were infringing and did

3  not involve comparative advertising at all.  And it claims that the Ninth Circuit ruled on the *sufficiency* of

4  Trader Joe's allegations with respect to the quality control exception to the first sale rule in *Trader Joe's*

5  *Co. v. Hallatt*, 835 F.3d 960 (9th Cir. 2016), when all that case addressed was whether the plaintiff had

6  pled that the court had jurisdiction over extraterritorial conduct.

7        Amazon.com, which Williams-Sonoma alleges is "one of the largest online retailers in the

8  world," Compl. ¶ 11, is not a "counterfeit Williams-Sonoma website."  It is implausible to contend

9  otherwise. Williams-Sonoma cannot run away from the case law and its own allegations.  Because its

10  claims regarding the Williams-Sonoma mark fail as a matter of law, they should be dismissed.

11  **II.     ARGUMENT**

12        Williams-Sonoma cannot prevent dismissal of its claims merely by pleading "[t]hreadbare recitals

13  of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556

14  U.S. 662, 678 (2009).  Rather, it must allege facts sufficient to "state a claim to relief that is plausible on

15  its face."  *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007).

16        Williams-Sonoma argues that trademark infringement and dilution claims "are uniquely ill-suited

17  to resolution on a motion to dismiss."  Opp'n at 6. But courts have repeatedly granted motions to dismiss

18  is cases involving the use of a trademark owner's mark to identify the trademark owner's own goods or

19  services.  *See, e.g.*, *Vivo Per Lei, Inc. v. Bruchim*, No. CV 11-5169-GW (JCGx), 2012 WL 13008731

20  (C.D. Cal. Apr. 2, 2012), *adopted as final* by No. CV 11-5169-GW (JCGx), Dkt. 75 (dismissing

21  manufacturer's claims against Amazon under the first sale doctrine); *Hart v. Amazon.com, Inc.*, 191 F.

22  Supp. 3d 809, 819–20 (N.D. Ill. 2016) (dismissing author's claims against Amazon under the first sale

23  doctrine).  Indeed, the Ninth Circuit recently upheld the dismissal of a Complaint alleging that the

24  defendant infringed the plaintiff's mark by using that mark to refer to the plaintiff's own product.  *See*

25  *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 898 (9th Cir. 2019).  While the court

26  acknowledged that "it is a rare situation in which granting a motion to dismiss is appropriate when a case

27  involves questions of consumer confusion," it counseled that dismissal is called for where lack of

28  infringement is clear "on the face of the complaint" (in *Applied Underwriters*, because the infringement

constituted nominative fair use).  *Id.*  Because that is the case here, Williams-Sonoma's allegations with respect to Amazon's use of the Williams-Sonoma mark should be dismissed.

### A.    Williams-Sonoma Has not Plausibly Alleged that Amazon Set Up a Counterfeit Williams-Sonoma Website

Williams-Sonoma argues that "[u]se of a spurious mark identical to a registered one is counterfeiting, period."  Opp'n at 9. Perhaps. But (as explained in more detail below) the case law is clear that using a trademark owner's mark to refer to the trademark owner's products is not "spurious." *See* Sections II.B-II.C, *infra*. Williams-Sonoma tries to skirt this limitation by arguing that Amazon has set up a fake Williams-Sonoma online *store,* not just that merchants on Amazon are re-selling legitimate Williams-Sonoma *products.*[1]  But Williams-Sonoma has not plausibly alleged that ordinary consumers would likely be confused into believing that Amazon.com is actually a Williams-Sonoma website, much less that Amazon.com is a counterfeit Williams-Sonoma website.

In arguing otherwise, Williams-Sonoma relies primarily on its supposed allegations that (1) the product pages on Amazon.com identify goods made by Williams-Sonoma as "by Williams-Sonoma" or "from Williams-Sonoma"; (2) Amazon sends e-mails offering "great prices" with links to buy Williams-Sonoma peppermint bark; (3) "search engine ads imply that there is an 'official WILLIAMS-SONOMA 'site' at Amazon"; and (4) Amazon's website features a "Shop Williams Sonoma" page.  Opp'n at 10, 14.  But where a defendant uses the plaintiff's mark to accurately describe the plaintiff's own products, "the mere use of a trademark alone cannot suffice to make such use explicitly misleading."  *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008).  Nor is what a consumer theoretically could believe based on a few phrases taken out of context relevant.  Rather, "the labeling and appearance of the products for sale on Amazon's web page is the most important factor."  *MTM*, 804 F.3d at 937.  On the Internet, accurate labeling about the source of the products is *all* the law requires.

---

[1] Williams-Sonoma also argues that "[i]t does not matter that the goods *might* in some sense be genuine; what matters is the loss of opportunity to control the application of the mark." Opp'n at 9 (emphasis in original). But the application of a trademark owner's mark to its own, genuine, non-altered goods, is simply not trademark infringement. Nothing Williams-Sonoma cites says otherwise. The one Ninth Circuit case it points to, *State of Idaho Potato Comm'n v. G& T Terminal Packaging, Inc.*, says nothing of the sort. There, a licensee of a certification mark purchased bags bearing the certification mark and used them after the license had expired, and the licensee admitted that it did not follow the trademark owner's quality control standards. 425 F.3d 708, 721-22 (9th Cir. 2005).

*Id*.

Williams-Sonoma ignores its own allegations regarding the "labeling and appearance" of Amazon's advertisements and its website.  Those allegations show that it is implausible that a consumer visiting Amazon.com would think it is a Williams-Sonoma website.  For example, the screen shots attached to the Complaint show that Amazon's product pages (1) have the Amazon logo and search bar at the top (although Williams-Sonoma intentionally cuts the logo out of one image), *see* Compl. ¶ 26, Ex. C; (2) inform the consumer (in type the same size as the "by Williams-Sonoma" label) that the product is "fulfilled by Amazon" *and sold by an identified third-party* (despite Williams-Sonoma's attempt in one image to hide it behind a red circle)*, See id*. ¶ 26, Ex. C; and (3) *lists other third party* sellers who are selling the same product on Amazon*, id.* Ex. C. Williams-Sonoma also says Amazon deceives consumers by referring to its page as an "Official Site," but repeatedly leaves out that the ad says that the site in question is the "*Amazon* Official Site."  *Id*. ¶ 32 (emphasis added).

Williams-Sonoma's claims with respect to the "Shop Williams-Sonoma" page fare no better. First, the Complaint alleges that people access the "Shop Williams-Sonoma" page by clicking on a link on Amazon's website from a page featuring a particular Williams-Sonoma product. *See* Compl. ¶ 27. Second, the image that Williams-Sonoma included in its Complaint reveals that the "Shop Williams-Sonoma" page prominently displays the *Amazon* logo, asks users to "Try Prime" (a well-known Amazon service), and contains the phrase "Your Amazon.com" at the top (which Williams-Sonoma has again obscured behind a red circle).  Compl. ¶ 27. Third, while Williams-Sonoma alleges that Amazon uses the same product images as appear on the Williams-Sonoma website, it notably does *not* allege that the "Shop Williams-Sonoma" page uses Williams-Sonoma's logo, font, or trade dress (or indeed that Amazon.com looks anything at all like Williams-Sonoma's own website).  Williams-Sonoma's claims with respect to the "Shop Williams-Sonoma" page boil down to an argument that consumers read the phrase "*Shop* Williams-Sonoma" as "Williams-Sonoma *Shop*."  But reasonable consumers know the difference between "shop" when used as a verb and "shop" when used as a noun. The site tells consumers exactly what they can do: shop for Williams-Sonoma products on Amazon.

Nor can Williams-Sonoma turn a single marketing email into a plausible allegation that Amazon is running a fake Williams-Sonoma store.  The "peppermint bark" email (1) displays the Amazon logo in

two places, (2) contains the phrase "Your Amazon.com," (3) states that it was sent to a consumer who had *already browsed for* the peppermint bark on Amazon.com, (4) also suggests four products to the consumer that are available on Amazon and not by Williams-Sonoma, (5) offers genuine Williams-Sonoma peppermint bark, and (6) thanks the customer for shopping on Amazon.  Compl. Ex. B.

In short, none of Williams-Sonoma's allegations make it *plausible* that a reasonable consumer shopping on Amazon.com would really believe that she is shopping on Williams-Sonoma's own website. *See Twombly*, 550 U.S. at 570.  Nor can ads and emails directing people to the "Amazon Official Site" cause any such belief.  The Amazon site and the products sold are clearly labeled. That's all the law requires.

### B.    The First Sale Rule Protects Describing, as Well as Selling, Legitimate Goods

Williams-Sonoma's attempts to escape the first sale rule also fail.  First, a trademark owner cannot evade the first sale rule merely by registering for a service mark for the service of selling its goods.  Second, Williams-Sonoma has not alleged that the goods sold on Amazon materially differ from those sold by Williams-Sonoma directly.  Lastly, Williams-Sonoma has not plausibly alleged that Amazon holds itself out as an authorized Williams-Sonoma retailer.

### 1.    Williams-Sonoma Cannot Evade the First Sale Rule Merely by Registering for a Service Mark

Williams-Sonoma argues that "[t]he legal rule Amazon seems to posit is that the service mark registration is meaningless so long as an exhaustion principle might be invoked.  That is not the law." Opp'n at 8 (citation to Amazon's motion omitted).  Unfortunately for Williams-Sonoma, that *is* the law. There is nothing special about a service mark: As long as no exception to the first sale rule applies, it is not trademark infringement when an alleged infringer uses the trademark owner's mark in connection with the sale of the trademark owner's product, even when that mark is a service mark.  *See* Mot. 6-8.

*Tumblebus Inc v. Cranmer*, 399 F.3d 754 (6th Cir. 2005), on which Williams-Sonoma relies, is not to the contrary.  In *Tumblebus*, the alleged infringer sold gymnastics instruction, not the trademark owner's own goods.  The Sixth Circuit held that the first sale rule did not apply, *not* because the mark at issue was a service mark, but because the defendant was "not using the [trademark owner's] mark to resell a genuine good produced by [the trademark owner]."  *Id.* at 766. Because Williams-Sonoma has

not plausibly alleged that the Amazon website is really a counterfeit Williams-Sonoma website, all Williams-Sonoma is left with is its allegations that Amazon (and third parties using Amazon) re-sell Williams-Sonoma goods and truthfully advertise that re-sale.  That conduct falls within the first sale rule whether the allegedly infringed mark is for a service or a product.

Indeed, were it otherwise, *any* trademark owner could prevent the re-sale of its products online simply by registering for a service mark.  Because Toyota has registered the service mark "LEXUS" for "automotive vehicle leasing services,"[2] on Williams-Sonoma's theory, the Tabaris could never advertise that they could help consumers buy or lease a Lexus, much less run a web site called "buyorleasealexus.com."  But they can. *See, e.g.*, *Tabari*, 610 F.3d at 1171.  Because Tiffany & Co. has registered for a service mark for "retail store services,"[3] on Williams-Sonoma's theory, eBay could never inform consumers that Tiffany products were available on its website.  But it can. *Tiffany (NJ) Inc. v. eBay Inc*., 600 F.3d 93, 102-103 (2d Cir. 2010).

### 2.    The First Sale Rule Protects Amazon's Truthful Advertising

Williams-Sonoma argues that the first sale rule applies "*only* [to] stocking, displaying and reselling [Williams-Sonoma] goods in a manner not likely to cause confusion as to affiliation with WSI." Opp'n at 14; *see also id.* at 12.  It seems to think you can sell the products but can't tell anyone you are selling the products.  That is not the law.

To the contrary, courts have recognized that the first sale rule protects re-sellers' right to truthfully advertise that they offer goods made by the original seller.  *See, e.g.*, *Tiffany (NJ) Inc.*, 600 F.3d at 103 ("While a trademark conveys an exclusive right to the use of a mark in commerce in the area reserved, that right generally does not prevent one who trades a branded product from accurately describing it by its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product."); *Vivo Per Lei, Inc.*, 2012 WL 13008731, at *3 ("A retailer can use a brand name on Web site ads selling that branded product without a license from the trademark owner.")

---

[2] U.S. Trademark Reg. No. 1,675,339. To the extent judicial notice of that registration is necessary, judicial notice is appropriate.  *See, e.g.*, *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.,* 846 F. Supp. 2d 1063, 1071 n.3 (N.D. Cal. 2012) (taking judicial notice of USPTO trademark registration record).

[3] U.S. Trademark Reg. No. 1,251,356.

(quoting 4 McCarthy on Trademarks & Unfair Competition § 25:41).[4]

The law permits truthful advertising of the products Amazon is lawfully selling. Indeed, resellers can do even more.  Since the Supreme Court's 1947 opinion in *Champion Spark Plug Co. v. Sanders,* courts have applied the first sale rule to conduct going well beyond stocking, display and resale.  The law specifically permits accurately identifying those resold goods, and even permits affixing the trademark owner's mark to goods where it has been damaged or removed.  *See, e.g. Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947) (re-seller could recondition spark plugs and sell them under original trademark); *Nitro Leisure Prods., LLC v. Acushnet Co.*, 341 F.3d 1356 (Fed. Cir. 2003) (no trademark infringement where re-seller removed the base coat of paint, and the trademark on golf balls, repainting the models and then *reaffixed* the original trademark).

Amazon does not suggest it is an authorized retailer merely by placing truthful ads on Google, or by truthfully stating that the products on its website are "by Williams-Sonoma," that users can "Shop Williams-Sonoma" on Amazon, and that users can find Williams-Sonoma products on the "Amazon Official Site."  Compl. ¶ 26, Ex. C.[5]  Indeed, *Vivo Per Lei* found that Amazon could engage in "*extensive* advertising campaigns, including *prolific bidding on Vivo's Marks as keyword triggers* for paid advertisements and *using the Marks as the title and/or within the text of paid advertisements*" while still falling within the first sale rule. 2012 WL 13008731, at *3 (emphasis added); *accord Boost Beauty, LLC v. Woo Signatures, LLC*, No. 2:18-cv-09260-CAS(Ex), 2019 WL 560277, at *10 (C.D. Cal. Feb. 11, 2019) (granting a motion to dismiss, holding that keyword advertising "[a]s a matter of law [] does not constitute counterfeiting")

### 3. Williams-Sonoma Has not Plausibly Alleged that the Goods Purchased Through Amazon Are Materially Altered

Williams-Sonoma argues in its opposition that it has plausibly alleged the quality control

---

[4] The Ninth Circuit has held that conduct "other than merely stocking and reselling genuine trademarked products *may* be sufficient to support a cause of action for infringement," *not* that the first sale rule applies *only* to that conduct.  *See Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995) (emphasis added).  The law is clear that truthfully branding and advertising those products is protected activity.  *Id.*  ("**The 'first sale' rule is not rendered inapplicable merely because consumers erroneously believe the reseller is affiliated with or authorized by the producer.**").

[5] Contrary to Williams-Sonoma's claim, *Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d. 1112, 1123 (D. Nev. 2013), did not say, even in dicta, that the mere purchase of keyword advertisements would have barred the application of the first sale rule.  As noted in text, the law is to the contrary.

1   exception to the first sale rule. Opp'n at 20. It has not.

2          Relying largely on out-of-Circuit cases, Williams-Sonoma ignores the Ninth Circuit's guidance

3   that "the 'quality control' cases where trademark infringement has been found all involved some defect

4   (or potential defect) in the product itself that the customer would not be readily able to detect." *Enesco*

5   *Corp v. Price/Costco Inc.*, 146 F.3d 1083, 1087 (9th Cir. 1998); *see also Matrix Essentials, Inc. v.*

6   *Emporium Drug Mart, Inc., of Lafayette*, 988 F.2d 587, 591 (5th Cir. 1993) ("The common thread in all

7   the above cited cases where trademark infringement was found is that each involved some defect (or

8   potential defect) *in the product itself* that the customer would not be readily able to detect.") (cited in

9   *Enesco*); *Cisco Systems, Inc. v. Tsai*, No. ED CV14-00791 JAK(ASx), 2015 WL 12732459, at *7 (C.D.

10  Cal. Jan. 9, 2015) (to qualify for the quality control exception "[g]enerally, there must be 'some defect

11  (or potential defect) in the product itself that the customer would not be readily able to detect").[6]  As

12  explained in more detail in Amazon's opening brief, Williams-Sonoma has not alleged anything

13  approaching that standard.

14         Williams-Sonoma relies on *Trader Joe's Co. v. Hallatt*, 835 F.3d 960 (9th Cir. 2010).  That case,

15  however, did not evaluate on the merits whether Trader Joe's had adequately pled the quality control

16  exception. Rather, the only question in that case was whether the conduct that Trader Joe's alleged (most

17  of which occurred in Canada) had "some effect" on American commerce, such that there was jurisdiction

18  under the Lanham Act at all.  *Id.* at 962-63, 970. And even if the Ninth Circuit had evaluated the first sale

19  allegations on the merits, that would not help Williams-Sonoma: Trader Joe's alleged that the

20  defendant's failure to follow Trader Joe's strict quality control standards for perishable items meant that

21  at least one person had become ill after consuming food purchased from the defendant.  *Id.*  Williams-

22  Sonoma's allegations here do not come close to that.

23         Further, *Trader Joe's* statements about "inflated prices" and "inferior customer service"—quoted

24

25  [6] Indeed, Williams-Sonoma relies on (among other cases) the Tenth Circuit's opinion in *Beltronics USA,*
    *Inc. v. Midwest Inventory Distribution, LLC*, 562 F.2d 1067 (10th Cir. 2009), for the idea that "material
26  differences may include the warranties and services associated with" the resold goods.  Opp'n at 20.  But
    the Ninth Circuit "precludes an infringement claim based on voided warranties alone."  *Huf Worldwide,*
27  *LLC v. Wal-Mart Stores, Inc.*, No. 16cv751-LAB (WVG), 2017 WL 766794, at *2 (S.D. Cal. Feb. 28,
    2017) (discussing the court's ruling in *NEC Elec. v. CAL Circuit Abco*, 810 F.2d 1506, 1508-1509 (9th
28  Cir. 1987), which applied the first sale rule even though some of the defendant's customers mistakenly
    thought their products would be covered by the plaintiff's warranties).

in Williams-Sonoma's brief accompanied by strategically-placed ellipses—were *not* part of its discussion of the quality control exception to the first sale rule.  They were about the defendant's "alleged attempt to pass as an authorized Trader Joe's retailer."  *Id.* at 971 ("Hallatt's alleged attempt to pass as an authorized Trader Joe's retailer could similarly harm Trader Joe's domestic reputation and diminish the value of its American-held marks. The Complaint alleges that Hallatt sells Trader Joe's goods at inflated prices . . . .").  As noted above, Williams-Sonoma has not plausibly alleged that Amazon has attempted to pass itself off as an authorized Williams-Sonoma store.[7]

In any event, even if Williams-Sonoma had adequately pled that the goods purchased through Amazon are defective for purposes of the quality control exception, Williams-Sonoma's allegations are still deficient.  To qualify for the quality-control exception, Williams-Sonoma must plausibly allege that it *has* quality controls.  *See Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996). Williams-Sonoma alleges, for example, that Amazon's website does not describe goods accurately and that a product arrived with broken glass.  But Williams-Sonoma does not allege what measures *Williams-Sonoma* takes to ensure that goods are accurately described on its website, or that no item it ships has ever arrived broken.  Indeed, Williams-Sonoma complains that "[p]erishables are displayed with no sell-by date information," Opp'n at 2, 5, but Williams-Sonoma's own listing for the only perishable identified with any particularity in the Complaint (peppermint bark) similarly lists no sell-by date.  Compl. Ex. C. Amazon cannot violate Williams-Sonoma's trademark by failing to follow Williams-Sonoma's asserted quality control standards if Williams-Sonoma does not follow them itself.

All Williams-Sonoma points to in its opposition brief to support its claim that it has adequately pled that it has quality control standards is its allegation that "to protect the integrity of its brand, WSI does not license the WILLIAMS-SONOMA Mark in connection with online retail services."  Opp'n at 21 n.7.  If that were enough to allege quality controls, the first sale rule would be toothless: The very fact that a retailer objected to re-sale would allow it to prevent such re-sale from occurring.

---

[7] The defendant in *Trader Joe's* not only sold Trader Joe's products and advertised using Trader Joe's trademark, but also had (1) opened a store named "Pirate Joe's"; (2) displayed an exterior sign at Pirate Joe's that used a font similar to the trademarked Trader Joe's insignia; and (3) designed the Pirate Joe's store to mimic Trader Joe's trade dress.  *Trader Joe's*, 835 F.3d at 964.  None of that is alleged here.

**C.    Amazon's Truthful Advertising and Labeling of the Williams-Sonoma Goods That Can Be Purchased Through Its Website Is not Trademark Infringement**

Williams-Sonoma's allegations fail for the additional reason that binding Ninth Circuit authority makes clear that Amazon cannot be liable as a matter of law for accurately labeling and advertising the products that appear on its website.

### 1.    Accurate Labeling Alone Makes Amazon's Use Lawful

The Ninth Circuit held as a matter of law in *MTM* that "no reasonably prudent consumer accustomed to shopping online would likely be confused as to the source of the products" on Amazon because Amazon's website clearly labels those products' source. *MTM*, 804 F.3d at 933.  Williams-Sonoma distinguishes *MTM* as a "comparative advertising" case. Opp'n at 14.  It wasn't.  Comparative advertising is when a seller uses another's mark in advertising in order to *compare* the trademark owner's products to the seller's.  *See* 1 McCarthy on Trademarks and Unfair Competition § 4:17 (5th ed.) (giving as an example of comparative advertising, "Our ZETA gizmos last longer than ALPHA gizmos").  That is not what happened in *MTM*. When a consumer searched for MTM watches on Amazon, Amazon's search results page would display the search term used (including MTM's mark), followed by accurate listings of watches that were not manufactured by MTM.  MTM claimed that this was likely to cause confusion (including initial interest confusion), but the Ninth Circuit disagreed.  The Ninth Circuit found no likelihood of confusion as a matter of law because, *even without a disclaimer*, "[t]he search results page makes clear to anyone who can read English that Amazon carries only the brands that are clearly and explicitly listed on the web page."  *MTM*, 804 F.3d at 938.

*MTM* is not an outlier.  The Ninth Circuit has held that, in the Internet context, "the likelihood of confusion will ultimately turn on what the consumer saw on the screen and reasonably believed, given the context."  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1153 (9th Cir. 2011).  Accordingly, whether the relevant mark is used on a web page or in an online advertisement, clear labeling prevents consumer confusion as a matter of law.  *See, e.g.*, *id.* at 1154.

Williams-Sonoma's own allegations demonstrate that Amazon's website and its advertisements are clearly labeled. Williams-Sonoma complains, for example, that "Amazon's sponsored search engine ad even describes the Amazon Williams & Sonoma presence as an 'Official Site.'"  Opp'n at 16.  But

Williams-Sonoma included a picture of the advertisement in its Complaint—and that is not what it says. The advertisement describes an *Amazon* official site, and it contains the word Amazon seven times:



Compl. ¶ 32. [8]  In other words, the advertisement is clearly labeled.

That Amazon informs the consumer that Williams-Sonoma products are available via its website does not mean that the advertisement is confusing; it means the advertisement is true.  *See, e.g.*, *Tabari*, 610 F.3d at 1171 (Lexus broker could lawfully use Lexus mark in its domain name without having to expressly disavow association with the trademark holder); *Tiffany*, 600 F.3d at 102–03 (eBay could lawfully use Tiffany's mark on its website and in sponsored links because "eBay used the mark to describe accurately the genuine Tiffany goods offered for sale on its website"); *Patmont Motor Werks, Inc. v. Gateway Marine, Inc*., No. C 96-2703 TEH, 1997 WL 811770, at *4 (N.D. Cal. Dec. 18, 1997) (defendant that sold Go-Ped scooters could use the word "Go-Ped" on his website because "Go-Peds simply are not identifiable without using the word 'Go-Ped'").

Ignoring *MTM* and relying largely on out-of-Circuit and district court cases, Williams-Sonoma argues that Amazon's advertisements are likely to cause initial interest confusion.  Williams-Sonoma relies on *Brookfield Commc'ns, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1057 (9th Cir. 1999); *see* Opp'n at 16-17. But this case is not *Brookfield*. In *Brookfield*, a competitor of the trademark owner of the term "Moviebuff" sought to create a website with the domain name moviebuff.com that would feature the competitor's product, and to use the term "Moviebuff" in metatags on its website. Here, Amazon has not created a website with the domain name Williams-Sonoma.com: It has simply

---

[8] For that reason,  Williams-Sonoma's attempt to distinguish *Tabari* on the grounds that Amazon's advertisement "use[d] the world 'official' despite being unauthorized" is unavailing.  Opp'n at 16. Amazon was truthfully informing that consumer that the website was an "*Amazon* Official Site."  It did not claim the site was a "*Williams-Sonoma* Official Site."  Indeed, it dispelled any such confusion.

1  accurately informed consumers that Williams-Sonoma products are available from third parties on

2  Amazon.

3        As this Court previously recognized in *Shell Trademark Mgmt. BV v. Canadian Am. Oil Co., Inc.*

4  (a case on which Williams-Sonoma relies), accurately informing consumers that a trademark owner's

5  products are available does not create initial interest confusion under the Ninth Circuit's ruling in

6  *Brookfield*. No. 02-01365 EDL, 2002 WL 32104586, at *4 (N.D. Cal. May 21, 2002).  In *Shell*, the

7  defendant, who sold both Shell gasoline and the defendant's brand of gasoline, prominently displayed

8  Shell's name, logo and trade dress.  Shell argued that this caused initial interest confusion because

9  customers could also buy other brands of gas there.  The Court disagreed, holding that "the situation here

10  would be more analogous to diversion to a web site that offered both the trademark owner's products and

11  the competitor's on the same home page, *unlike the website in Brookfield*."  *Id.* at *4 (emphasis added).

12  "Diversion" to such a site is lawful competition.

13        Further, as noted above, *Brookfield* involved the use of another's trademark as a domain name, in

14  the form "trademark.com."  The Ninth Circuit has recognized that as is a special case. "Outside the

15  special case of trademark.com, or domains that actively claim affiliation with the trademark holder,

16  consumers don't form any firm expectations about the sponsorship of a website until they've seen the

17  landing page, if then.  This is sensible agnosticism, not consumer confusion."  *Tabari*, 610 F.3d at 1179.

18  Judge Berzon, in her concurrence in *Playboy Enterprises, Inc. v. Netscape Communications Corp.*,

19  cautioned against applying *Brookfield* to a case where the advertisements at issue are accurate and clearly

20  labeled:

21          *Brookfield* might suggest that there could be a Lanham Act violation *even if* the banner
        advertisements were clearly labeled, either by the advertiser or by the search engine . . .
22          [s]o read, the metatag holding in *Brookfield* would expand the reach of initial interest
        confusion from situations in which a party is initially confused to situations in which a
23          consumer is never confused as to source or affiliation, but instead knows, or should know,
        from the outset that a product or web link is not related to that of the trademark holder
24          because the list produced by the search engine so informs him.

25  354 F.3d 1020, 1034-35 (9th Cir. 2004) (emphasis in original) (Berzon, J., concurring).

26        In sum, Williams-Sonoma cannot escape the Ninth Circuit's holding that clear labeling prevents

27  initial interest confusion *as a matter of law*.  *See, e.g.*, *MTM*, 804 F.3d at 933.  Nor can it escape its own

28  allegations, which show that Amazon's website and advertisements are clearly labeled.  Accordingly,

1   Williams-Sonoma's claims must be dismissed even if the Court declines to apply the first sale rule.

2   **2.      Disclaimers Are Not Required**

3   Williams-Sonoma argues that the case law requires Amazon to issue a disclaimer. Opp'n at 12-

4   13.  But one of the very cases that Williams-Sonoma cites, *Tabari*, says exactly the opposite.  In that

5   case, Toyota sued two auto brokers who used of the word "Lexus" in their domain name.  While the

6   Tabaris' website included a disclaimer, the Ninth Circuit held that one was not required.  Rather,

7   "[s]peakers are under no obligation to provide a disclaimer as a condition of engaging in truthful, non-

8   misleading speech." 610 F.3d at 1777; *see also id.* ("The nominative fair use doctrine allows such

9   truthful use of a mark, *even if the speaker fails to expressly disavow association with the trademark*

10  *owner*, so long as it's unlikely to cause confusion as to sponsorship or endorsement.") (emphasis added).

11  In *Tabari*, the Ninth Circuit also distinguished another case on which Williams-Sonoma relies,

12  *Volkswagenwerk Aktiengesellchaft v. Churtch*, 411 F.2d 350 (9th Cir. 1969) (cited in Opp'n at 12-13).

13  Williams-Sonoma cites that case for the proposition that "[o]nly prominent use of a disclaimer that the

14  shop was 'Independent' was sufficient to avoid liability."  Opp'n 13.  The Ninth Circuit in *Tabari*,

15  however, said that *Volkwsagenwerk* stands for nothing of the sort:

16      Although our opinion in *Volkwsagenwerk Aktiengellschaft v. Church* remarked on that
        defendant's "prominent use of the word 'Independent' whenever the term 'Volkswagen'
17      or 'VW' appeared in his advertising," it isn't to the contrary. The inclusion of such words
        will usually negate any hint of sponsorship or endorsement, which is why we mentioned
18      them in concluding that there was no infringement in *Volkswagenwerk. But that doesn't*
        *mean that such words are required, and Volkswagenwerk doesn't say they are. Our*
19      *subsequent cases make clear they're not.*

20  *Tabari,* 610 F.3d at 1177 (emphasis added) (citation omitted).

21  Even if some sort of disclosure were required, Williams-Sonoma's allegations show that Amazon

22  *does* disclose that the products at issue are not being sold by Williams-Sonoma: Its product pages

23  prominently display the Amazon logo, and state that the products are "sold by" an identified third party

24  and fulfilled by Amazon. *See Compl.*  Ex. C.  Williams-Sonoma's claim that the disclosures are

25  "hidden," Opp'n at 19, is belied by the images that it includes in its Complaint.  While Williams-Sonoma

26  is correct that the disclosure is on the right-hand side of the page (as is the "Add to Cart" button that a

27  consumer must click to purchase the item), the disclosure is in type of the same color and is the same size

28  as the "by Williams-Sonoma" text that Williams-Sonoma claims is objectionable.  *See* Compl. Ex. C.

1    Recognizing that Amazon *does* disclose that Amazon.com is an Amazon site, Williams-Sonoma

2    tries to have it both ways: It argues that Amazon's prominent display of the Amazon logo (exactly the

3    clear labeling Williams-Sonoma says it wants) is itself confusing.  Williams-Sonoma even claims that

4    "this Court has previously found [that] displaying the marks adjacently can itself raise serious problems

5    of exactly the type alleged here," citing to this Court's decision in *Shell*.  But in fact *Shell* holds the

6    opposite.  The court found that Shell had *no* likelihood of success on its trademark infringement claims.

7    2002 WL 32104586, at *4.  The sentence that Williams-Sonoma quotes was about Shell's trademark

8    dilution claim, and it found that it was problematic to display the Shell logo in close proximity to

9    different *Touchless* products, not that it was problematic to use the mark near Shell products.  *Id.* at *6.

10           **D.    Williams-Sonoma Does not Dispute That Trademark Dilution Requires That the
              Disputed Mark Be Used To Identify Amazon's *Own* Goods or Services**

11

12           Williams-Sonoma effectively abandons its dilution claim, devoting only a single paragraph to

13    dilution.  That paragraph does not argue that Williams-Sonoma can make a showing of either blurring or

14    tarnishment—the two recognized theories of dilution.  Instead, it cites a case for the proposition that

15    dilution might take some other, unspecified form.  But Williams-Sonoma does not even try to articulate

16    what that theory might be.  And it has no response to—indeed, does not even bother to cite—the Ninth

17    Circuit's controlling holding in *Playboy Enterprises, Inc.  v. Welles*, 279 F.3d 796, 806 (9th Cir. 2002),

18    that dilution cannot occur where the defendant is using the trademark to accurately describe the

19    trademark owner's products.

20           **E.    Williams-Sonoma's Allegations of Willfulness Should Be Dismissed**

21           Williams-Sonoma argues that Amazon's motion to dismiss is really an improper motion to strike.

22    It relies entirely on one case that (without any analysis) construed the defendant's request to dismiss the

23    plaintiff's allegations that the plaintiff willfully infringed its patent as a motion to strike.  *See Power*

24    *Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C 09-05235 JW, 2010 WL 11484559, at *1

25    n. 3 (N.D. Cal. Mar. 4, 2010).[9]  It ignores the many cases granting motions to dismiss willful patent

26    infringement claims.  *See, e.g.*, *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-CV-06795-EJD, 2017 WL

27    2311407, at *5 (N.D. Cal. May 26, 2017) ("[W]illfulness (should a plaintiff seek to use it as a basis for

28
_____
[9]   It is curious that Williams-Sonoma dismisses the cases Amazon cites as involving patents while citing
only one case, itself a patent case, to support its argument.

1   seeking enhanced damages) is still a factual determination that a court must make, and district courts

2   have continued, post-*Halo*, to treat it as a separate claim that can be subject to a motion to dismiss."); *CG*

3   *Tech. Dev., LLC v. Big Fish Games, Inc*., No. 2:16-cv-00857-RCJ-VCF, 2016 WL 4521682, at *14 (D.

4   Nev. Aug. 29, 2016) (dismissing claims for willful infringement where the Plaintiff "fail[ed] to allege

5   any facts suggesting that Defendant's conduct is 'egregious . . . beyond typical infringement'")

6   (alteration in original); *Word to Info, Inc. v. Google Inc.*, 140 F. Supp. 3d 986, 989 (N.D. Cal. 2015)

7   (courts will dismiss insufficiently pled claims for willful patent infringement).

8          Williams-Sonoma's willfulness claims must be dismissed because it has not pled that Amazon did

9   not reasonably believe that its use of the Williams-Sonoma trademark was lawful. Br. at 19.  "Ninth

10  Circuit law clearly holds that knowing use of a mark in the valid belief that there is no consumer

11  confusion is not bad faith or willful." *Razor USA LLC v. Vizio, Inc.*, No. CV 14-01586 SJO(JCGx), 2015

12  WL 12656941, at *6–7 (C.D. Cal. Oct. 19, 2015).  Nor is Williams-Sonoma correct that all it needs to

13  survive a motion to dismiss is a good faith belief that Amazon's conduct was willful.[10]  As the Supreme

14  Court has made clear, Williams-Sonoma must allege enough *facts* to state a claim that Amazon's conduct

15  was willful was plausible on its face. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a

16  complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

17  plausible on its face.") (quotations omitted).  As Amazon noted in its opening brief, Williams-Sonoma's

18  allegations of willfulness are entirely conclusory, and do not meet that standard.  While the court

19  presumes that the facts alleged are true, courts need not "accept any unreasonable inferences or assume

20  the truth of legal conclusions cast in the form of factual allegations."  *Brown v. Electronic Arts*, *Inc.,* 724

21  F.3d 1235, 1248 (9th Cir. 2013); *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).  Accepting

22  unreasonable inferences and legal conclusions is what Williams-Sonoma asks this Court to do, not just in

23  willfulness, but throughout its opposition.  This Court should decline.

## CONCLUSION

25          This Court should grant the motion to dismiss.

---

[10] The case on which *Williams-Sonoma* relies for that proposition, *Power Integrations, Inc.*, in turn relies on *In re Seagate Technologies, LLC*, 497 F.3d 1360 (Fed. Cir. 2007).  While *Seagate* says that a good faith basis is required for alleging willfulness, it does *not* say that is *all* that is required.

Dated: March 8, 2019                    DURIE TANGRI LLP

                              By:      _/s/ Mark A. Lemley_
                                       MARK A. LEMLEY

                              Attorney for Defendant
                              Amazon.com, Inc.

REPLY IN SUPPORT OF MOTION TO DISMISS / CASE NO. 3:18-CV-07548-EDL

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on March 8, 2019 the within document was filed with the Clerk of the Court

3

using CM/ECF which will send notification of such filing to the attorneys of record in this case.

4

5                                                                     */s/ Mark A. Lemley*
                                                                      Mark A. Lemley

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28