ORRICK, HERRINGTON & SUTCLIFFE LLP
ANNETTE L. HURST (SBN 148738)
ahurst@orrick.com
DIANA M. RUTOWSKI (SBN 233878)
drutowski@orrick.com
DANIEL D. JUSTICE (SBN 291907)
djustice@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

MARGARET WHEELER-FROTHINGHAM (*Pro Hac Vice*)
mwheeler-frothingham@orrick.com
51 West 52nd Street
New York, NY  10019-6142
Telephone:  +1 212 506 5000
Facsimile:   +1 212 506 5151

Attorneys for Plaintiff Williams-Sonoma, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAMS-SONOMA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No.: 18-cv-07548-EDL<br><br>**FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMAND**<br><br>Judge:  Honorable Elizabeth D. Laporte |

1    Plaintiff Williams-Sonoma, Inc. ("WSI" or "Plaintiff") for its first amended and

2    supplemental complaint ("FAC") against Defendant Amazon.com, Inc. ("Amazon" or

3    "Defendant") states as follows:

4                                **INTRODUCTION**

5    1.    This is an action for infringement of United States Patent Nos. D815452,

6    D836823,  D836822 and D818750 under the Patent Act, 35 U.S.C. §271; infringement and

7    dilution of Plaintiff's famous federally-registered service mark WILLIAMS-SONOMA under

8    Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1); infringement of Plaintiff's common law

9    trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. §1125; unfair competition and

10   false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); and for

11   substantial and related claims under the statutory and common laws of the State of California.

12   2.    The claims stated herein arise from Defendant's pattern of trading upon WSI's

13   goodwill and infringing WSI's intellectual property, including through Defendant's unauthorized

14   use of the registered service mark WILLIAMS-SONOMA and WSI's common law trademarks,

15   as well as Defendant's copying of Plaintiff's proprietary designs and unauthorized commercial

16   manufacture, use, importation, offer for sale, and sale of infringing goods in connection with

17   home goods, lamps, chairs, and other furniture and lighting products.

18   3.    In particular, WSI owns a federally-registered incontestable service mark for

19   online retail services and the exclusive right to use its WILLIAMS-SONOMA mark in connection

20   with such services.  In violation of that exclusive right, Amazon has set up an unauthorized

21   WILLIAMS-SONOMA branded store on its website, falsely claiming that these retail services are

22   "by Williams-Sonoma" and leading to a variety of customer complaints misdirected to WSI that

23   actually concern Amazon's unauthorized retail services.  Amazon further directly participates in

24   this service mark infringement and dilution of WSI's exclusive right to provide online retail

25   services by using the WILLIAMS-SONOMA mark in direct email marketing campaigns that

26   promote Amazon's own online retail services as well as directly fulfilling orders for putative

27   WILLIAMS-SONOMA products.  Many of these products have been the subject of customer

28   complaints on the Amazon website, are not subject to WSI's quality control measures, and/or

1   have been damaged or altered such that the WILLIAMS-SONOMA mark no longer properly

2   applies.

3        4.     Not content to misrepresent itself as an authorized purveyor of WILLIAMS-

4   SONOMA products, Amazon has taken its unlawful conduct a step further by infringing upon a

5   wide spectrum of WSI intellectual property rights in also setting up competing Amazon brands

6   that sell knockoffs of WSI products.  Specifically, "Rivet," an Amazon furniture and housewares

7   product line, sells knockoffs of WSI's popular west elm® brand products.  These knockoffs

8   infringe WSI's design patent and trademark rights.  Amazon's course of conduct reflects

9   widespread effort on its part to compete unfairly with WSI.

10        5.     Unless Defendant is enjoined from infringing WSI's intellectual property rights

11   and otherwise deceiving the consuming public and tarnishing WSI's flagship brand, WSI will

12   continue to suffer substantial ongoing and irreparable harm.

13   <u>**JURISDICTION AND VENUE**</u>

14        6.     The complaint arises under the Patent Act, 35 U.S.C. § 1 et seq., under the Lanham

15   Act, 15 U.S.C. § 1051 et seq., and under the common laws of the State of California.

16        7.     This court has jurisdiction over the subject matter of this action pursuant to 28

17   U.S.C. §§ 1331 and 1338 as to the claims under federal law and pursuant to 28 U.S.C. § 1367(a)

18   as to the claims under state law.

19        8.     Venue in this district is proper pursuant to 28 U.S.C. §§ 1391(b) and 1400(b), and

20   because Amazon sells or offers to sell its infringing products in this district, has committed acts of

21   patent and trademark infringement in this district, maintains a regular place of business in this

22   district, and because a substantial part of the events giving rise to WSI's claims arose in this

23   district.

24        9.     This Court has both general and specific personal jurisdiction over Amazon

25   consistent with the principles of due process and the California long-arm statute because Amazon

26   does systematic business in this district, including by maintaining both business operations (such

27   as Amazon Web Services, Amazon Digital Music, and Prime Now) and retail locations

28   (AmazonGo) in this district, as well as offering its infringing products and selling them in this

FIRST AMENDED AND
SUPPLEMENTAL COMPLAINT,
CASE NO.: 18-cv-07548-EDL

district, thereby committing acts of patent and trademark infringement and unfair competition in this district.

### THE PARTIES

10.     WSI is a premier specialty retailer of home furnishings and related products and one of the largest e-commerce retailers in the United States.  In addition to its eponymous Williams-Sonoma® brand, WSI operates the brands west elm®, Pottery Barn®, PBteen®, pottery barn kids®, Rejuvenation®, and Mark and Graham®.  WSI's brands offer furniture, lighting, rugs, kitchenware, tableware, cookware, decorative accessories, bedding, linens, bath products, window coverings, children's furniture and products, and other similar products and accessories. WSI is a Delaware corporation and is headquartered in San Francisco, California.

11.     Amazon.com, Inc. is one of the largest online retailers in the world.  Defendant is a Delaware corporation with offices in and employees working in this district, and conducts brick-and-mortar retail and online retail operations in this district.  Amazon distributes its products, including the infringing products at issue in this litigation, throughout the United States, including California and in this judicial district.

### FACTS

### A.     The Williams-Sonoma Brand and Intellectual Property

12.     In 1956, WSI's founder, Chuck Williams opened the first Williams-Sonoma® store in Sonoma, California.

13.     Chuck Williams' store set a standard for customer service and helped fuel a revolution in American cooking and entertaining that continues to this day.  In the decades that followed, the quality of WSI's products and WSI's customer-first approach to business have facilitated the expansion of the WILLIAMS-SONOMA brand beyond the kitchen into nearly every area of the home.  WSI has pursued continuous innovation in its delivery of retail services and has been operating an online storefront since 1999—long before significant penetration of broadband internet services into the U.S. market.

14.     Today, Williams-Sonoma, Inc. is one of the United States' largest e-commerce retailers with some of the best known and most beloved brands in the industry.  WSI sells

nationwide and internationally through over 600 retail stores, its catalogs and its websites.  Over 50% of WSI's sales occur via its comprehensive e-commerce platform, which operates through eight main websites as well as through online gift registries that correspond with its brands.

15.     WSI devotes significant resources to developing innovative, inherently distinctive, and high-quality products to sell via its proprietary retail channels.  WSI is well known for its kitchenwares, furniture, décor items, and other home goods, as well as for its high-quality brick-and-mortar, catalog, and online retail store services.

16.     The exemplary service WSI's brands provide at retail and through e-commerce is central to WSI's business model.  The in-store and e-commerce services that WSI offers are complemented by its own network of customer care centers, manufacturing and distribution facilities, and other service hubs.

17.     The WILLIAMS-SONOMA brand's online presence is strong, not only on its own website, but on the various social media platforms through which it engages with the public.  WSI's Instagram account has over 850,000 followers.  Its Facebook account has over 910,000 followers.  Its Pinterest account has over 270,000 followers.  Its Twitter account has over 100,000 followers.  Its YouTube account has over 66,000 subscribers.  And WSI's blog receives an average of 600,000 page views per month.

18.     WSI has used the WILLIAMS-SONOMA mark in commerce throughout the United States continually since at least 1956 and has invested tens of millions of dollars promoting its brand under the famous WILLIAMS-SONOMA mark (the "WILLIAMS-SONOMA Mark").

19.     WSI owns numerous valid and incontestable United States federal trademark and service mark registrations for the famous WILLIAMS-SONOMA Mark, including, *inter alia*, Reg. No. 2,353,758 covering "retail store services, mail order catalog services, and on-line retail store services featuring culinary equipment, housewares, kitchenware and cookware" in International Class 35, registered on May 30, 2000; and Reg. No. 2,410,528 for, *inter alia*, "on-line gift registry services" in International Class 35, registered on December 5, 2000.  True and correct copies of WSI's registrations for the WILLIAMS-SONOMA Mark are attached hereto as

1    **Exhibit A**.

2    20.    As a result of its widespread, continuous and exclusive use of the WILLIAMS-

3    SONOMA Mark to identify its goods and services and WSI as their source, WSI enjoys valid and

4    subsisting federal and state common law rights to the WILLIAMS-SONOMA Mark.

5    21.    The goods and services WSI offers under the WILLIAMS-SONOMA Mark are of

6    high quality.  WSI devotes an enormous amount of resources to product development and quality

7    control and to providing customer service to customers of its retail channels, all to ensure that the

8    goods and services it offers are reflective of, and consistent with, its brand's prestige.

9    22.    To protect the integrity of its brand, WSI does not license the WILLIAMS-

10   SONOMA Mark in connection with online retail services.

11   23.    As a result of its distinctiveness, widespread use and promotion throughout the

12   United States, WSI's WILLIAMS-SONOMA Mark is famous within the meaning of Section

13   43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and became famous prior to the acts of Defendant

14   alleged in this Complaint.

15              **B.      Amazon's Unauthorized Use of the WILLIAMS-SONOMA Mark**

16   24.    Despite WSI's longstanding rights in the WILLIAMS-SONOMA Mark, and

17   without WSI's authorization, Defendant recently began using a mark identical to WSI's

18   WILLIAMS-SONOMA Mark (the "Counterfeit Mark") to advertise, promote and offer

19   competing retail services.

20   25.    Defendant has been engaged in the unauthorized promotion and offering of online

21   retail services and goods for sale using the Counterfeit Mark.

22

23

24

25

26

27

28

26.     Specifically, Defendant displays the Counterfeit Mark on its website in a confusing manner that is likely to lead, and has led, consumers to believe that Defendant's platform is authorized by or is otherwise affiliated with, associated with, or approved by WSI. Specifically, at the top of product pages for purported Williams-Sonoma products for sale on the <amazon.com> platform and "Fulfilled by Amazon," the phrase "by Williams-Sonoma" appears in blue font with a hyperlink, immediately above the product image and price, as shown below:



27.     When a customer clicks on the blue hyperlink for "by Williams Sonoma" above the product image, the hyperlink leads to a landing page that prominently displays the phrase "Shop Williams-Sonoma" in bright yellow at the top, thus falsely indicating that consumers are browsing a shop offered by, authorized by, or affiliated with WSI. Further down the page there is an additional indication of "Best Selling Products from Williams-Sonoma," again falsely implying that WSI is the one offering its products for sale on the Amazon website. These misleading elements are shown below:



28.     Further enhancing confusion, the Amazon "Shop Williams-Sonoma" page often uses WSI's own copyrighted photos and product imagery.  The use of WSI's own photos of its own products on the Amazon "Shop Williams Sonoma" page strengthens the connection between Amazon's unauthorized online retail commerce services and WSI's authorized WILLIAMS-SONOMA website, creating a strong impression of affiliation between the two.

29.     Amazon also promotes its online retail services under the Counterfeit Mark by using the WILLIAMS-SONOMA Mark to prospect for sales by sending targeted email to consumers and by purchasing keyword advertising that Amazon uses to serve misleading advertisements suggesting that Amazon is an authorized WILLIAMS-SONOMA retailer.

30.     For example, on or about November 25, 2018, Amazon sent a marketing prospecting email to Janet Hayes, President of the Williams Sonoma brand, with the subject line that read: "Janet: Williams-Sonoma Peppermint Bark 1 Pound Tin and more items for you."  A true and correct copy of that email is attached hereto as **Exhibit B** (the "November 25, 2018 Email").  This email, by its use of the Counterfeit Mark, creates the false impression that Amazon's online retail service is affiliated with, authorized by, or otherwise related to Williams-Sonoma.

31.     Moreover, Amazon's November 25, 2018 Email contains materially misleading and deceptive statements.  The body of the email referred to "millions of our items from our vast selection at great prices."  While the email represents that Amazon offers "great prices" on the products advertised, the specific Williams-Sonoma product featured in that email's subject line and body is advertised in the email for a price of $47.35 for a 1 pound tin—nearly double the $28.95 price at which WSI sells the same product on its own authorized e-commerce site.  Images of the product page for Williams-Sonoma Peppermint Bark on Amazon's e-commerce platform compared to the same product on WSI's e-commerce platform are attached hereto as **Exhibit C**.

32.     Amazon also purchases keywords nearly identical to the WILLIAMS-SONOMA Mark and uses them to serve misleading advertisements in search engine results.  For example, a search on the words "williams sonoma" in the Google-toolbar on Safari for iOS returns as the second result a paid advertisement by Amazon for a competing WILLIAMS & SONOMA branded retail offering.  The advertisement, depicted below, prominently features a colorable imitation of the WILLIAMS-SONOMA Mark (using an ampersand rather than a hyphen) as the leading text for a "Williams & Sonoma at Amazon®" site which Amazon further describes as an "Amazon Official Site."  The advertisement is misleading to ordinary consumers who are likely to believe that they were purchasing goods from an "official" online retail source authorized by



Williams & Sonoma at Amazon® | Amazon
Official Site | amazon.com
[Ad] www.amazon.com/

Buy Williams & Sonoma at Amazon. Free Shipping on
Qualified Orders. Try Prime for Free. Shop Our Huge
Selection. Fast Shipping. Explore Amazon Devices. Shop
Best Sellers & Deals. Read Ratings & Reviews.

Rating for amazon.com
4.7 ★★★★½

WSI.  Consumers who are confused into believing that Amazon is an authorized WILLIAMS-SONOMA retail outlet may not realize that their failure to locate a product is not indicative of the selection available from WSI.  Through this diversion, WSI also loses the opportunity to sell its other goods to consumers who are tricked into visiting Amazon rather than the authorized WSI

1  website.

2      33.     The services Amazon offers under the Counterfeit Mark to consumers also appear

3  to be deficient in quality and damaging to the Williams-Sonoma brand.  Online reviews of

4  WILLIAMS-SONOMA branded goods offered on Amazon's e-commerce platform and "Fulfilled

5  by Amazon"—but not subject to WSI's quality control measures—feature complaints about

6  higher prices than charged for the same products on WSI's authorized e-commerce sites, products

7  delivered that do not match the specifications advertised, and/or products sent without necessary

8  parts.  A sampling of such reviews is attached hereto as **Exhibit D**.  Pursuant to Rule 11(b), WSI

9  further alleges that discovery is likely to show sales of a wide variety of WILLIAMS-SONOMA

10  branded products using misleading designations, including perishables that cannot be delivered in

11  a safe fashion, through the "by Williams-Sonoma" site "Fulfilled by Amazon."

12      34.     Amazon's infringing acts as alleged herein have caused and are likely to cause

13  confusion, mistake and deception among the relevant consuming public as to the source or origin

14  of Defendant's services and have deceived and are likely to deceive the relevant consuming

15  public into believing, mistakenly, that Defendant's services originate from, are associated with, or

16  affiliated with, or otherwise authorized by WSI.

17      35.     Among the harm caused by Amazon's infringing acts, consumers may come to

18  associate WSI's WILLIAMS-SONOMA Mark with overpriced, low-quality or potentially unsafe

19  goods or services.

20      36.     Indeed, Defendant's infringing acts as alleged herein have already resulted in

21  actual confusion.  For example, on November 5, 2018, a customer at a WILLIAMS-SONOMA

22  branded retail store informed a WSI employee that the customer was appalled that WSI would

23  sell its products on Amazon for double the price WSI charges in its WILLIAMS-SONOMA

24  branded stores.

25      37.     Amazon's acts are willful, with the deliberate intent to trade on the goodwill of

26  WSI's WILLIAMS-SONOMA Mark, cause confusion and deception in the marketplace, and

27  divert customers of WSI's services to Amazon.

28      38.     Amazon is causing, and unless restrained, will continue to cause damage and

1   immediate irreparable harm to WSI and to its valuable reputation and goodwill with the

2   consuming public, for which damage WSI has no adequate remedy at law.

3               **C.**      **The West Elm Brand and Intellectual Property**

4        39.    WSI also owns the west elm® brand ("West Elm"), which was launched in

5   Brooklyn, New York in 2002.

6        40.    Mixing clean lines, natural materials and handcrafted collections from the U.S. and

7   around the world, West Elm creates unique, affordable home furnishings and accessories for

8   modern living.  From its commitment to Fair Trade Certified, local and handcrafted products, to

9   its community-driven in-store events and collaborations, to its role as part of an active community

10   on social media, everything West Elm does is designed to make an impact.

11        41.    West Elm has retail locations in over 85 cities in the United States, as well as in

12   Canada, Mexico, Australia, the United Kingdom, and the Middle East in addition to its an online

13   storefront at <westelm.com>.

14        42.    West Elm's online presence is strong not only on its own website, but on the

15   various social media platforms through which it engages with the general public.  West Elm's

16   Instagram account has over 1,870,000 followers.  Its Facebook account has over 954,000

17   followers.  Its Pinterest account has over 510,000 followers.  Its Twitter account has over 98,000

18   followers.  Its YouTube account has over 30,000 subscribers.  And West Elm's blog has

19   approximately 100,000 subscribers and unique monthly visitors.

20        43.    Over 90% of WSI's WEST ELM branded products are exclusive to WSI and

21   designed by its West Elm in-house design staff.  WSI's West Elm brand focuses heavily on the

22   quality and sourcing of its products, and works to use organic, non-toxic, reclaimed, or recycled

23   materials and make sustainably-sourced products.

24        44.    WSI devotes significant resources to developing innovative and inherently

25   distinctive products to sell exclusively in its West Elm retail channels.  WSI also devotes an

26   enormous amount of product development and quality control resources to its West Elm products

27   to ensure that they are reflective of and consistent with the brand's prestige.  These products

28   accompany a range of other products for the home that are also often the product of proprietary

designs or innovations.

45.     Among its West Elm products, WSI has developed a line of unique and distinctive furniture, lighting and other home goods, often under distinctive trademark names identifying product lines within the West Elm offering.

46.     The goods offered and sold under the West Elm brand have been favorably received by the U.S. consumer market, and WSI has expended significant sums in advertising and promotion, including, *inter alia*, internet marketing, and has built up substantial goodwill and reputation for both the West Elm brand and for the common law trademarks used in connection with the West Elm products at issue in this litigation.

**D.     Amazon's Rivet Brand**

47.     On or about November 2017, Amazon announced the launch of its private-label Rivet brand, under which Amazon sells furniture, lighting, and other home goods.  Rivet is among a handful of recently-launched private label lines offered under Amazon's "Amazon Home" division.

48.     Amazon's Rivet line is available exclusively on amazon.com.  Amazon's Rivet brand markets and sells an assortment of products which are strikingly similar to West Elm's.

49.     Amazon advertises its Rivet brand as a combination of "Mid-Century and Industrial Modern design" with "geometric shapes, sleek lines and mixed materials" designed to bring consumers "affordable pieces" – directly positioning itself as a competitor of West Elm's line of modern furniture, which focuses on "modern design," "clean design" and "affordability."

50.     Under its Rivet brand, Amazon sells and offers for sale a line of products that are colorable imitations of WSI's distinctive patented and/or proprietary designs, and which trade upon WSI's goodwill and otherwise unfairly compete with or falsely imply an association with or endorsement by WSI.

51.     Throughout its Rivet line, Amazon has copied WSI's products and intellectual property, and used without authorization WSI's common law trademarks intentionally in order to capture and trade upon the goodwill and reputation of WSI and its genuinely affiliated brands.  It is implausible Amazon could have conceived of a product line with nearly identical product

designs which feature product names containing the very same non-descriptive terms WSI uses in connection with those products, other than by intentionally undertaking to copy WSI's West Elm product line and appropriate the trademarks WSI uses in connection with that line.

52.     As described below, Amazon has unfairly and deceptively engaged in a widespread campaign of copying WSI's designs and marketing those designs under trademarks similar to those used by WSI in connection with those products.

### E.     Infringement of WSI's Orb Chair Design and Trademark

53.     On or about December 2016, West Elm introduced a chair featuring a novel and distinctive design and named it the "Orb" Dining Chair (the "WSI Orb Chair").  The WSI Orb Chair was designed by West Elm's in-house designers and named by West Elm's in-house marketing team.  The current retail price of the Orb Chair as offered by West Elm is $299.00 USD.

54.     On January 11, 2017, WSI filed a design patent application entitled "Chair," with the United States Patent Office ("PTO") claiming the design of the WSI Orb Chair.

55.     On April 17, 2018, the PTO duly and lawfully issued Patent No. D815452 ("the '452 Patent"), entitled "Chair," which protects the novel design of the WSI Orb Chair.  A true and correct copy of the '452 Patent is attached hereto as **Exhibit E**.

56.     WSI owns all right, title and interest in and to the '452 Patent.

57.     The '452 Patent claims the ornamental design for a chair, as shown and described therein.  The WSI Orb Chair embodies the '452 Patent.

58.     In connection with the WSI Orb Chair, WSI has sold, offered for sale, and advertised products, namely chairs, under the common law trademark "ORB" since as early as December 2016.

59.     The WSI Orb Chair has been an outstanding commercial success.  In the first ten months of 2018 alone, WSI's sales of this single item exceeded $2,000,000.  The WSI Orb Chair has been favorably featured in numerous interior design and lifestyle publications, such as People.com, POPSUGAR, MyDomaine (which has featured the WSI Orb Chair on multiple occasions), Domino, Lonny, Apartment Therapy (which featured the WSI Orb Chair on multiple

occasions) and HGTV.  Representative copies of some of the recognition the WSI Orb Chair has

gained in the press are attached hereto as **Exhibit F**.

60.     WSI has expended significant sums in advertising and promotion, including, *inter alia*, internet marketing, and has built up substantial goodwill and reputation for the WSI Orb Chair.

61.     As a result of this extensive marketing and sales, the trademark "ORB" (the "Orb Mark") has become a means by which WSI's product is identified by the industry and the public and distinguished from the goods of others.  The ORB Mark has come to symbolize valuable goodwill which WSI enjoys.

62.     On or about March 19, 2018, Amazon began offering for sale its Rivet Modern Upholstered Orb Office Chair (the "Amazon Orb Chair").  Amazon has continued offering for sale and selling that chair through at least the first few months of 2019.

63.     WSI owns the patented design for its WSI Orb Chair as illustrated in its patent claims, and the Amazon Orb Chair is so highly similar that the ordinary observer would be confused by the imitation.  Images depicting the WSI Orb Chair and the Amazon Orb Chair side-by-side are attached hereto as **Exhibit G**.  That similarity is reinforced by the infringing use of exactly the same non-descriptive word mark in conjunction with the identical design.

64.     Notwithstanding WSI's rights in the design of the WSI Orb Chair, Amazon has manufactured, imported, offered for sale and/or sold chairs which are a duplicate of the patented design of the WSI Orb Chair, are indistinguishable to the ordinary observer, and which appear to be of inferior quality to the WSI Orb Chair.

65.     Amazon has induced infringement of the '452 Patent by actively and knowingly inducing others to manufacture, import, offer for sale and/or sell chairs which infringe upon the patented design of the WSI Orb Chair.

66.     In addition, through its unauthorized use of the term "ORB" in connection with the Amazon Orb Chair, Amazon has infringed upon WSI's common law trademark rights in the ORB Mark in connection with chairs—goods identical to those upon which WSI uses its ORB Mark.

**F.**    **Infringement of WSI's Sphere + Stem Floor Lamp Design**

67.    In or about 2016, West Elm introduced a floor lamp featuring a novel and distinctive design and named it the "Sphere + Stem" Floor Lamp (the "WSI Floor Lamp").  The WSI Floor Lamp was designed by West Elm's in-house designers.  The current retail price of the WSI Floor Lamp as offered by West Elm is $299.99 USD.

68.    On September 7, 2017, WSI filed a design patent application entitled "Lamp" with the United States Patent Office ("PTO") claiming the design of the WSI Floor Lamp.

69.    On December 25, 2018, the PTO duly and lawfully issued Patent No. D836823 ("the '823 Patent"), entitled "Lamp" which protects the novel design of the WSI Floor Lamp.  A true and correct copy of the '823 Patent is attached hereto as **Exhibit H.**

70.    WSI owns all right, title and interest in and to the '823 Patent.

71.    The '823 Patent claims the ornamental design for a lamp, as shown and described therein.  The WSI Floor Lamp embodies the '823 Patent.

72.    Discovery will show that on or after March 18, 2018, Amazon began offering for sale its Rivet Retro Two-Orb Tree Lamp (the "Amazon Floor Lamp").  Amazon has continued offering for sale and selling that lamp through at least the first few months of 2019.

73.    WSI owns the patented design for its WSI Floor Lamp as illustrated in its patent claims, and the Amazon Floor Lamp is so highly similar that the ordinary observer would be confused by the imitation.  Images depicting the WSI Floor Lamp and the Amazon Floor Lamp side-by-side are attached hereto as **Exhibit I**.

74.    Notwithstanding WSI's rights in the design of the WSI Floor Lamp, Amazon has manufactured, imported, offered for sale and/or sold lamps which are a duplicate of the patented design of the WSI Floor Lamp, are indistinguishable to the ordinary observer, and which appear to be of inferior quality to the WSI Floor Lamp.

75.    Amazon has induced infringement of the '823 Patent by actively and knowingly inducing others to manufacture, import, offer for sale and/or sell lamps which infringe upon the patented design of the WSI Floor Lamp.

1

### G.    Infringement of WSI's Sphere + Stem Table Lamp Design

2       76.     In or about 2016, West Elm introduced a table lamp featuring a novel and

3   distinctive design and named it the "Sphere + Stem" Table Lamp (the "WSI Table Lamp").  The

4   WSI Table Lamp was designed by West Elm's in-house designers.  The current retail price of the

5   WSI Table Lamp as offered by West Elm is $199.00 USD.

6       77.     On September 7, 2017 WSI filed a design patent application entitled "Lamp," with

7   the United States Patent Office ("PTO") claiming the design of the WSI Table Lamp.

8       78.     On December 25, 2018, the PTO duly and lawfully issued Patent No. D836822

9   ("the '822 Patent"), entitled "Lamp" which protects the novel design of the WSI Table Lamp.  A

10  true and correct copy of the '822 Patent is attached hereto as **Exhibit J**.

11      79.     WSI owns all right, title and interest in and to the '822 Patent.

12      80.     The '822 Patent claims the ornamental design for a lamp, as shown and described

13  therein.  The WSI Table Lamp embodies the '822 Patent.

14      81.     Discovery will show that on or after March 8, 2018 Amazon began offering for

15  sale its Glass Globe and Marble Table Lamp (the "Amazon Table Lamp").   Amazon has

16  continued offering for sale and selling that lamp through at least the first few months of 2019.

17      82.     WSI owns the patented design for its WSI Table Lamp as illustrated in its patent

18  claims, and the Amazon Table Lamp is so highly similar that the ordinary observer would be

19  confused by the imitation.  Images depicting the WSI Table Lamp and the Amazon Table Lamp

20  side-by-side are attached hereto as **Exhibit K**.

21      83.     Notwithstanding WSI's rights in the design of the WSI Table Lamp, Amazon has

22  manufactured, imported, offered for sale and/or sold lamps which are a duplicate of the patented

23  design of the WSI Table Lamp, are indistinguishable to the ordinary observer, and which appear

24  to be of inferior quality to the WSI Table Lamp.

25      84.     Amazon has induced infringement of the '822 Patent by actively and knowingly

26  inducing others to manufacture, import, offer for sale and/or sell lamps which infringe upon the

27  patented design of the WSI Table Lamp.

28

1

**H.     Infringement of WSI's Pop-Up Storage Table Design**

2     85.     In or about 2016, West Elm introduced a table featuring a novel and distinctive

3 design and named it the "Mid-Century Pop-Up Storage Coffee Table" (the "WSI Pop-Up Table").

4 The WSI Pop-Up Table was designed by West Elm's in-house designers.  The current retail price

5 of the WSI Pop-Up Table as offered by West Elm is $699.00 USD.

6     86.     On January 13, 2017, WSI filed a design patent application entitled "Coffee

7 Table" with the United States Patent Office ("PTO") claiming the design of the WSI Pop-Up

8 Table.

9     87.     On May 29, 2018, the PTO duly and lawfully issued Patent No. D818750 ("the

10 '750 Patent"), entitled "Coffee Table" which protects the novel design of the WSI Pop-Up Table.

11 A true and correct copy of the '750 Patent is attached hereto as **Exhibit L.**

12     88.     WSI owns all right, title and interest in and to the '750 Patent.

13     89.     The '750 Patent claims the ornamental design for a coffee table, as shown and

14 described therein.  The WSI Pop-Up Table embodies the '750 Patent.

15     90.     Discovery will show that sometime during 2018, Amazon began offering for sale

16 its Bowlyn Mid-Century Modern Wood Coffee Table (the "Amazon Pop-Up Table").   Amazon

17 has continued offering for sale and selling that table at least through the first few months of 2019.

18     91.     WSI owns the patented design for its WSI Pop-Up Table as illustrated in its patent

19 claims, and the Amazon Pop-Up Table is so highly similar that the ordinary observer would be

20 confused by the imitation.  Images depicting the WSI Pop-Up Table and the Amazon Pop-Up

21 Table side-by-side are attached hereto as **Exhibit M**.

22     92.     Discovery will show that on or after September 20, 2018, Amazon began offering

23 for sale its Rivet Modern Wood Coffee Table, 24"W, White Brass and Walnut (the "Amazon

24 Modern Wood Table").  Amazon has continued offering for sale and selling that table at least

25 through the first few months of 2019.

26     93.     The Amazon Modern Wood Table is so highly similar that the ordinary observer

27 would be confused by the imitation.  Images depicting the WSI Pop-Up Table and the Amazon

28 Modern Wood Table side-by-side are attached hereto as **Exhibit N**.

94.     Notwithstanding WSI's rights in the design of the WSI Pop-Up Table, Amazon has manufactured, imported, offered for sale and/or sold tables which are a duplicate of the patented design of the WSI Pop-Up Table, are indistinguishable to the ordinary observer, and which appear to be of inferior quality to the WSI Pop-Up Table.

95.     Amazon has induced infringement of the '750 Patent by actively and knowingly inducing others to manufacture, import, offer for sale and/or sell tables which infringe upon the patented design of the WSI Pop-Up Table.

### I.     Infringement of WSI's Slope Chair Trademark

96.     On or about June 2015, West Elm introduced the Slope Dining Chair (the "WSI Slope Dining Chair"), which was designed by West Elm's in-house designers and named by West Elm's in-house marketing team.  The current retail price of the WSI Slope Dining Chair is $399.00 USD.

97.     On or about June 2016, West Elm introduced the Slope Leather Swivel Office Chair (the "WSI Slope Office Chair"), which was designed by West Elm's in-house designers and named by West Elm's in-house marketing team.  The current retail price of the WSI Slope Office Chair is $449.00 USD.

98.     In connection with the WSI Slope Office Chair and WSI Slope Dining Chair (the "WSI Slope Chairs"), WSI has sold and offered for sale chairs under the SLOPE mark since at least June 2015.

99.     West Elm's WSI Slope Chair line has been an outstanding commercial success. The WSI Slope Dining Chair was featured in Architectural Digest in December 2016, and today, WSI's Slope Chairs continue to be immensely popular with consumers: In the first ten months of 2018 alone, WSI's sales of the WSI Slope Office Chair have exceeded $1,000,000 USD, and sales of the WSI Slope Dining Chair exceeded $5,000,000 USD.

100.    WSI has expended significant sums in advertising and promotion, including, *inter alia*, internet marketing, and has built up substantial good will and reputation for the WSI Slope Chairs.

101.    As a result of WSI's extensive marketing and sales effort, the mark "SLOPE" (the

"SLOPE Mark") has become a means by which WSI's products are identified by the trade and the public and distinguished from the goods of others.  The SLOPE Mark has come to symbolize valuable good will which WSI enjoys.

102.    On or about March 19, 2018, Amazon began offering for sale its Rivet Industrial Slope Top-Grain Leather Swivel Office Chair (the "Amazon Slope Chair"), which it sells for a price of $279.00 USD.  The Amazon Slope Chair looks just like, and aims to be directly competitive with, the WSI Slope Office Chair.  Amazon has continued to offer for sale and sell that chair at least through the first few months of 2019.

103.    Through its use of the mark "SLOPE" in connection with a directly competing product of nearly identical design, Amazon has infringed upon WSI's common law trademark rights in its SLOPE Mark in connection with chairs—goods identical to those upon which WSI uses its ORB Mark.

104.    These are not the only products sold by Rivet that appear to be identical or nearly identical in design to West Elm.  Amazon has engaged in a systematic campaign of copying WSI's West Elm products and infringing upon WSI's common law trademark rights in those products.  Amazon deliberately chose to adopt West Elm's brand identity and create a Rivet brand that gives consumers the same overall visual impression as West Elm.

105.    The Rivet products at issue in this action appear to be of inferior quality to the West Elm products.  For example, the Amazon Slope Chair was advertised as a "leather" chair. However, customer reviews of the Amazon Slope Chair indicate that consumers find the quality of the material to be consistent with faux leather—not with genuine leather. WSI's West Elm Slope Chairs, by contrast, are constructed of genuine leather.  The respective product descriptions for the Amazon Slope Chair and the WSI Slope Chairs are attached hereto as **Exhibit O**.

106.    Amazon's inferior line of copycat products, marketed using infringing trademarks, has been causing, and unless restrained will continue to cause WSI irreparable harm.

**FIRST CLAIM**
**INFRINGEMENT OF U.S. PATENT NO. D815452**
**(35 U.S.C. § 271)**

107.    WSI repeats and realleges the allegations contained in paragraphs 1 through 106 as though fully set forth herein.

108.    United States Patent No. D815452, entitled "Chair" was duly and lawfully issued by the United States Patent and Trademark office on April 17, 2018.

109.    WSI is the owner of the entire right, title and interest in the '452 Patent and possesses all rights of recovery under the '452 Patent, including the right to recover damages.

110.    The product information for the Orb Chair on the West Elm website prominently displays "U.S. Patent Number D815452" in the main "Overview" section of the product description.

111.    Amazon, alone or in concert with others, has infringed the '452 Patent by making, using, selling, and offering for sale within this district and elsewhere in the United States, and importing into the United States, products such as the Amazon Orb Chair which infringe the '452 Patent.  Amazon had constructive notice of WSI's patent through its marking.  Pursuant to Rule 11(b), WSI alleges that discovery will show Amazon had actual knowledge that the design was patented and copied it anyway.

112.    Amazon has infringed the '452 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, and/or import into the United States products, including the Amazon Orb Chair, which infringe the '452 Patent.

113.    Amazon's acts will continue unless enjoined by this Court.

114.    WSI is harmed by Amazon's acts of infringement of the '452 Patent and will be irreparably harmed unless Amazon is enjoined by this Court.  WSI has no adequate remedy at law against Amazon's acts of infringement.

115.    Amazon's infringing activity has caused WSI to suffer damages in an amount to be determined at trial.

1

2

**SECOND CLAIM**
**INFRINGEMENT OF U.S. PATENT NO. D836823**
**(35 U.S.C. § 271)**

3      116.   WSI repeats and realleges the allegations contained in paragraphs 1 through 115 as

4   though fully set forth herein.

5      117.   United States Patent No. D836823, entitled "Lamp" was duly and lawfully issued

6   by the United States Patent and Trademark office on December 25, 2018.

7      118.   WSI is the owner of the entire right, title and interest in the '823 Patent and

8   possesses all rights of recovery under the '823 Patent, including the right to recover damages.

9      119.   The product information for the WSI Floor Lamp on the West Elm website

10  prominently displays "U.S. Patent Number D836823" in the main "Overview" section of the

11  product description.

12     120.   Amazon, alone or in concert with others, has infringed the '823 Patent by making,

13  using, selling, and offering for sale within this district and elsewhere in the United States, and

14  importing into the United States, products such as the Amazon Floor Lamp which infringe the

15  '823 Patent.  Amazon had constructive notice of WSI's patent through its marking.  Pursuant to

16  Rule 11(b), WSI alleges that discovery will show Amazon had actual knowledge that the design

17  was patented or that a patent was pending and copied it anyway.

18     121.   Amazon infringed the '823 Patent by actively and knowingly inducing others to

19  make, use, sell, offer for sale, and/or import into the United States products, including the

20  Amazon Orb Chair, which infringe the '823 Patent.

21     122.   Amazon's acts will continue unless enjoined by this Court.

22     123.   WSI is harmed by Amazon's acts of infringement of the '823 Patent and will be

23  irreparably harmed unless Amazon is enjoined by this Court.  WSI has no adequate remedy at law

24  against Amazon's acts of infringement.

25     124.   Amazon's infringing activity has caused WSI to suffer damages in an amount to be

26  determined at trial.

27

28

1

2

**THIRD CLAIM**
**INFRINGEMENT OF U.S. PATENT NO. D836822**
**(35 U.S.C. § 271)**

3      125.    WSI repeats and realleges the allegations contained in paragraphs 1 through 124 as

4   though fully set forth herein.

5      126.    United States Patent No. D836822, entitled "Lamp" was duly and lawfully issued

6   by the United States Patent and Trademark office on December 25, 2018.

7      127.    WSI is the owner of the entire right, title and interest in the '822 Patent and

8   possesses all rights of recovery under the '822 Patent, including the right to recover damages.

9      128.    The product information for the WSI Table Lamp on the West Elm website

10   prominently displays "U.S. Patent Number D836822" in the main "Overview" section of the

11   product description.

12      129.    Amazon, alone or in concert with others, has infringed the '822 Patent by making,

13   using, selling, and offering for sale within this district and elsewhere in the United States, and

14   importing into the United States, products such as the Amazon Table Lamp which infringe the

15   '822 Patent.  Amazon had constructive notice of WSI's patent through its marking.  Pursuant to

16   Rule 11(b), WSI alleges that discovery will show Amazon had actual knowledge that the design

17   was patented and copied it anyway.

18      130.    Amazon has infringed the '822 Patent by actively and knowingly inducing others

19   to make, use, sell, offer for sale, and/or import into the United States products, including the

20   Amazon Table Lamp, which infringe the '822 Patent.

21      131.    Amazon's acts will continue unless enjoined by this Court.

22      132.    WSI is harmed by Amazon's acts of infringement of the '822 Patent and will be

23   irreparably harmed unless Amazon is enjoined by this Court.  WSI has no adequate remedy at law

24   against Amazon's acts of infringement.

25      133.    Amazon's infringing activity has caused WSI to suffer damages in an amount to be

26   determined at trial.

27

28

**FOURTH CLAIM**
**INFRINGEMENT OF U.S. PATENT NO. D818750**
**(35 U.S.C. § 271)**

134.    WSI repeats and realleges the allegations contained in paragraphs 1 through 133 as though fully set forth herein.

135.    United States Patent No. D818750, entitled "Coffee Table" was duly and lawfully issued by the United States Patent and Trademark office on May 29, 2018.

136.    WSI is the owner of the entire right, title and interest in the '750 Patent and possesses all rights of recovery under the '750 Patent, including the right to recover damages.

137.    The product information for the WSI Pop-Up Table on the West Elm website prominently displays "U.S. Patent Number D818750" in the main "Overview" section of the product description.

138.    Amazon, alone or in concert with others, has infringed the '750 Patent by making, using, selling, and offering for sale within this district and elsewhere in the United States, and importing into the United States, products such as the Amazon Pop-Up Table and Amazon Modern Wood Table which infringe the '750 Patent.  Amazon had constructive notice of WSI's patent through its marking.  Pursuant to Rule 11(b), WSI alleges that discovery will show Amazon had actual knowledge that the design was patented and copied it anyway.

139.    Amazon has infringed the '750 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, and/or import into the United States products, including the Amazon Pop-Up Table and Amazon Modern Wood Table, which infringe the '750 Patent.

140.    Amazon's acts will continue unless enjoined by this Court.

141.    WSI is harmed by Amazon's acts of infringement of the '750 Patent and will be irreparably harmed unless Amazon is enjoined by this Court.  WSI has no adequate remedy at law against Amazon's acts of infringement.

142.    Amazon's infringing activity has caused WSI to suffer damages in an amount to be determined at trial.

**FIFTH CLAIM**
**FEDERAL TRADEMARK INFRINGEMENT AND TRADEMARK COUNTERFEITING**
**UNDER SECTION 32(1) OF THE LANHAM ACT**
**(15 U.S.C. §1141(1))**

143.    WSI repeats and realleges the allegations contained in paragraphs 1 through 142 as though fully set forth herein.

144.    Defendant's unauthorized use in commerce of the Counterfeit Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, and/or affiliation of Defendant's services, and is likely to cause consumers to mistakenly believe that Defendant's services are offered, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.  Defendant's conduct therefore constitutes service mark infringement and counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

145.    Amazon has committed the foregoing acts of infringement and counterfeiting with full knowledge of WSI's prior rights in the WILLIAMS-SONOMA Mark and with the intent to cause confusion and trade on WSI's goodwill.

146.    Amazon's conduct is causing immediate and irreparable harm and injury to WSI and to its goodwill and reputation and will continue to both damage WSI and confuse the public unless enjoined by this court.  WSI has no adequate remedy at law.

147.    WSI is entitled to injunctive relief and an award of actual damages, Defendant's profits, treble damages and profits, attorneys' fees, and costs under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117.

**SIXTH CLAIM**
**FEDERAL TRADEMARK DILUTION OF THE WILLIAMS-SONOMA MARK**
**(15 U.S.C. § 1125(C))**

148.    WSI realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 147 as though fully set forth herein.

149.    For decades, WSI has exclusively and continuously used and promoted its registered WILLIAMS-SONOMA Mark, both in the United States and throughout the world. The WILLIAMS-SONOMA Mark is widely recognized by the consuming public.  This mark became

a famous and well-known symbol of Plaintiff and its products well before Defendant began offering services under its infringing mark.

150.    Defendant is making use in commerce of a mark that dilutes and is likely to dilute the distinctiveness of WSI's WILLIAMS-SONOMA Mark by eroding the public's exclusive identification of this famous mark with WSI, tarnishing and degrading the positive associations and prestigious connotations of the WILLIAMS-SONOMA Mark, and otherwise lessening the capacity of the WILLIAMS-SONOMA Mark to identify and distinguish Plaintiff's retail and online retail services.

151.    Amazon's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's WILLIAMS-SONOMA Mark and to cause dilution of that mark, which has and will cause great and irreparable injury to WSI.

152.    Amazon has caused and will continue to cause irreparable injury to WSI's goodwill and business reputation, and dilution of the distinctiveness and value of WSI's famous and distinctive WILLIAMS-SONOMA Mark in violation of 15 U.S.C. § 1125(c).  WSI is therefore entitled to injunctive relief and to Defendant's profits, actual damages, enhanced profits and damages, and reasonable attorneys' fees.

## SEVENTH CLAIM
## UNFAIR COMPETITION UNDER SECTION 43(A) OF THE LANHAM ACT
## (15 U.S.C. § 1125(A)

153.    WSI repeats and realleges the allegations contained in paragraphs 1 through 152 as though fully set forth herein.

154.    Defendant's acts are likely to deceive consumers as to the origin, source, sponsorship and/or affiliation of Defendant's goods and services, and are likely to cause consumers to believe, contrary to fact, that Defendant's goods and services are sold or offered, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

155.    Defendant is knowingly and intentionally misrepresenting and falsely designating to the general public the affiliation, connection, association, origin, source, sponsorship, endorsement and approval of Defendant's services and goods, and intends to misrepresent and

falsely designate to the general public the affiliation, connection, association, origin, source, approval, endorsement or sponsorship of Defendant's services and goods, so as to create a likelihood of confusion by the public as to the affiliation, connection, association, origin, source, approval, endorsement and sponsorship of Defendant's services and goods.

156.    Defendant's acts are the result of Defendant's bad faith intent to misappropriate the commercial advantage WSI has gained through its investments in it service mark, trademarks, and the marketing, sale and promotion thereof.

157.    Defendant's activities will cause their goods to be mistaken for the goods and goodwill of WSI, and will cause consumer confusion between WSI's goods and those of defendant, and have misled or will mislead the trade and the public into the false belief that WSI and Defendant are affiliated or that Defendant's goods or services have their source in WSI or are sponsored by WSI or associated with WSI.

158.    Defendant's conduct as alleged herein constitutes trademark infringement, false endorsement, false designation of origin, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

159.    Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the consuming public.

160.    As a result of Defendant's wrongful acts, Plaintiff has been damaged in an amount not yet determined or ascertainable.  At a minimum, Plaintiff is entitled to injunctive relief, an accounting of Defendant's profits, damages and costs.  Plaintiff is also entitled to punitive damages, in light of the deliberate and malicious use of confusingly similar imitations of Plaintiff's marks.

### EIGHTH CLAIM
### COMMON LAW UNFAIR COMPETITION/TRADEMARK INFRINGEMENT

161.    WSI realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 160 as though fully set forth herein.

162.    Defendant has engaged in a pattern of willful and intentional acts designed to

1  appropriate WSI's prestige and goodwill, including without limitation, by copying WSI's

2  products and trademarks.

3       163.   Defendant has been and is passing off its online retail services as those of Plaintiff,

4  causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval

5  of Defendant's affiliation, connection, or association with Plaintiff, and otherwise damaging the

6  public.

7       164.   Defendant's conduct is unlawful, unfair and deceptive in violation of California

8  law, and is deliberate, willful and intended to confuse.

9       165.   As a direct and proximate cause of Defendant's wrongful conduct, Defendant has

10  been and will continue to be unjustly enriched, and WSI has sustained and will continue to sustain

11  diversion of trade with lost profits and injury to its business reputation and goodwill.

12       166.   As a direct result of Defendant's conduct, WSI is entitled to injunctive relief and to

13  recover damages and, if appropriate, punitive damages, costs, and reasonable attorneys' fees.

14
              **NINTH CLAIM**
**DILUTION UNDER CALIFORNIA LAW**
15  **(Cal. Bus. & Prof. Code § 14200 *et seq.*)**

16       167.   WSI realleges and incorporates by reference each of the allegations contained in

17  paragraphs 1 through 166 as though fully set forth herein.

18       168.   The WILLIAMS-SONOMA mark is famous in California, as well as throughout

19  the United States, and has been prior to Amazon's unauthorized use of that mark.

20       169.   Amazon's activities have diluted the distinctive quality of the WILLIAMS-

21  SONOMA mark in violation of California trademark law, Business and Professions Code Section

22  14200 *et seq.*

23       170.   As a direct and proximate cause of Defendant's wrongful conduct, Defendant has

24  been and will continue to be unjustly enriched, and WSI has sustained and will continue to sustain

25  diversion of trade with lost profits and injury to its business reputation and goodwill.

26       171.   As a direct result of Defendant's conduct, WSI is entitled to injunctive relief and to

27  recover damages and, if appropriate, punitive damages, costs, and reasonable attorneys' fees.

28

**TENTH CLAIM**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code §17200, *et seq.*)**

172.    WSI realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 171 as though fully set forth herein.

173.    Defendant has engaged in a pattern of willful and intentional acts designed to appropriate WSI's prestige and goodwill, including without limitation, by copying WSI's products, trademarks, and registered service marks.

174.    Defendant has been and is passing off its online retail services as those of Plaintiff, causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of Defendant's affiliation, connection, or association with Plaintiff, and otherwise damaging the public.

175.    Defendant's conduct is unlawful, unfair and deceptive in violation of California Business & Professions Code § 17200.

176.    As a direct and proximate cause of Defendant's wrongful conduct, Defendant has been and will continue to be unjustly enriched, and WSI has sustained and will continue to sustain diversion of trade with lost profits and injury to its business reputation and goodwill.

177.    As a direct result of Defendant's conduct, WSI is entitled to injunctive relief and to recover damages and, if appropriate, punitive damages, costs, and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, WSI prays that the Court order the following relief:

a.    Judgment that Defendant willfully infringed the '542 patent;

b.    Judgment that Defendant willfully infringed the '823 patent;

c.    Judgment that Defendant willfully infringed the '822 patent;

d.    Judgment that Defendant willfully infringed the '750 patent;

e.    Judgment that Defendant has willfully infringed and counterfeited WSI's registered WILLIAMS-SONOMA Mark;

f.    Judgment that Defendant has diluted WSI's famous WILLIAMS-SONOMA Mark;

g.     Judgment that Defendant has committed unfair competition in violation of the
       Lanham Act and state law;

h.     Judgment that Defendant has committed common law trademark infringement in
       violation of the Lanham Act and state law;

i.     Judgment that Defendant has committed false endorsement in violation of the
       Lanham Act;

j.     Judgment that Defendant has competed unfairly with WSI in violation of WSI's
       rights under California law;

k.     A permanent injunction enjoining Defendant from making, using, selling, or
       offering to sell its infringing goods;

l.     A permanent injunction enjoining Defendant from using the WILLIAMS-
       SONOMA mark in conjunction with its online retail services and otherwise
       infringing or diluting WSI's marks;

m.     Damages, exemplary damages and disgorgement of profits in an amount to be
       proven at trial;

n.     Enhancement of damages including treble damages required to be awarded for
       trademark counterfeiting;

o.     Statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold
       by Defendant.

p.     A declaration that this is an exceptional case;

q.     Full costs, attorneys' fees, and pre- and post-judgment interest to the full extent
       permissible by law; and

r.     Such other and further relief as the Court deems just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: June 3, 2019

ANNETTE L. HURST
DIANA M. RUTOWSKI
DANIEL D. JUSTICE
MARGARET WHEELER-FROTHINGHAM
Orrick, Herrington & Sutcliffe LLP


*/s/ Annette L. Hurst*
ANNETTE L. HURST

Attorneys for Plaintiff Williams-Sonoma, Inc.

1

## <u>DEMAND FOR A JURY TRIAL</u>

2

      Williams-Sonoma, Inc. hereby demands a trial by jury in this action.

3

4

Dated: June 3, 2019

ANNETTE L. HURST
DIANA M. RUTOWSKI
DANIEL D. JUSTICE
MARGARET WHEELER-FROTHINGHAM
Orrick, Herrington & Sutcliffe LLP

5

6

7

8

*/s/ Annette L. Hurst*
ANNETTE L. HURST

9

Attorneys for Plaintiff Williams-Sonoma, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED AND
SUPPLEMENTAL COMPLAINT,
CASE NO.: 18-CV-07548-EDL

1

## <u>CERTIFICATE OF SERVICE</u>

2      I, Annette L. Hurst, certify that on the 12th of June 2019, I caused the foregoing document

3 **FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DAMAGES AND**

4 **INJUNCTIVE RELIEF and EXHIBITS A through O** to be electronically transmitted to the

5 Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing

6 to the ECF registrants and attorneys of record in this case.

7

*/s/ Annette L. Hurst*

8

Annette L. Hurst

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28