DURIE TANGRI LLP
DARALYN J. DURIE (SBN 169825)
ddurie@durietangri.com
MARK A. LEMLEY (SBN 155830)
mlemley@durietangri.com
JOSEPH C. GRATZ (SBN 240676)
jgratz@durietangri.com
MATTHAEUS MARTINO-WEINHARDT (SBN 313103)
mweinhardt@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:     415-362-6666
Facsimile:     415-236-6300

DURIE TANGRI LLP
ALLYSON R. BENNETT (SBN 302090)
abennett@durietangri.com
PETER S. HORN (SBN 321358)
phorn@durietangri.com
953 East 3rd Street
Los Angeles, CA 90013
Telephone:     213-992-4499
Facsimile:     415-236-6300

Attorneys for Defendant
AMAZON.COM, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAMS-SONOMA, INC., | Case No. 3:18-cv-07548-AGT |
| Plaintiff, | **AMAZON.COM, INC.'S OPPOSITION TO WILLIAMS-SONOMA, INC.'S MOTION FOR LEAVE TO FILE SECOND SUPPLEMENTAL COMPLAINT** |
| v. | |
| AMAZON.COM, INC., | Date:     April 24, 2020 |
| Defendant. | Time:     10:00 a.m. |
| | Ctrm:     A – 15th Floor |
| | Judge:   Honorable Alex G Tse |

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................................1

II.  BACKGROUND ..................................................................................................................2

    A.   Amazon's Service ....................................................................................................2

    B.   Procedural Background.............................................................................................6

III. ARGUMENT .......................................................................................................................7

    A.   Good cause does not exist under Rule 16(b) because Williams-Sonoma has not been diligent ..........................................................................................................7

    B.   WSI cannot satisfy Rule 15(d)'s standard for supplementation ..........................10

        1.   WSI's copyright claims are futile .......................................................11

            a.   WSI has not alleged that Amazon's activities are not "at the direction of the user".................................................................11

            b.   WSI has not alleged volitional conduct .....................................14

        2.   Because of WSI's delay, the proposed amendment would prejudice Amazon ................................................................................................16

        3.   The other factors that courts consider do not justify allowing WSI to file a supplemental complaint .......................................................................18

IV.  CONCLUSION...................................................................................................................19

AMAZON.COM, INC.'S OPPOSITION TO MOTION FOR LEAVE TO FILE SECOND SUPPLEMENTAL COMPLAINT / CASE NO. 3:18-CV-07548-AGT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
5

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*,
   No. C 11-2243 CW, 2012 WL 3877783 (N.D. Cal. Sept. 6, 2012)......................................10

6

*Berry v. UCSF*,
   No. C-09-0499 EMC, 2009 WL 5092027 (N.D. Cal. Dec. 17, 2009).................................11

7
8

*Camacho v. Jefferson Capital Sys., LLC*,
   No. 14-cv-02728-BLF, 2015 WL 1939071 (N.D. Cal. April 28, 2015)................................9

9
10

*Eckert Cold Storage, Inc. v. Behl*,
   943 F. Supp. 1230 (E.D. Cal. 1996)....................................................................................9

11

*Fox Broad. Co. v. Dish Network L.L.C.*,
   747 F.3d 1060 (9th Cir. 2014) ...........................................................................................16

12
13

*Frederick v. California Dep't of Corr. & Rehab.*,
   No. C 08-2222 MMC PR, 2012 WL 2077305 (N.D. Cal. June 8, 2012) ............................7, 10, 11, 17

14
15

*Green Payment Sols., LLC v. First Data Merch. Servs. Corp.*,
   No. CV 18-1463 DSF (ASX), 2018 WL 6333697 (C.D. Cal. Oct. 30, 2018)...................7, 9

16

*Jackson v. Bank of Hawaii*,
   902 F.2d 1385 (9th Cir. 1990) ...........................................................................................18, 19

17
18

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) .............................................................................................7, 10

19
20

*Kesecker v. Marin Cmty. Coll. Dist.*,
   No. C11-4048 JSC, 2012 WL 3235936 (N.D. Cal. Aug. 6, 2012) .....................................16

21

*Liberty Mut. Ins. Co. v. California Auto. Assigned Risk Plan*,
   No. C 11-1419 MMC, 2012 WL 3277213 (N.D. Cal. Aug. 9, 2012)..................................16

22
23

*Lockheed Martin Corp. v. Network Sols., Inc.*,
   194 F.3d 980 (9th Cir. 1999) .............................................................................................10

24
25

*Long v. Dorset*,
   369 F. Supp. 3d 939 (N.D. Cal. 2019) ...............................................................................12

26

*Mavrix Photographs, LLC v. Livejournal, Inc.*,
   873 F.3d 1045 (9th Cir. 2017) ...........................................................................11, 12, 13, 14

27
28

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
   No. C13–1932RSM, 2015 WL 4394673 (W.D. Wash. July 16, 2015) ..............................15

*Nunes v. Ashcroft*,
   375 F.3d 805 (9th Cir. 2004) ...........................................................................10, 11, 16, 19

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ......................................................................................14, 15

*Radford v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. 2006-BNC3*,
   No. CV 10-00766 ACK-KSC, 2012 WL 13024769 (D. Haw. Feb. 8, 2012)........................9

*Religious Tech. Ctr. v. Netcom On-Line Comm'n Sers., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995) ...........................................................................14, 15

S*ingleton v. Kernan*,
   No. 3:16-CV-2462-BAS-NLS, 2017 WL 4021536 (S.D. Cal. Sept. 12, 2017)...................11

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
   No. CV143466MMMJPRX, 2015 WL 12746208 (C.D. Cal. Oct. 30, 2015) ........................9

*VHT, Inc. v. Zillow Grp., Inc.*,
   918 F.3d 723 (9th Cir. 2019) ..............................................................................................16

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   940 F. Supp. 2d 110 (S.D.N.Y. 2013)......................................................................12, 13, 14

**Statutes**

DMCA Section 512......................................................................................................11, 12

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................11

Federal Rule of Civil Procedure 15(a) ............................................................................7

Federal Rule of Civil Procedure 15(d) ...........................................................................7

Federal Rule of Civil Procedure 16(b)............................................................................7

## I.    INTRODUCTION

The sole issue presented by WSI's proposed copyright complaint is whether Amazon is liable for copyright infringement when ***third parties*** copy WSI's copyrighted photographs and upload them, resulting in their display on Amazon's website.  WSI claims that Amazon is liable merely because its software—automatically and without any human review—displays some photographs uploaded by users and not others.  Not only is this claim barred as a matter of law, but it comes months too late.

WSI does not deny that it has long known that product pages on Amazon's website may display WSI's copyrighted photographs if those photographs are uploaded by third parties.  WSI alleged as much in its initial complaint, in December 2018.  Yet WSI now seeks to file a supplemental complaint—***nine months*** after its deadline to do so has passed, after WSI informed the Court that Amazon's total revenue from the supposedly infringing activities alleged in its existing complaint was an amount that is almost certainly less than the parties have already spent on attorneys' fees, and a few weeks before Judge Spero convenes the parties for a continuation of their March 10 settlement conference—claiming for the first time that the same actions it alleged more than a year ago in its initial complaint infringe its copyrights.

WSI purports to have been diligent in pursuing its copyright claims because it believed prior to the amendment deadline that "third-party sellers were the ones publishing WSI's images on Amazon." Mot. at 1.  They are, and WSI has not alleged otherwise in its second supplemental complaint.  Rather, the only new information that WSI says it did not have prior to the amendment deadline is that Amazon's software plays a role in determining ***which*** photographs selected and uploaded by third parties are ultimately displayed on Amazon's website.  WSI claims it could not have learned this information in time because "Amazon's product detail page algorithms are not public."  Mot. at 9.

But WSI's newly concocted claim has nothing to do with the precise way in which Amazon's algorithms work.  Instead, it depends merely on the ***fact*** that Amazon's software can, in certain circumstances, determine which images selected and uploaded by third-party sellers appear in connection with the sellers' product listings on Amazon.com.  ***That*** fact—that Amazon's software sometimes determines which pictures are shown—has been public for years.  WSI could have discovered the role of Amazon's software through a simple Google search, but it apparently never bothered to look.

Nor can WSI explain why it waited seven months after the deposition that supposedly alerted it to

the basis for its copyright claims before seeking to supplement its complaint.  Even if WSI's explanation were to be taken at face value, WSI was aware of Amazon's algorithmic display of product images submitted by third parties by no later than August 2019.  Yet WSI waited close to another five months merely to raise the *possibility* that it might file a supplemental complaint, and another two months after that before filing this motion.  This delay demonstrates WSI's lack of diligence, has further prejudiced Amazon, and further justifies the denial of WSI's motion.

Not only did WSI fail to adequately pursue its claims, but WSI's claims are also futile.  As noted above, WSI has alleged only that third parties submit infringing product photographs to Amazon, and that Amazon has automatic processes in place that determine (without human review) which photographs are shown at any given time.  But these types of purely automatic processes are not copyright infringement.

First, the Digital Millennium Copyright Act ("DMCA") provides that service providers like Amazon are not liable for copyright infringement when their users upload infringing photographs.  Clear case law holds that the DMCA "safe harbor" applies *even if* a service provider has automatic systems in place that choose which content to display.

Second, even if the DMCA did not apply, WSI would still have to plead that Amazon engages in volitional conduct that directly causes the infringement.  But, under Ninth Circuit case law, automatic processes involving no human review that copy, display or transmit infringing content uploaded by others does *not* constitute volitional conduct.

WSI's motion should therefore be denied.

## II.   BACKGROUND

### A.   Amazon's Service

Amazon.com allows third-party sellers to list goods for sale.  *See* Decl. of Diana M. Rutowski in Supp. Williams-Sonoma, Inc.'s Mot. for Leave to File Second Supplemental Compl. ("Rutowski Decl."), Ex. A ("SSC") ¶ 17.  Among the products that third-party sellers have listed for sale on Amazon's website are genuine, Williams-Sonoma branded goods.  WSI has never alleged—in its initial complaint, in its first amended and supplemental complaint, or in its proposed second supplemental complaint—that the Williams-Sonoma goods listed for re-sale on Amazon.com are anything other than genuine,

Williams-Sonoma branded products.  Nor has Williams-Sonoma ever alleged that the Williams-Sonoma goods are listed for sale by Amazon itself, rather than by third parties.

Products offered by third-party sellers via Amazon.com are displayed on "product detail pages," or "PDPs," which include information about the relevant product such as the product name, the brand, product pictures, the price, and the identity of the third-party seller.  *See, e.g.*, PDP for Williams-Sonoma Classic Striped Dishcloths, Dishrags, Drizzle Grey (Set of 4), *available at* https://www.amazon.com/Williams-Sonoma-Classic-Striped-Dishcloths-Dishrags/dp/B07KJYHSJF/ref=sr_1_1?dchild=1; SSC ¶ 18.  With respect to Williams-Sonoma branded products, all of the information displayed about the product on the PDP—including the product images—is entered by third-party sellers.  *Id.*

Even if multiple sellers offer a particular product, there will be only one PDP for that product.  *Id.* ¶ 18.  WSI does not dispute that the information about the product displayed on a PDP comes from the third-party seller (or sellers) of the product.  In other words, even accepting WSI's allegations in its proposed second supplemental complaint as true, to the extent an infringing image of a Williams-Sonoma branded product appears on Amazon, that image was copied and uploaded by a third party, not Amazon.  *Id.* ¶¶ 18-19.  The only involvement by Amazon that WSI alleges is that when multiple images submitted by third-party sellers "exist for a product, Amazon, by and through its algorithms, selects which product image, among other elements, is most likely to make the sale and displays that image on the public listing page for the product."  SSC ¶ 2; *see also id.* ¶ 19 ("Amazon uses multiple algorithms to evaluate and select the ***seller-contributed*** content for a wide variety of aspects of its product listings, including images.") (emphasis added).  WSI claims that "Amazon's algorithms have repeatedly selected WSI's copyrighted images to copy and display on Amazon's product listing pages."  *Id.* ¶ 3.  WSI acknowledges that the selection of the image displayed on the PDP is performed by "an algorithm rather than a human."  *Id.*

It is no secret that Amazon's software automatically determines which seller's contribution ultimately appears on PDPs.  To the contrary:  on its website, Amazon repeatedly and publicly discloses that fact.  For example, the webpage screenshotted in Paragraph 18 of WSI's proposed second supplemental complaint currently states (and stated at the time of WSI's deadline to file an amended

pleading) that, when "more than one seller contributes data to a product, *Amazon determines which seller's product information will be displayed on the product detail page*."  Amazon Seller Central, About Products and Listings, *available at* https://sellercentral.amazon.com/gp/help/external/G200182950?language=en_US (emphasis added); *see also* SSC ¶ 18; Decl. of Robert Maharaj ("Maharaj Decl.") ¶ 2, Ex. 1.

Other public pages on Amazon's website similarly reveal Amazon's role in determining what information is displayed on a PDP when multiple sellers of a product contribute differing information. On its public page describing how PDPs work, Amazon notes (and stated at the time of the motion to amend deadline) that a PDP "is a shared space that displays attributes that are common to all offers for the product, such as . . . *image*," and that "*Amazon chooses* what information to include on the product detail page based on manufacturer and seller contributions."  Amazon Seller Central, Product Detail Pages and Offers, *available at* https://sellercentral.amazon.com/gp/help/external/51 (emphasis added); *see also* Maharaj Decl. ¶ 3, Ex. 2.

On yet another publicly available page, Amazon instructed sellers as of WSI's deadline to amend that "[w]hen multiple sellers sell the same product through a single detail page, *we* [i.e., Amazon] combine the best product data from across various seller submissions to ensure customers get the best experience.  You, other sellers, and manufacturers can contribute product information on a product detail page.  Amazon will *automatically select* the information that is displayed on detail page."  Maharaj Decl. ¶ 4, Ex. 3 (emphasis added); *see also* Amazon Seller Central, Suggest Changes to Your Product Detail Page, *available at* https://sellercentral.amazon.com/gp/help/external/G200335450?language=en_US (current version of the same page, which states "[w]hen multiple sellers sell the same product through a single detail page, *Amazon automatically combines* the best product data from across various seller submissions to ensure customers get the best experience") (emphasis added).  That same page further clarifies—both as of WSI's amendment deadline and currently—that "[w]hen evaluating [sellers'] contributions, [Amazon] consider[s] [the seller's] sales volume, refund rate, buyer feedback, and A-to-z

Guarantee claims." *Id.*; Maharaj Decl. ¶ 5, Ex. 3.[1]   The public page also (then and now) informs sellers that (a) they can edit the information included on a PDP, including "images"; and (b) if, after 6 hours, the seller's proposed contributions "do not show up on the product detail page, ***Amazon's system*** has selected another contributor's information." *Id.* (emphasis added); Maharaj Decl. ¶ 5, Ex. 3.

The public webpage informing sellers about how to prepare product images is even more explicit. It stated, as of WSI's motion to amend deadline:  "Uploading an image doesn't guarantee that it will be displayed on the product detail page or search pages.  Amazon uses complex image ranking technology to determine the best images to display."  Maharaj Decl. ¶ 7, Ex. 5; *see also* Seller Central, Prepare Product Images, *available at* https://sellercentral.amazon.com/gp/help/external/16881?language=en_US&ref=efph_16881_cont_8AY HBC6L33W3NZK (current version of page which states, "Uploading an image does not guarantee that it will be displayed on the product detail page or search pages. Amazon uses complex image ranking technology to determine display images); Maharaj Decl. ¶ 8, Ex. 6.

One does not need to be intimately familiar with Amazon's website to locate these pages.  First, all these pages are publicly available through the "help" section of Seller Central, which is the platform used by third parties who wish to sell products through Amazon.com.  Declaration of Allyson R. Bennett ("Bennett Decl.") ¶¶ 2-5.  While some Seller Central pages require a logon to access, none of the above pages require a logon.  *Id.* ¶ 6; *see also* Maharaj Decl. ¶¶ 2-8 (describing the pages "as publicly available").  Second, these pages are also returned as search results in response to obvious Google queries.  For example, the page on "Product detail pages and offers" is one of the first results in response to a query on Google for "amazon multiple sellers PDP pages."  Bennett Decl.  ¶ 7.  The "prepare product images" page that discusses Amazon's "image ranking technology" is one of the first search results in response to a query for "product images on Amazon," as well as a query for "how does

---

[1] The language on that webpage was slightly different prior to the time that WSI filed its initial complaint, but the substance was materially the same for these purposes.  For example, from March 6, 2017 through March 25, 2019, the page stated "You, other sellers, and manufacturers can contribute product information on a product detail page. Amazon will automatically select the information. . . . . When multiple sellers sell the same product through a single detail page, we combine the best product data from across various seller submissions to ensure customers get the best experience. The product detail page shows information selected by Amazon to represent the product."  Maharaj Decl. ¶ 6, Ex. 4.

Amazon select product images." *Id.* ¶¶ 8-9.

### B. Procedural Background

This case has been pending since December 14, 2018. In its initial complaint, WSI alleged that Amazon's website "often uses WSI's own copyrighted photos and product imagery." Compl. (Dkt. 1) ¶ 28. That initial complaint did not include a claim for copyright infringement.

On May 10, 2019, the parties submitted an agreed case schedule proposing that June 3, 2019 be the last day to amend the pleadings. ECF No. 45. The Court adopted that date. *See* Case Management and Pretrial Order for Jury Trial (Dkt. 46) at 3.[2] On June 3, 2019, WSI did amend and supplement its complaint. As with its initial complaint, WSI's amended and supplemental complaint once again alleged that Amazon's website "often uses WSI's own copyrighted photos and product imagery." First Amended and Supplemental Compl. ¶ 28. It did not contain a claim for copyright infringement.

WSI served its first set of discovery requests on May 15, 2019, and Amazon first began producing documents on July 15, 2019. Amazon's first production, which included 115 documents, included the "product detail pages and offers" page described above. Bennett Decl. ¶ 8. In its second production, which included 86 documents and was made on August 9, 2019, Amazon produced a number of internal wiki pages providing detailed explanations of how Amazon's algorithms combine multiple seller contributions into one PDP. *Id.* ¶ 9.

The same day that WSI served its first written discovery requests, WSI also served a 30(b)(6) notice listing 14 deposition topics, many of which had multiple subparts. On August 28, 2019, WSI deposed Faeza Asvat, one of Amazon's 30(b)(6) witnesses. Ms. Asvat testified that, when multiple sellers contribute information to a single PDP, Amazon's algorithms "determine which contribution to show on the detail page," including images. Mot. at 4 (quoting Rutwoski Decl. Ex. E). Between August and October 2019, WSI deposed four Amazon witnesses in addition to Ms. Asvat. To date, WSI has used more than 15 hours of deposition time, exceeding by more than an hour the agreed 14-hour limit on 30(b)(6) depositions set out in the case management order.

Despite deposing Ms. Asvat in August 2019, WSI did not so much as hint at its desire to file a

---

[2] WSI does not dispute that this deadline applies to its proposed second supplemental complaint.

second supplemental complaint until a case management conference held on January 10, 2020.  That

conference followed from an order that the Court had issued in December, requiring WSI to file a

statement addressing the "worth of this case."  Dkt. 72.  In its response to that order, Amazon noted that

WSI had previously calculated the total revenue from the sales of products at issue in this case at an

amount that was likely less than parties had spent on attorneys' fees.  Dkt. 76 at 8.  Notably, it was at the

case management conference to discuss that joint submission that WSI raised for the first time that it may

also seek to bring copyright claims.  WSI then waited until March 20, 2020 to file the instant motion.[3]

## III.   ARGUMENT

### A.   Good cause does not exist under Rule 16(b) because Williams-Sonoma has not been diligent

Where, as here, a party seeks to file an amended or supplemental pleading after a court-ordered

deadline, a party's ability to amend is governed by the "good cause" standard of Rule 16, not the more

"liberal" standard of Rule 15.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992).

Rule 16's "good cause" standard "primarily considers the diligence of the party seeking the amendment."

*Id.* at 609.  "Although the existence or degree of prejudice to the party opposing the modification might

supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons

for seeking modification.  If that party was not diligent, the inquiry should end."  *Id.* (internal citation

omitted).

WSI was not diligent.

WSI has long known that its copyrighted photographs appear on Amazon.com.  Indeed, it even

put that fact at issue *in this case* by alleging as much in both its initial complaint and its first amended

and supplemental amended complaint.  The only additional information that WSI claims it needed to

---

[3] While WSI has styled its proposed pleading as a supplemental pleading under Federal Rule of Civil Procedure 15(d), it is more accurately described as an amended pleading under Federal Rule of Civil Procedure 15(a).  That is because the proposed complaint (as noted below) "relate[s] to matters that occurred prior to the filing of the original pleading," rather than alleging a cause of action "not in existence" when the original complaint was filed.  *See Frederick v. California Dep't of Corr. & Rehab.*, No. C 08-2222 MMC PR, 2012 WL 2077305, at *1 (N.D. Cal. June 8, 2012) (internal quotations omitted); *see also Green Payment Sols., LLC v. First Data Merch. Servs. Corp.*, No. CV 18-1463 DSF (ASX), 2018 WL 6333697, at *2 n.2 (C.D. Cal. Oct. 30, 2018).  That said, because WSI does not dispute that the same analysis applies to its proposed ***supplemental*** pleading as would apply if it had instead styled its proposed pleading as an ***amended*** pleading, the Court need not decide the issue.

bring its copyright claims is that Amazon's software sometimes plays a role in determining which of multiple user-submitted photographs appears on its website.

If WSI had done **any** reasonable investigation of its potential copyright claims, it would have discovered the vast amount of public information disclosing the role that Amazon's algorithms play in selecting the images that appear on PDPs.  WSI justifies its wholesale failure to investigate by arguing that Amazon's publicly facing website merely "hints at the control that Amazon exerts."  Mot. at 3. Amazon's public website does far more than "hint":  It discloses explicitly—and repeatedly—that when multiple sellers contribute information to a PDP, including images, Amazon has software that automatically determines which seller's contribution is publicly displayed.

The only details contained in the deposition testimony that WSI cites in its motion that WSI could not have gleaned from public documents are the names of the relevant processes and systems.  All of the information disclosed in Ms. Asvat's and Mr. Andrews's depositions about how the processes actually work (i.e., the information that WSI claimed it needed to bring its copyright claims) was publicly available, including that:[4]

- When "more than one seller contributes data to a product, ***Amazon determines which seller's product information will be displayed on the product detail page***." https://sellercentral.amazon.com/gp/help/external/G200182950?language=en_US (emphasis added); Maharaj Decl. ¶ 1, Ex. 1;

- "***Amazon*** will ***automatically select*** the information that is displayed on detail page" when multiple sellers contribute information to a PDP.  Maharaj Decl. ¶ 4, Ex. 3 (emphasis added); *see also id.* ¶ 6, Ex. 4.

- "When ***evaluating*** [sellers'] contributions, ***[Amazon] consider[s]*** [the seller's] sales volume, refund rate, buyer feedback, and A-to-z Guarantee claims." *Id.* ¶ 4, Ex. 3; *see also* https://sellercentral.amazon.com/gp/help/external/G200335450?language=en_US (emphasis added); and

- "Uploading an image doesn't guarantee that it will be displayed on the product detail page

---

[4] For that reason, Amazon does not object to the public filing of Rutowski Declaration Exhibits E and F.

or search pages. ***Amazon uses complex image ranking technology to determine the best images to display***." Maharaj Decl. ¶ 7, Ex. 5; *see also id.* ¶ 8, Ex. 6; Seller Central, Prepare Product Images, *available at* https://sellercentral.amazon.com/gp/help/external/16881?language=en_US&ref=efph_168 81_cont_8AYHBC6L33W3NZK.

WSI does not claim that it conducted a reasonable investigation into Amazon's control over the information that appears on PDPs but failed to find this publicly available information. Indeed, WSI does not contend that it conducted any investigation at all prior to the deadline for filing an amended pleading. *See* Rutowski Decl. ¶ 8 (stating that WSI "***[f]ollowing these depositions*** [in August and October 2019], WSI undertook an analysis of whether it could bring a copyright claim") (emphasis added). That is not diligence. *See, e.g.*, *Green Payment Sols., LLC*, 2018 WL 6333697, at *2 (denying leave to amend where the presence of the defendants' names and marks on Plaintiff's website was "readily available public information"); *Radford v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. 2006-BNC3*, No. CV 10-00766 ACK-KSC, 2012 WL 13024769, at *4 (D. Haw. Feb. 8, 2012) (denying leave to amend where party could have learned the necessary information prior to the deadline from a publicly available deposition transcript).[5]

Even if WSI could be excused for not finding this publicly available information, WSI still could not show diligence. By WSI's own account, it learned of the role of Amazon's algorithms during the deposition of Ms. Asvat in August 2019. But it then decided to wait almost ***five months*** to alert the Court or Amazon that it was considering filing a supplemental pleading, and almost ***seven months*** to file this motion. *See Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996) (denying leave to amend where the party waited seven months after receiving the necessary documents before filing its motion to amend). Even though the amendment deadline had passed at the time of Ms. Asvat's deposition, WSI still needed to be diligent in filing its new pleading. *See, e.g.*, *See UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.,* No. CV143466MMMJPRX, 2015 WL 12746208, at *9 (C.D. Cal. Oct.

---

[5] Both parties agree that district courts in the Ninth Circuit have applied the same standards to motions to amend as to motions to supplement, *see* Mot. at 8 n.1, and both parties rely on cases regarding motions to amend. *See, e.g.*, *id.* at 9 (relying on *Camacho v. Jefferson Capital Sys., LLC*, No. 14-cv-02728-BLF, 2015 WL 1939071 (N.D. Cal. April 28, 2015)).

30, 2015) ("Stated differently, assuming a modification of the schedule is requested—and Rule 16 is implicated—any delay in seeking amendment must be adequately explained, whether that delay took place between a date within the amendment deadline and a date outside the deadline, or between two dates outside the deadline."); *see also Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, No. C 11-2243 CW, 2012 WL 3877783, at *6 (N.D. Cal. Sept. 6, 2012) (party seeking amendment must show "that the scheduling order imposes deadlines that have become unworkable notwithstanding its diligent efforts to comply with the schedule, and that it was diligent in seeking the amendment once it became apparent that extensions were necessary") (emphasis added).

WSI's sole explanation for its several-month delay is that WSI had to find a product image on Amazon's website that was covered by one of WSI's copyright registrations.  But WSI had already alleged in each of its prior pleadings that Amazon displayed WSI's copyrighted images on Amazon.com, and presumably had a Rule 11 basis to do so at that time.

In sum, WSI has no excuse for failing to investigate its claims prior to the deadline to amend, and no excuse for waiting more than half a year after taking what WSI claims to be the key deposition to seek leave to supplement its complaint.  WSI therefore cannot show "good cause" for supplementation, and its motion should be denied.  *See Johnson*, 975 F.2d at 607.

## B.    WSI cannot satisfy Rule 15(d)'s standard for supplementation

Even if WSI could show good cause under Rule 16, it would still have to show that amendment was justified under Rule 15.  *See Johnson,* 975 F.2d at 608.  It cannot do so.

In evaluating a motion to file a supplemental complaint, courts consider a number of factors, including bad faith, undue delay, prejudice, futility, and whether a party has previously amended its complaint.  *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *see also Frederick*, 2012 WL 2077305, at *2 ("The standards for granting a motion for leave to file a supplemental pleading are the same as those for granting a motion to file an amended complaint under Rule 15(a).").  Courts also consider whether allowing the filing of the supplemental complaint would further judicial economy, the relatedness of the original and supplemental claims, whether final judgment has been entered, and whether the proposed supplemental allegations relate to defiance of a prior court order.  *Frederick*, 2012 WL 2077305, at *2;

S*ingleton v. Kernan*, No. 3:16-CV-2462-BAS-NLS, 2017 WL 4021536, at *3 (S.D. Cal. Sept. 12, 2017), report and recommendation adopted, No. 16-CV-02462-BAS-NLS, 2017 WL 4340420 (S.D. Cal. Sept. 29, 2017).

These factors demonstrate that supplementation is not justified.

### 1.      WSI's copyright claims are futile

Motions to supplement a party's pleading should be denied as futile where the proposed pleading fails to state a claim. *See Nunes*, 375 F.3d at 808 ("Futility alone can justify the denial of a motion for leave to amend."). "In assessing futility, a court typically applies the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6)." *Berry v. UCSF*, No. C-09-0499 EMC, 2009 WL 5092027, at *1 (N.D. Cal. Dec. 17, 2009). Under that standard, WSI's proposed copyright claim is futile: WSI has alleged only that Amazon's software automatically causes certain photographs submitted by third parties to appear on Amazon.com, without any human review. The Ninth Circuit has held as a matter of law that such automatic processes do not create copyright liability.[6]

### a.      WSI has not alleged that Amazon's activities are not "at the direction of the user"

WSI's claims are futile because they fail to remove Amazon from the protection of the DMCA safe harbors. Section 512 of the DMCA is intended to "strike[] a balance between the interests of copyright holders in benefiting from their labor; entrepreneurs in having the latitude to invent new technologies without fear of being held liable if their innovations are used by others in unintended infringing ways; and those of the public in having access to both." *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1051 (9th Cir. 2017) (internal quotations and alterations omitted). It strikes this balance by "requiring service providers to take down infringing materials when copyright holders notify them of the infringement and by limiting service providers' liability for unintentional infringement through several safe harbors." *Id.* at 1051-52. If one of the safe harbors applies, the service provider is insulated from liability for damages and most types of injunctive relief. Courts can decide the applicability of the DMCA safe harbors on a motion to dismiss. *See Long v. Dorset*, 369 F. Supp. 3d

---

[6] While Amazon gives an overview of several arguments it would make in a Rule 12(b)(6) motion, if the court finds Amazon's preview to be insufficient to demonstrate futility and WSI's motion is granted, Amazon should be given the opportunity to present its arguments fully in a motion dismiss.

939, 947 (N.D. Cal. 2019) (dismissing plaintiff's claims because the DMCA safe harbors applied).

The relevant safe harbor here is the one provided under Section 512(c) of the DMCA, which dictates that a service provider (like Amazon) "shall not be liable . . . infringement of copyright *by reason of the storage at the direction of a user* of material that resides on a system or network controlled or operated by or for the service provider," so long as certain conditions not at issue here are met.  17 U.S.C. § 512(c) (emphasis added).[7]  WSI argues that the display of its copyrighted photographs on PDPs does not qualify as "storage at the direction of a user"—and that Section 512(c) therefore does not apply—because Amazon has software that automatically determines which images submitted by users appear on a PDP (if more than one user has submitted images).  *See* Mot. at 1; *see also, e.g.*, SSC ¶ 2 ("when multiple images exist for a product, Amazon, by and through its algorithms, selects which product image, among other elements, is most likely to make the sale and displays that image on the public listing page for the product"); *id.* ¶ 3 ("Amazon's algorithms have repeatedly selected WSI's copyrighted images to copy and display on Amazon's product listings.").

That argument is foreclosed by Ninth Circuit law.  "Infringing material is stored at the direction of the user if the service provider played no role in making that infringing material accessible on its site *or* if the service provider carried out activities that were 'narrowly directed' towards enhancing the accessibility of the posts."  *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1056 (9th Cir. 2017) (emphasis added).  Accessibility enhancing activities include "software processes that automatically occur when a user uploads materials."  *Id.* at 1056 n.12.

Amazon's algorithmic display of product images that are uploaded by its users qualify as exactly the type of "accessibility-enhancing" activities that courts have approved.  For example, in *Viacom Int'l, Inc. v. YouTube, Inc.,* the Second Circuit held that YouTube's "related videos" function was covered by the safe harbor for storage of copyrighted material at the direction of the user.  The "related videos" function is a feature "by which *a YouTube computer algorithm identifies and displays* 'thumbnails' of

---

[7] Those conditions include, among others, that the service provider:  (a) not have red flag or actual knowledge of specific, infringing material on its systems; (b) respond expeditiously to valid takedown notices by copyright owners; and (c) reasonably implement a repeat infringer policy.  WSI does not allege that Amazon fails to satisfy any of the DMCA's requirements, other than that infringing material be stored at the direction of the user.

clips that are 'related' to the video selected by the user."  676 F.3d 19, 39-40 (2nd Cir. 2012) emphasis added).  The Second Circuit reasoned that the "related videos function" was covered by the DMCA safe harbor because it was (a) "fully automated and operates solely in response to user input without the active involvement of YouTube employees" and (b) "serve[d] to help YouTube users locate and gain access to material stored at the direction of other users."  *Id.* at 40.

WSI has alleged that Amazon's algorithms function in the same way as YouTube's.  Like YouTube's software, Amazon's automatically (and without manual review) selects certain photographs, and not others, uploaded by third parties to be shown to its users.  SSC ¶¶ 2-4.  Also like YouTube's algorithm, Amazon's helps users locate and gain access to the material stored at the direction of other users, i.e., the product photographs.  *Id.* ¶ 2.  Amazon's activities are therefore fully covered under the DMCA safe harbor.

Citing the Ninth Circuit's opinion in *Mavrix*, WSI nevertheless argues that "Amazon cannot evade liability for copyright infringement simply because its photographic editor is an algorithm rather than a human."  SSC ¶ 3.  Unfortunately for WSI, the law says exactly the opposite.  Courts—***including the court in* Mavrix—**evaluating service providers' liability under the DMCA safe harbors have explicitly held that automated activities do not affect safe-harbor eligibility, while manual activities sometimes do.

In *Viacom*, for example, the Second Circuit held that the fully automatic related video function was covered by the DMCA safe harbor.  It also held, however, that a different service that YouTube offered whereby YouTube ***manually*** selected certain videos to be "syndicated" to other companies may not have been covered by the DMCA, and remanded for further fact-finding.  *Viacom*, 676 F.3d at 40.  On remand, the district court found that none of the works in suit were actually subject to manual review and that the safe harbor therefore applied.  *Viacom Int'l, Inc. v. YouTube, Inc.*, 940 F. Supp. 2d 110, 122-23 (S.D.N.Y. 2013).  It did not matter, the district court reasoned, that YouTube entered into the syndication arrangements at issue "for its own business purposes, and not at the direction of users."  *Id.*  What mattered was that YouTube's actions constituted "steps by a service provider taken to make user-stored videos more readily accessible (***without manual intervention***) from its system to those using contemporary hardware."  *Id.* (emphasis added).

1    *Mavrix,* the very case that WSI relies on in arguing that the automated nature of Amazon's system

2    does ***not*** matter, similarly distinguishes between manual processes (which may remove safe harbor

3    protection depending on the circumstances) and automatic processes (which do not).  In that case, the

4    Ninth Circuit evaluated whether a moderator's role in manually screening and posting the allegedly

5    infringing photographs at issue removed the defendant from the safe harbor's protection.  Relying on

6    both the Second Circuit's and the District Court's decisions in *Viacom,* the Ninth Circuit remanded for

7    further fact finding, directing the district court to "determine whether LiveJournal's ***manual,*** substantive

8    review process went beyond the ***automatic*** processes we have approved as accessibility-enhancing

9    activities such that any infringements were still by reason of storage at the direction of the user."  *Mavrix*,

10   873 F.3d at 1056 n.12 (emphasis added).

11       Because the crux of WSI's new allegations is that photographs are selected by Amazon's

12   "algorithms,"—*i.e.* by automatic, rather than manual, processes—leave to supplement should be denied

13   as futile.

14                              **b.    WSI has not alleged volitional conduct**

15       WSI's claims also fail for the independent reason that it has not alleged that ***Amazon***, as opposed

16   to the third-party sellers that allegedly uploaded WSI's copyrighted photographs to Amazon's technology

17   platform, directly caused the infringement.

18       WSI seeks to bring one claim for direct copyright infringement.  Even in the absence of safe

19   harbor protection, claims for direct copyright infringement "require[] the plaintiff to show causation (also

20   referred to as 'volitional conduct')."  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir.

21   2017).  This "volitional conduct" requirement began with the Northern District of California's decision in

22   *Religious Tech. Ctr. v. Netcom On-Line Comm'n Sers., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995), which

23   held that an online bulletin board was not liable for direct copyright infringement when its users publicly

24   displayed infringing material on the bulletin board.  The court reasoned that ***Netcom***, as opposed to its

25   users, "did not take any affirmative action that directly resulted in copying plaintiffs' works other than by

26   installing and maintaining a system whereby software automatically forwards messages received from

27   subscribers onto the Usenet, and temporarily stores copies on its system."  *Id.* at 1368.  Even though

28   Netcom's actions may have created copies of the plaintiff's works, the court reasoned, the steps that

                                              14

Netflix took "were necessary to having a working system for transmitting Usenet postings to and from the Internet." *Id.*

Since *Netcom*, the Ninth Circuit has recognized that a service provider is not liable for infringement when it "***automatically*** cop[ies], stor[es], and transmit[s] materials upon instigation by others." *Giganews, Inc.*, 847 F.3d at 668 (emphasis added). That is all WSI has alleged here: It alleges that Amazon "***by and through its algorithms***, selects which product image, among other elements, is most likely to make the sale and displays that image on the public listing page" when "[m]ultiple sellers of a product . . . submit photographic content to Amazon's 'catalog.'" SSC ¶ 2 (emphasis added). But that is just another way of saying that Amazon automatically copies, stores and displays the photographs uploaded by its users. That is insufficient as a matter of law. *See Giganews, Inc.*, 847 F.3d at 668; *see also Milo & Gabby, LLC v. Amazon.com, Inc.*, No. C13–1932RSM, 2015 WL 4394673, at *6 (W.D. Wash. July 16, 2015) (Amazon not liable for copyright infringement based on the appearance of copyrighted photographs on Amazon's automatically generated product detail pages).

WSI argues that Amazon engages in volitional conduct because "if an Amazon ***employee*** were composing those product pages from the submissions by third-party sellers, there is no doubt that Amazon would be liable for copyright infringement." Mot. at 9. But that is not what WSI has alleged. It has alleged only that Amazon's software automatically processes and displays certain photographs that were (1) copied by users; (2) selected by users for possible inclusion on Amazon's website; and (3) then uploaded to Amazon's website by users. SSC ¶¶ 2, 4. WSI notably cites *Giganews* in arguing that Amazon's automatic processes, standing alone, infringe its copyright. But WSI ignores *Giganews*' key holding: namely, that automatic processes like the ones alleged here do ***not*** constitute volitional conduct. *Giganews, Inc.*, 847 F.3d at 668. Whether a human being who exercised judgment to perform the same function would engage in volitional conduct is beside the point.

Nor does it matter that, based on the automatic operation of Amazon's software, not all photographs submitted by a user appear on a PDP. That Amazon's software, without any human intervention or pre-review, affects which photographs uploaded by users appear on PDPs does not make Amazon directly liable for copyright infringement. *See, e.g.*, *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 733 (9th Cir. 2019) (holding that Zillow—which had rules to determine which photograph was

displayed when several copies of the same photograph was uploaded—was not directly liable for

copyright infringement when users uploaded copyrighted photographs for display on Zillow's website);

*see also Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1066-68 (9th Cir. 2014) (holding that

plaintiffs were unlikely to succeed on a direct infringement claim against Dish Network when Dish

offered users the option to automatically record all primetime shows on certain networks, even though

Dish chose the start and end times for recordings, decided how long the copies made would be available

for viewing, and prevented users from cancelling a recording once it had begun).

So long as Amazon uses an automatic process to display product photographs uploaded by its

users—which is all that WSI alleges—Amazon has not engaged in volitional conduct merely because

that process results in the display of some of WSI's copyrighted photographs.

### 2. Because of WSI's delay, the proposed amendment would prejudice Amazon

In addition to futility, courts consider whether a party has unduly delayed in seeking leave to

amend its claims, as well as whether allowing supplementation would prejudice the other party. *Nunes*,

375 F.3d at 808.

For the reasons explained above, WSI has unduly delayed in filing its motion to supplement. *See*

Section III.A, *supra*. Even if that did not suffice to bar the amendment under Rule 16, it is a factor that

weighs against permitting the amendment under Rule 15.

Moreover, allowing amendment at this time will greatly prejudice Amazon by extending the

discovery and trial schedule in these proceedings, and multiplying Amazon's costs. *See Liberty Mut. Ins.*

*Co. v. California Auto. Assigned Risk Plan*, No. C 11-1419 MMC, 2012 WL 3277213, at *4–5 (N.D. Cal.

Aug. 9, 2012) (additional discovery that would require an extension of the fact discovery deadline would

prejudice the other party); *Kesecker v. Marin Cmty. Coll. Dist.*, No. C11-4048 JSC, 2012 WL 3235936,

at *4 (N.D. Cal. Aug. 6, 2012) (plaintiff's proposed amendment would prejudice the defendant where

current case deadlines would have to be continued).

WSI claims that no schedule extension is warranted because the parties will have two months

following the hearing on this motion to complete discovery. Under the best circumstances, discovery on

WSI's copyright claims would likely take more than two months, even if the parties had completed all

other discovery in this case (which they have not). WSI's new claim implicates different Amazon teams

1   and custodians who have not yet been involved in this case, requiring additional rounds of initial

2   disclosures and custodian interviews.

3        Further, the amount of discovery required by WSI's proposed second supplemental complaint is

4   likely to be significant.  For example, Amazon is likely to seek discovery of WSI's copyright registration

5   information, communications with the copyright office, deposit copies of the alleged copyrighted works,

6   and value of the alleged copyrighted works to WSI.  WSI is likely to seek information regarding, at a

7   minimum:  all product images for *all* of the WSI-branded products sold by third-party sellers via

8   Amazon.com, the identity of the third-party sellers of those products, information about when the images

9   were uploaded and by whom, and information about Amazon's algorithms that determine which images

10  are displayed on a PDP.  And that is likely only the beginning.

11       That would be too much to complete in two months even in normal times, but delay is especially

12  likely here because of the ongoing disruption caused by the COVID-19 outbreak.  As WSI itself

13  acknowledged, the most recent discovery extension was necessitated by the severe disruption occurring

14  to the parties' businesses in light of the pandemic.  This disruption means that it takes longer for Amazon

15  to interview custodians, and to locate and produce documents than it otherwise would.

16       Second, in addition to document discovery, additional motion practice and depositions are likely

17  required if WSI's motion to supplement is granted.  Not only will the additional briefing and depositions

18  further delay proceedings, but they also constitute independent grounds for prejudice by unduly

19  increasing the litigation burden on Amazon.  Amazon has already filed a motion to dismiss, but WSI's

20  second supplemental complaint would likely require another one.  Further, WSI has already used *more*

21  *than* the *total* time allotted in the case management order for 30(b)(6) depositions of Amazon's

22  witnesses.  *See Frederick*, 2012 WL 2077305, at *2 (denying leave to supplement where the parties had

23  already engaged in dispositive briefing, and settlement proceedings, and where the defendant had already

24  deposed the plaintiff).

25       Third, injecting copyright issues into this case will likely significantly increase the complexity of

26  this already complicated litigation—thereby increasing the difficulties and expense of presenting the case

27  to both the Court on summary judgment and ultimately a jury.  Amazon developed its case strategy based

28  on the claims actually in the case, and that strategy will have to be significantly revised if WSI is able to

add copyright claims at this late a date.

### 3. The other factors that courts consider do not justify allowing WSI to file a supplemental complaint

WSI cites a number of other factors in its motion, but none of them are sufficient to justify WSI's filing of a supplemental complaint in light of the futility of WSI's proposed claims, as well as the prejudice that WSI's undue delay has caused Amazon.

First, with respect to judicial economy, WSI argues that allowing supplementation will support judicial economy by allowing all claims to be heard at once.  But, as explained above, allowing WSI to supplement will also further delay these proceedings, which have already been pending for more than year.  Accordingly, judicial economy is, at best for WSI, neutral.  *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (quoting *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989), for the proposition that "[p]utting the defendants through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.") (internal quotation marks omitted).

Second, although perhaps not rising to the level of bad faith, the timing of WSI's request for leave to supplement is notable.  WSI has known about the alleged appearance of its copyrighted photographs on Amazon.com since before this litigation began.  And even if the Court accepts that WSI had no obligation to investigate its potential copyright claims prior to Ms. Asvat's deposition in August 2019 (and the Court should not), WSI waited until January 10, 2020 to so much as *mention* that it was considering copyright claims.

That is no accident.  WSI first raised the potential for copyright claims at the same CMC where Judge Spero set a settlement conference, after questioning whether this case was actually worth litigating.  Specifically, at a December 6, 2019 hearing on a WSI motion to compel Amazon to procure specimens of certain of the Amazon products that WSI accuses of infringing its design patents, Amazon's counsel noted the limited number of sales of the accused products.  *See* Dkt. 71, Audio Tr. at 11:20-10:54.  The Court asked "why are we fighting about" claims involving such limited number of sales.  *Id.* at 5:53-4:50.  It further ordered that a case management conference occur in the next 30 days and that Plaintiff provide an estimate of what the case is worth prior to that conference, such that the case could get "on

1   track" for settlement if the case were worth less than attorneys' fees.  *Id.* 3:24-1:13.

2      In the joint statement in advance of that conference, Amazon noted that WSI had previously

3   calculated the total revenue from the sales of products at issue in this case at an amount that was likely

4   less than parties had ***already*** spent on attorneys' fees.  Dkt. 76 at 8.  WSI raised its potential copyright

5   claims at the following case management conference, at which a settlement conference was scheduled.

6      Third, Amazon does not contest that the copyright claims that WSI seeks to bring are related to

7   WSI's trademark claims in that they both arise from information that third-party sellers contribute to

8   PDPs.[8]  But, as noted above, there are a number of issues relevant only to the copyright claim, and the

9   relatedness of the claims, standing alone, is not sufficient to grant WSI's motion.  *See, e.g.*, *Nunes*, 375

10  F.3d at 808 ("Futility alone can justify the denial of a motion for leave to amend."); *Jackson*, 902 F.2d at

11  1387 ("Prejudice to the opposing party is the most important factor.").

12  ## IV.   CONCLUSION

13     For the foregoing reasons, Amazon respectfully requests that the Court deny WSI's motion for

14  leave to file its proposed second supplemental complaint.

15

16   Dated:  April 3, 2020                              DURIE TANGRI LLP

17

18                                          By:  _____*/s/ Joseph C. Gratz*_____
                                                JOSEPH C. GRATZ
19                                              Attorneys for Defendant
                                                AMAZON.COM, INC.
20

21

22

23

24

25

26

---

27  [8] Amazon agrees with WSI that the factors regarding (1) whether the second supplemental complaint is due to the repeated failure to cure a deficiency, (2) whether a final order has been issued, and (3) whether

28  the proposed supplemental complaint alleges the violation of a prior court order are not at issue in this motion.  *See* Mot. 13, 14 n.2.

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on April 3, 2020 the within document was filed with the Clerk of the Court

3

using CM/ECF which will send notification of such filing to the attorneys of record in this case.

4

5

*/s/ Joseph C. Gratz*

DARALYN J. DURIE

6

MARK A. LEMLEY

JOSEPH C. GRATZ

7

ALLYSON R. BENNETT

MATTHAEUS MARTINO-WEINHARDT

8

PETER S. HORN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMAZON.COM, INC.'S OPPOSITION TO MOTION FOR LEAVE TO FILE SECOND SUPPLEMENTAL
COMPLAINT / CASE NO. 3:18-CV-07548-AGT