UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAMS-SONOMA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. 18-cv-07548-AGT<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT**<br><br>Re: ECF No. 110 |

San Francisco-based national retailer Williams-Sonoma, Inc. ("WSI") initiated this intellectual property lawsuit against the e-commerce company Amazon.com, Inc. ("Amazon") in December 2018, asserting trademark, design patent, and unfair competition claims. Following denial of Amazon's motion to dismiss, the case proceeded to discovery. During discovery—the depositions of two Amazon witnesses designated as persons with knowledge—WSI learned of facts giving rise to a potential claim against Amazon for direct infringement of WSI's copyrighted photographs. Based on this oral testimony, WSI subsequently filed the operative Second Amended and Supplemental Complaint ("SAC"), adding one claim for direct copyright infringement. Amazon now seeks dismissal of WSI's newly-added copyright claim for failure to state a claim, and more precisely on the grounds that Amazon did not engage in the requisite "volitional conduct" as defined by the case law. For the reasons discussed below, WSI has pled facts sufficient to state a claim for direct copyright infringement, and Amazon's dismissal motion is denied.

I.     **PERTINENT BACKGROUND**[1]

The SAC alleges the following facts in support of WSI's copyright claim, which the Court must accept as true at the pleading stage. *See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

WSI is a specialty retailer of upscale home furnishings and related products and one of the largest e-commerce retailers in the United States. ECF No. 106, SAC ¶¶ 15, 19. The company sells through its website, retail stores, and mail catalogs. *Id.* ¶ 19. WSI invests significant resources in developing sophisticated imagery and "lifestyle" product photographs for its catalogs, which have gained widespread recognition since WSI began its catalog operation in the 1970s. *Id.* ¶¶ 5, 112. WSI owns numerous copyright registrations in its catalogs and the product photos featured therein. *Id.* In particular, WSI owns the registered copyright to the work at issue in this case—the "artistically-staged" image of stacks of WSI's signature Peppermint Bark candy, professionally composed and shot by a food photography specialist (the "Peppermint Bark Photo"):



*Id.* ¶ 113 (U.S. Copyright Registration No. TX0007818118 for "Williams-Sonoma December

---

[1] Factual allegations and procedural history not relevant to the instant motion are not restated here. For additional background, see the Court's prior orders at ECF No. 39 and ECF No. 105.

2013: A Very Merry Table," issued on December 24, 2013). The Peppermint Bark Photo is an original, creative work in which WSI is the owner or exclusive licensee of all rights, title, and interest. *Id.* ¶¶ 114, 196.

WSI alleges anew that Amazon, one of the world's largest online retailers, is using WSI's copyrighted photographs without permission in order to sell products on its marketplace from which Amazon directly profits. *Id.* ¶¶ 6–8, 16, 197–200.

Amazon owns and operates the website Amazon.com, an online marketplace where third party sellers, called "marketplace sellers," offer items for sale,[2] including WSI's peppermint bark candy and other WSI-branded products. *Id.* ¶¶ 6, 16, 115. WSI does not sell or authorize the resale of its products on Amazon.com nor does it authorize the use of its copyrighted photographs on the Amazon platform. *See id.* ¶¶ 37, 120, 197–99.

The products sold on Amazon.com are showcased on Amazon-generated listing pages called "product detail pages" or "PDPs." *Id.* ¶¶ 115–16. Each PDP consists of numerous "elements," including a product title, description, and the all-important product image. *Id.* ¶¶ 6, 116–17, 120. Unlike other online marketplaces, Amazon does not allow its sellers to make their own listings for each product they want to sell. *Id.* ¶ 116. Instead, "Amazon forces all sellers who are offering the same product to share a single product detail page." *Id.* Amazon exerts systematic and exclusive control over every aspect of its product detail pages. *Id.* ¶¶ 6, 117.

Amazon solicits the content for its PDPs from marketplace sellers. *Id.* ¶¶ 116–17. Sellers can submit proposed images and verbiage for potential inclusion on a PDP pursuant to Amazon's comprehensive guidelines detailing "how to draft the content for such pages, what can and cannot be included, and what kinds of images to submit." *Id.* ¶ 116. Importantly, sellers cannot upload photos or verbiage directly to a PDP; instead, Amazon collects the content submitted by its sellers into an internal database Amazon calls its "catalog." *Id.* ¶¶ 116–17. From there, Amazon "uses multiple algorithms to evaluate and select the seller-contributed content for a wide variety of

---

[2] While Amazon itself also sells goods on Amazon.com, WSI's copyright claim concerns products offered for sale by multiple marketplace sellers. *See* SAC ¶¶ 8, 115, 198, 200.

aspects of its product listings, including images." *Id.* ¶ 117. Amazon maintains "sole discretion over what images and content are chosen from its catalog to display publicly on its product detail pages." *Id.*

When multiple sellers upload proposed content for the same product, "it is Amazon who determines exactly which product information from the catalog will be displayed on the product detail page"—not the individual sellers. *Id.* ¶ 116. Likewise, "when multiple images exist for a product, Amazon, by and through its algorithms, selects which product image, among other elements, is most likely to make the sale and displays that image on the public listing page for the product." *Id.* ¶ 6. Amazon's image-selection algorithm picks the most sales-conducive images from the catalog "using multi-factor criteria that Amazon employs to boost internet traffic and promote sales." *Id.* ¶ 121. WSI alleges that this "multi-factor selection constitutes a positive selection process that is tantamount to an employee exercising editorial control: selecting content and controlling what is displayed on Amazon's product listing webpage." *Id.* Sellers have no control over how Amazon's algorithm selects which image will appear on the PDP or whether the image they propose will be used. *Id.* ¶ 117.

In these multiple-seller-submission circumstances, "the end result is that no seller has created the product listing" that ultimately appears on Amazon's website. *Id.* Instead, as described by Amazon's own witness who testified on the topic, the resulting PDP is a "Frankenstein" of different elements (product image, title, description, etc.) independently selected by Amazon. *Id.*

Amazon publishes its product detail pages on Amazon.com. *Id.* After Amazon's algorithm selects a product image, that photo is copied from Amazon's internal catalog to a server for public display on Amazon's published PDP. *Id.* As alleged, "Amazon's algorithm is the but-for cause of the reproduction and display of the images when there are multiple sellers making image submissions." *Id.* ¶ 121.

WSI alleges that Amazon's algorithms have repeatedly selected WSI's copyrighted images for publication in Amazon's PDPs. *Id.* ¶ 7. Specifically at issue in the SAC is Amazon's product detail page for "Williams-Sonoma The Original Peppermint Bark 2lb Tin"—a product offered by

4

multiple marketplace sellers on Amazon.com—which displayed WSI's copyrighted Peppermint Bark Photo without WSI's permission:



*Id.* ¶ 120 (emphasis added by WSI to indicate offers by multiple marketplace sellers).

As alleged, Amazon deployed its "multi-factor selection" process to evaluate the peppermint bark sellers' competing image submissions, and Amazon's algorithm selected WSI's high-quality photo as the image "most likely to make the sale" and then copied and displayed it on Amazon's published PDP. *Id.* ¶¶ 6, 117, 121. WSI alleges that Amazon did not act as "a mere passive recipient and publisher of content supplied by others" when composing that multi-seller PDP, but rather, Amazon's algorithm took an "active role" in selecting WSI's Peppermint Bark Photo, at Amazon's "sole discretion for the purpose of promoting sales on its marketplace, from which Amazon directly profits." *Id.* ¶¶ 6, 200. As alleged, WSI's photo was "reproduced and publicly displayed at Amazon's direction, rather than at the direction of one of its marketplace

5

sellers." *Id.* ¶ 200.

WSI further alleges that Amazon has been on notice of its ongoing infringement of WSI's copyrighted images. *Id.* ¶¶ 122–23. "Prior to filing this litigation and discovering the process by which Amazon selects the photographs for its product pages, WSI was under the mistaken impression that third party sellers were publishing [WSI's] images" on Amazon's PDPs, so WSI "actively sought enforcement of its copyrights by sending takedown notices" pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, *et seq. Id.* ¶ 122 ("For the past three years, WSI discovered dozens or even hundreds of infringements of its images" on Amazon.com.).

WSI filed its original complaint against Amazon in December 2018, asserting claims for trademark infringement and dilution, design patent infringement, and unfair competition. ECF No. 1. Amazon unsuccessfully moved to dismiss, ECF No. 39, and in June 2019, WSI filed its first amended and supplemental complaint, adding four additional design patent claims, ECF No. 51. During subsequent 30(b)(6) depositions of Amazon witnesses, WSI learned of facts indicating a potential basis for a direct copyright claim—namely, that Amazon, rather than its marketplace sellers, exclusively controls the content of its PDPs including which product images are featured on those pages. *See* ECF No. 93. In March 2020, WSI filed a motion for leave to file its SAC, adding one claim for direct infringement of WSI's copyrighted photos. *Id.* The Court granted WSI's motion, ECF No. 105, and WSI filed the SAC on May 6, 2020, ECF No. 106. Amazon now moves to dismiss WSI's new copyright claim. ECF No. 110.[3]

**II.  LEGAL STANDARD**

Amazon moves under Rule 12(b)(6) to dismiss the SAC for failing to state a claim upon

---

[3] In connection with WSI's opposition brief, ECF No. 112, WSI requests judicial notice of an Amazon patent claiming a method and system for collecting multiple images from multiple sources. *See* ECF No. 113-1, Ex A. WSI references the patent in its opposition brief, suggesting that the claimed methods are "one possibility" of how Amazon's algorithmic image-selection process works. *See* ECF No. 112 at 9–10. The patent is not referenced in or attached to the SAC, nor does the SAC allege that Amazon practices all of its patents. Amazon does not object to judicial notice of the existence of the patent but argues that "[w]hether or not Amazon practices the patent is not the proper subject of judicial notice." ECF No. 116 at 2. Because it is unnecessary for the Court to rely on the patent or the portions of WSI's opposition brief discussing it in ruling on the instant motion, WSI's request for judicial notice is denied as moot.

6

1  which relief can be granted. "Dismissal under Rule 12(b)(6) is appropriate only where the
2  complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."
3  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive the
4  motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its
5  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when
6  the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the
7  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The
8  plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer
9  possibility that a defendant has acted unlawfully." *Id.*

10  Affirmative defenses do not warrant dismissal pursuant to Rule 12(b)(6) except in "rare
11  cases." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). That is because the defendant
12  usually bears the burden of pleading and proving an affirmative defense, *see, e.g.*, *Gomez v.
13  Toledo*, 446 U.S. 635, 640 (1980), and the plaintiff is not required plead the "subject of an
14  anticipated affirmative defense," *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir.
15  2013). Hence, a Rule 12(b)(6) dismissal on the basis of an affirmative defense is proper only
16  where "the allegations in the complaint suffice to establish the defense." *Sams v. Yahoo! Inc.*, 713
17  F.3d 1175, 1179 (9th Cir. 2013).

18  In evaluating the SAC, the Court must "accept factual allegations in the complaint as true
19  and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St.
20  Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Legal conclusions, unlike
21  factual allegations, are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

22  **III. DISCUSSION**

23  Amazon seeks dismissal of WSI's copyright claim on the separate and independent
24  grounds that: (1) WSI has not plausibly alleged that Amazon engaged in "volitional conduct"
25  necessary to state a claim for direct copyright infringement, and (2) Amazon is shielded from
26  direct liability by the DMCA's safe harbor provision for material stored at the direction of users.
27  The Court addresses each argument in turn.

28

**A.      Direct Copyright Infringement**

To state a claim for direct copyright infringement, WSI must allege: (1) "ownership of the allegedly infringed material," (2) violation of "at least one exclusive right granted to [WSI] under 17 U.S.C. § 106," and (3) causation, also referred to as "volitional conduct," by Amazon. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir.), *cert. denied*, 140 S. Ct. 122 (2019) (citations omitted); *see Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) ("'[V]olition' in this context does not really mean an 'act of willing' or choosing or an 'act of deciding,'" rather, "'it simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts.'") (internal citations omitted) (referencing *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1368 (N.D. Cal. 1995) ("*Netcom*"). Section 106 of the Copyright Act grants copyright owners the exclusive rights, among others, "to reproduce the copyrighted work in copies" and to publicly display it. 17 U.S.C. § 106(1), (5). "As its name suggests, *direct* liability must be premised on conduct that can reasonably be described as the *direct cause* of the infringement" of those exclusive rights. *Giganews*, 847 F.3d at 666 (citation omitted).

The Ninth Circuit recently emphasized that "direct copyright liability for website owners arises when they are *actively involved* in the infringement." *Zillow*, 918 F.3d at 731. This requires "actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the [website owner itself] trespassed on the exclusive domain of the copyright owner." *Id.* (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004)). Activities such as "automatic copying, storage, and transmission of copyrighted materials, when instigated by others," do not meet the that threshold. *Id.* (citing *Giganews*, 847 F.3d at 670). Instead, "to demonstrate volitional conduct, a [plaintiff] must provide some 'evidence showing the alleged infringer exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution' of its photos." *Id.* at 732 (quoting *Giganews*, 847 F.3d at 666, 670) (alterations in original omitted).

Here, the main issue is whether WSI has plausibly alleged that Amazon was "actively

involved" in the infringement of WSI's copyright. *See Zillow*, 918 F.3d at 731. Amazon does not contest WSI's ownership of the Peppermint Bark Photo or that WSI's copyrighted photo was copied and publicly displayed on Amazon.com, without WSI's permission, via Amazon's algorithms. *See* ECF No. 110 at 9, 13; *see also id.* at 7 n.2 ("For the purposes of this motion only, Amazon accepts WSI's well-pleaded allegations as true."). Instead, Amazon argues that WSI has not plausibly alleged "that *Amazon*, as opposed to its users [i.e., marketplace sellers], engaged in volitional conduct that infringed WSI's copyrights."[4] *Id.* at 8 (emphasis added). According to Amazon, when "accepting WSI's allegations as true, . . . Amazon's role is limited to (1) automatically displaying the photograph selected, copied, and uploaded by the user; and (2) if more than one user submits a photograph, automatically blocking a different photograph submitted by a different user from being displayed." *Id.* at 7. This alleged conduct, Amazon argues, is insufficiently volitional as a matter of law under the Ninth Circuit's controlling decision in *Zillow*. The Court disagrees.

In *Zillow*, an online real estate marketplace hosted user-uploaded photographs, thousands of which were under temporary copyright license from the plaintiff, a professional real estate photography studio, on two sections of its website. 918 F.3d at 732. Zillow required users uploading to its main listing platform to attest to the permissible use of the photos and to designate each photo, at the time of upload, as having certain rights. *Id.* at 732–33. To address situations where multiple versions of the same photo were submitted by different users, Zillow developed automated "trumping" rules which prioritized publication of "photos [in which Zillow had the greatest display] rights over photos with [lesser rights] in the same image." *Id.* at 733. The plaintiff claimed that Zillow directly infringed its copyrighted photos by designing its system to

---

[4] WSI correctly notes that "the fact that an Amazon marketplace seller uploading infringing photographs may also be liable for infringement does not preclude Amazon from being held responsible as a direct infringer for its role in infringing WSI's photographs—so long as its role is of sufficient causal significance to meet the volition test." ECF No. 112 at 13–14; *see Giganews*, 847 F.3d at 669 (explaining, in a direct infringement case against two online service provider defendants, that the question is "whether *Defendants* can be regarded as having committed the [infringing acts], as opposed to, *or in addition to*, the third party users who actually uploaded the infringing content onto [Defendants' servers]") (second emphasis added) (citation omitted).

cause the copying and display of the infringing photos on Zillow's listing platform. *Id*. On appeal, the Ninth Circuit affirmed summary judgment to Zillow for lack of volitional conduct, finding that the plaintiff failed to provide any evidence that Zillow either "selected" any of the infringing photos uploaded to its listing platform, "exercised control" over those photos "beyond the general operation of its website," or "instigated any copying, storage, or distribution." *Id.* at 732 (citing *Giganews*, 847 F.3d at 670). The Ninth Circuit highlighted that Zillow's system for managing photos on its listing platform was "constructed in a copyright-protective way"—Zillow required its users to certify the extent of their rights to use each photo uploaded, classified each photo accordingly, and programmed its automated systems to treat each photo consistently with the certified scope of use to ensure that it was in compliance with copyright licenses. *Id.* at 733. Agreeing with the district court that "trumping" was "a reasonable way to design a system to manage multiple versions of the same photo when the authorized use varies across versions," the Ninth Circuit held that Zillow's copyright-protective "trumping" system was insufficiently volitional to establish direct infringement by Zillow. *Id.*

Here, Amazon argues that its "automatic blocking" system, whereby Amazon "automatically displays some—but not all—photographs submitted by Amazon's users," is just like the non-volitional "trumping" rules in *Zillow*. ECF No. 110 at 10–11. This argument is unpersuasive for several reasons. To start, *Zillow* was decided at the summary judgment (and trial) stage. On a motion to dismiss, the Court considers only the allegations in the complaint, accepts them as true, and draws all reasonable inferences in favor of the non-moving party. *See Retail Prop.*, 768 F.3d at 945. The SAC does not allege or suggest a process comparable to Zillow's "trumping" rules and Amazon's characterization of its process as one of "automatic blocking" (and "screening" and "gatekeeping") is inconsistent with WSI's factual allegations which must control at this pleading stage in the case. The factual matter in the SAC, accepted as true, supports the reasonable inference that when multiple sellers upload proposed photos for the same product, Amazon's image-selection algorithm affirmatively selects the image that it deems "most likely to make the sale"—Amazon makes an editorial, qualitative decision among *different photos* of the same product, regardless of any rights—and copies and displays the chosen image

10

using "multi factor criteria" designed and employed by Amazon to enhance product sales and boost internet traffic on Amazon's website.[5] *See* SAC ¶¶ 6–7, 116–17, 121, 200.

Unlike Zillow's content-neutral "trumping" rules, which Zillow "actively designed . . . to avoid and eliminate copyright infringement" and invoked "when multiple versions of *the same photo*" were submitted by different users, *Zillow*, 918 F.3d at 733 (emphasis added), Amazon's alleged process here is triggered when multiple *different photos* of the same product are submitted and it is designed to select the most appealing photo from the different, competing images, *see* SAC ¶¶ 6, 121. As alleged, Amazon's algorithms cannot be said to "facilitate keeping the photos with [the greatest display] rights on the website [while] removing the photos with [lesser or expired] rights" like the system in *Zillow*. 918 F.3d at 733. Rather, as WSI asserts, Amazon's alleged system does the opposite of the one in *Zillow*—it picks the most attractive photos irrespective of rights which "plainly enhances rather than reduces the potential for infringement of professionally produced photographs." ECF No. 112 at 19–20.

WSI argues that Amazon's alleged activities are more akin to Zillow's infringing "moderation efforts"—employing moderators to review, select, and tag a subset of user-uploaded photos to make them searchable on the Zillow platform—which the jury found, the district court upheld, and Zillow did not appeal, *did* amount to volitional conduct by Zillow sufficient for direct liability. 918 F.3d at 737. Importantly, the photos that Zillow "curated, selected, and tagged for searchable functionality" were already loaded to Zillow's website by users; nothing about Zillow's moderation efforts further reproduced them. *Id.* at 738. Zillow's tagging allowed users to access the photos through Zillow's search function and thus increased the potential for public display in response to user requests. *Id.* at 736. The Ninth Circuit approvingly cited the district court's reasoning "that Zillow's moderation efforts, which rendered those images searchable, proximately caused the [infringement]." *Id.* "Put differently," the Ninth Circuit explained, this "active conduct

---

[5] Even if the SAC did give rise to a reasonable inference of "automatic blocking" by Amazon, which it does not, WSI has alleged plausible inferences to the contrary and the Court may not "choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible." *Rearden LLC v. Walt Disney Co.*, 293 F. Supp. 3d 963, 976 (N.D. Cal. 2018) (citation omitted).

by Zillow met the volitional-conduct requirement for direct infringement." *Id.*

Here, as WSI persuasively argues, "Amazon goes a significant step farther—it not only curates and selects the images to be searched out by others, it *publishes* them"—"[u]nlike the moderators in *Zillow*, Amazon is actually performing the acts of reproduction and display that constitute infringement." ECF No. 112 at 18.  Indeed, as alleged and accepted as true for this motion, once Amazon's sellers upload proposed images to Amazon's internal catalog, they have no control over, or further role in, Amazon's image-selection and PDP publication process, *see* SAC ¶¶ 6, 116–17, 200; when multiple sellers upload competing images for potential inclusion in a PDP, Amazon, in its "sole discretion," decides which photo has the best sales appeal and then copies that image from the catalog to a server for display on the published PDP, *see id.*; and Amazon's algorithm selected, copied, and publicly displayed WSI's Peppermint Bark Photo on its PDP on Amazon.com where Amazon shoppers who searched for that product saw it, *see id.* ¶¶ 6–8, 116–17, 120–21.  At the pleading stage, these allegations adequately support WSI's assertion that Amazon exercised the requisite level of volition necessary to be held liable as a direct infringer of WSI's reproduction and public display rights.[6]

In sum, WSI has adequately alleged conduct by Amazon "sufficient to transform [Amazon] from a 'passive host' to a 'direct cause'" of the infringement of WSI's copyrighted photo. *Zillow*, 918 F.3d at 737.  Amazon's motion to dismiss for failure to state a claim is denied.

---

[6] Amazon also cites *Netcom*, *Giganews*, and other out-of-circuit direct infringement cases involving online service providers for the proposition that no volitional conduct exists here.  At the pleading stage, these cases do not help Amazon.  Drawing all reasonable inferences in WSI's favor, it is clear that Amazon's alleged activities exceed the mere passive non-volitional activities contemplated in those cases.  *See, e.g., Netcom*, 907 F. Supp. at 1368 (granting summary judgment on non-infringement to defendants where service provider defendant programmed its system to "automatically and uniformly" copy *all* content posted by users to its servers and where online bulletin board defendant "merely store[d] and passe[d] along *all* messages sent by its subscribers," holding that these "automatic and indiscriminate" activities were insufficiently volitional and thus precluded direct liability) (emphasis added); *Giganews*, 847 F.3d at 668 (affirming dismissal and summary judgment for Giganews, an online bulletin board service which hosted user-uploaded images on its servers and provided a software tool that allowed users to view those images, holding that "the fact that users may use Giganews's [software] to display infringing images does not constitute volitional conduct by Giganews. . . . to the extent that [Giganews' software] is used to view infringing images, this is done by the user"); *CoStar*, 373 F.3d at 550 (affirming summary judgment to service provider for lack of volitional conduct where defendant provided an online system that "respond[ed] automatically to users' input . . . *without intervening conduct*" by the defendant) (emphasis added).

### B.     DMCA Safe Harbor Affirmative Defense

As an independent basis for dismissal, Amazon argues that it qualifies for the DMCA's § 512(c) safe harbor because WSI's copyrighted photos are stored at the direction of Amazon's users. Because the § 512(c) safe harbor is an affirmative defense, Amazon must establish "beyond controversy every essential element" of the defense. *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1052 (9th Cir. 2017). "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014); *see Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) ("Ordinarily, affirmative defenses . . . may not be raised on a motion to dismiss except when the defense raises no disputed issues of fact."). Put differently, "[o]nly when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018) (citation omitted). WSI has not pleaded itself out of court and factual disputes preclude resolution of Amazon's asserted defense on a motion to dismiss.

To establish threshold eligibility for the § 512(c) safe harbor, Amazon must show—based on facts that appear on the face of the SAC—that the infringing photograph was stored "at the direction of the user." *Mavrix*, 873 F.3d at 1052 (citing 17 U.S.C. § 512(c)(1)). "Infringing material is stored at the direction of the user if the service provider played *no role* in making that infringing material accessible on its site or if the service provider carried out activities that were 'narrowly directed' towards enhancing the accessibility of the posts." *Id.* at 1056 (emphasis added) (citation omitted). If Amazon meets that threshold requirement, it must then show—again, on the face of the SAC—that "(1) it lacked actual or red flag knowledge of the infringing material; and (2) it did not receive a 'financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity.'" *Id.*

Here, Amazon's asserted defense raises factual disputes regarding Amazon's role in the reproduction and display of WSI's copyrighted images. *See ASARCO*, 765 F.3d at 1004 ("If, from the allegations of the complaint . . . , an asserted defense raises disputed issues of fact, dismissal

13

under Rule 12(b)(6) is improper."). Moreover, the SAC alleges specific facts that tend to refute other required elements of the safe harbor defense—namely, that Amazon does not have "the right and ability to control" the infringing activity, *see, e.g.*, SAC ¶¶ 6, 117 (Amazon "exerts systematic control over every element" of its PDPs and has "sole discretion over what images and content are chosen from its catalog" for public display), and does not "financially benefit" from the infringement, *see id.* ¶¶ 118, 200 ("Amazon takes a cut of every transaction" on Amazon.com and "takes an active role in selecting which seller-submitted images are reproduced and publicly displayed, at its sole discretion for the purpose of promoting sales on its marketplace . . . from which Amazon directly profits").[7] In short, this is not "the relatively unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to securing relief." *ASARCO*, 765 F.3d at 1004.

Amazon may attempt to establish its eligibility for the § 512(c) safe harbor at a later point in the litigation when it can present admissible evidence in support of the defense. At this stage, however, dismissal on this ground is inappropriate. WSI may proceed on its direct infringement claim.

## IV. CONCLUSION

WSI has sufficiently alleged direct copyright infringement and Amazon's motion is denied. The parties shall appear for a case management conference on **September 4, 2020**, at 2:00 p.m. via Zoom video conference. The parties must file a joint statement by **August 28, 2020**.

**IT IS SO ORDERED.**

Dated: August 17, 2020

ALEX G. TSE
United States Magistrate Judge

---

[7] In its reply brief, Amazon contends that "WSI is judicially estopped from contending that Amazon's DMCA safe harbor defense fails for some reason other than the fact that Amazon's software automatically displays some but not all user-submitted photographs" because, according to Amazon, WSI previously "argued that Amazon satisfied all of the DMCA's other requirements" and "the Court relied on this argument in granting WSI leave to amend." ECF No. 115 at 17–18. The Court apprehended no concession by WSI that the requirements under the DMCA's safe harbor were satisfied, and therefore the Court does not now find those requirements to have been met.